# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Hearst Communications State Right of Publicity Statute Cases* | Case No. 1:21-cv-08895-RA<br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

On behalf of themselves and others similarly situated, Plaintiffs Tiffani Anderson, Barbara Leach, Kimberly Lantz, Cathy McGruder, Dwana Eslinger, Belinda Powers, Cathy Ricketts, Judith Shaw, Joan Burke, William Martin, Lauren Sandberg, Nicki Mahood, Joyce Hicks, Stephen Goldberger, Dawn Begin, Rebecca Venable, Shirley Collazo, Maribel Ramirez, Maricarmen Ocasio, and Magda Lopez allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through their attorneys. Plaintiffs believe that substantial evidentiary support exists for the allegations set forth herein.

## <u>NATURE OF ACTION</u>

1.    Defendant Hearst Communications, Inc. ("Hearst" or "Defendant"), an international media conglomerate, publishes some of the most widely circulated magazines in the United States, including *Country Living*, *Harper's Bazaar*, *Cosmopolitan*, *Esquire*, *Woman's Day*, *Good Housekeeping*, *Redbook*, *Seventeen*, and *O, the Oprah Magazine*.

2.    Defendant derives revenue in at least two ways:  First, it sells subscriptions to its magazines to consumers; and second, it sells the identities of its magazine subscription consumers  ("Data Brokerage Products") to various third parties, including data miners, data aggregators, data appenders, data cooperatives, list rental recipients, list exchange recipients, and/or list brokers, among others ("Data Brokerage Clients").

3.    The Data Brokerage Products that Hearst sells, licenses, rents, exchanges, and otherwise discloses to its Data Brokerage Clients contain its customers' specific identities,

including their full names, titles of magazine publications subscribed to, home addresses, and myriad other categories of individualized data such as each customer's gender, ethnicity, and religion.

4.      By licensing, renting, exchanging, or otherwise disclosing—rather than only selling—its magazine subscribers' identities, Hearst is able to misappropriate (and profit from) their identities time and time again to countless third parties.

5.      Hearst's disclosure of names and identities and other individualized information is not only unlawful but is also dangerous, because it provides malevolent actors with the tools needed to target particular members of society.

6.      By selling products to its Data Brokerage Clients comprised entirely of its magazine subscribers' identities—without their consent—Defendant has violated, and continues to violate, statutes governing the misappropriation of individuals' names and/or likenesses in the states of Alabama, Indiana, Hawaii, South Dakota, California, Nevada, Ohio, and Washington, as well as the Commonwealth of Puerto Rico.

## PERTINENT STATUTORY SCHEMES

### I.  Alabama

7.      The Alabama Right of Publicity Act states that: "any person or entity who uses or causes the use of the indica of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise or services … without consent shall be liable under this article to that person, or to a holder of that person's rights."  Ala. Code § 6-5-772(a) (the "Alabama Statute").

8.      Indica of identity "include[s] those attributes of a person that serve to identify that person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice, or a substantially similar imitation of one or more of those attributes."  Ala. Code § 6-5-771(1).

**II.      Indiana**

9.      Indiana's misappropriation statute, IC 32-36-1-1, *et seq.* (the "Indiana Statute"), states that: "A person may not use an aspect of a personality's right of publicity for a commercial purpose … without having obtained previous written consent."  IC 32-36-1-8(a).

10.      Under the Indiana Statute, "commercial purpose" is defined as, *inter alia*, "the use of an aspect of a personality's right of publicity … [o]n or in connection with a product, merchandise, goods, services, or commercial activities."  IC 32-36-1-2.

**III.      Hawaii**

11.      Hawaii's misappropriation of name or likeness statute, Haw. Rev. Stat. Ann. § 482P-1, *et seq.* (the "Hawaii Statute"), states that: "any person who uses or authorizes the use of a living … individual's or personality's name, … or likeness, on or in goods, merchandise, or services entered into commerce in this State … without express or implied consent of the owner of the right, has infringed a publicity right under this chapter." Haw. Rev. Stat. Ann. § 482P-5.

**IV.      South Dakota**

12.      South Dakota's misappropriation statute, S.D. Codified Laws § 21-64-1, *et seq.* (the "South Dakota Statute"), states that: "No person may use any aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime or for seventy years after the death of the personality without the express written consent of the personality, or if the personality is deceased without the express written consent of the personality's next of kin or other person or entity that owns the right of publicity."  S.D. Codified Laws § 21-64-2.

13.      Under the South Dakota Statute, "commercial purpose" includes "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, service, or commercial activity."  *Id.* § 21-64-1(1).

14.      "Personality" is defined as "a living or deceased natural person who is a citizen of this state, or who died domiciled in this state whose name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism identifies a specific person and has

commercial value, whether or not the person uses or authorizes the use of the person's rights of publicity for a commercial purpose that serves to identify a specific person[.]"

15.     "Right of publicity" means "a personality's property interest in the personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism." *Id.* § 21-64-1(3).

**V.     California**

16.     California's misappropriation of name or likeness statute, Cal. Civ. Code § 3344 (the "California Statute"), states that: "Any person who knowingly uses another's name … or likeness, in any manner, on or in products, merchandise, or goods … without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable … to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use[.]" Cal. Civ. Code § 3344 (the "California Statute").

17.     Notably, California Civil Code Section 3344 was amended in 1984 to include the phrase (appearing in the statutory text quoted above) "on or in products, merchandise, or goods" as an additional way in which an unauthorized use of a person's name or likeness violates the statute. *See* Stats. of 1984, Ch. 1704, §2 at 6172. In making this amendment, the California legislature sought to prohibit the use of a person's name on or in a product, good, or piece of merchandise, rather than simply in an advertisement for another product or service. *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 801-02 (Cal. 2001).

**VI.     Nevada**

18.     Nevada's misappropriation statute, Nev. Rev. Stat. Ann. § 597.770, *et seq.* (the "Nevada Statute"), states that: "There is a right of publicity in the name, voice, signature, photograph or likeness of every person. The right endures for a term consisting of the life of the person and 50 years after his or her death, regardless of whether the person commercially exploits the right during his or her lifetime." Nev. Rev. Stat. Ann. § 597.790.

19.     Under the Nevada Statute: "Any commercial use by another of the name … of a person requires the written consent of that person or his or her successor in interest[.]"  Nev. Rev. Stat. Ann. § 597.790.

20.     "Commercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. Ann. § 597.770.

### VII.   Ohio

21.     Ohio's misappropriation statute, Ohio Rev. Code § 2741.01, *et seq.* (the "Ohio Statute"), states that: "a person shall not use any aspect of an individual's persona for a commercial purpose"  unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code §2741.02(A)-(B).

22.     The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."  *Id.* §2741.01(A).

23.     "'Name' means the actual, assumed, or clearly identifiable name of or reference to a living or deceased individual that identifies the individual." *Id.*

24.     "'Commercial purpose' means the use of or reference to an aspect of an individual's persona … [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter."  *Id.*

### VIII.   Washington

25.     Washington's misappropriation statue, RCW 63.60.010, *et seq.* (the "Washington Statute"), establishes that in the state of Washington: "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness."  RCW 63.60.010.

26.     Further, "Any person who uses or authorizes the use of a living or deceased individual's … name … on or in goods, merchandise, or products entered into commerce in this

state … without written or oral, express or implied consent of the owner of the right, has infringed such right." RCW 63.60.050.

27.     Under the Washington Statute, "individual" means "a natural person, living or dead."  RCW 63.60.020.

28.     "Person" is defined as "any natural person, firm, association, partnership, corporation, joint stock company, syndicate, receiver, common law trust, conservator, statutory trust, or any other concern by whatever name known or however organized, formed, or created, and includes not-for-profit corporations, associations, educational and religious institutions, political parties, and community, civic, or other organizations." *Id.*

29.     "Name" means the actual or assumed name, or nickname, of a living or deceased individual that is intended to identify that individual.  *Id.*

### IX.     Puerto Rico

30.     Puerto Rico's misappropriation statute, 32 L.P.R. § 3151, *et seq.* (the "Puerto Rico Statute"), states that: "Any natural or juridical person who uses another's likeness for commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages."  32 L.P.R. § 3152.

31.     Under the Puerto Rico Statute, "likeness" is defined as the "[n]ame, photograph, portrait, voice, signature, attribute or any representation of a person through which an average observer or listener may identify the same, produced using any reproduction procedure or technique." 32 L.P.R. § 3151.

32.     "Commercial purpose" is defined as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market."  32 L.P.R. §3152(h).

33.     "Person" is defined as a "Natural person, living or deceased, regardless of the previous use of his/her likeness for commercial purposes. It includes any legal entity that holds the rights of a person's likeness through a license or by transfer of publicity rights." *Id.*

## **PARTIES**

34.     Plaintiff Tiffani Anderson is a citizen of Alabama who resides in Mobile, Alabama.  Plaintiff Anderson has been a subscriber of *Cosmopolitan* magazine for approximately fifteen years.

35.     Plaintiff Barbara Leach is a citizen of Indiana who resides in Michigan City, Indiana.  Plaintiff Leach has been a subscriber of *Cosmopolitan* magazine for approximately two years.

36.     Plaintiff Kimberly Lantz is a citizen of Indiana who resides in Fort Wayne, Indiana.  Plaintiff Lantz has been a subscriber of *Cosmopolitan* magazine for approximately three years.

37.     Plaintiff Cathy McGruder is a citizen of Hawaii who resides in Honolulu, Hawaii. Plaintiff McGruder has been a subscriber of *Cosmopolitan* magazine for approximately two years.

38.     Plaintiff Dwana Eslinger is a citizen of South Dakota who resides in Sherman, South Dakota.  Plaintiff Eslinger has been a subscriber of *Woman's Day* magazine for approximately seven years.

39.     Plaintiff Belinda Powers is a citizen of South Dakota who resides in Belle Fourche, South Dakota.  Plaintiff Powers has been a subscriber of *O, The Oprah Magazine* magazine for approximately two years.

40.     Plaintiff Cathy Ricketts is a citizen of South Dakota who resides in Selby, South Dakota.  Plaintiff Ricketts has been a subscriber of *Good Housekeeping* magazine for approximately six years.

41.     Plaintiff Judith Shaw is a citizen of California who resides in Reseda, California. Plaintiff Shaw has been a subscriber of *Cosmopolitan* magazine for approximately two years.

42.     Plaintiff Joan Burke is a citizen of California who resides in Sacramento, California.  Plaintiff Burke has been a subscriber of *Good Housekeeping* and *Veranda* magazines for approximately ten or more years.

43.     Plaintiff William Martin is a citizen of California who resides in Westminster, California.  Plaintiff Martin has been a subscriber of *Esquire* magazine for approximately four years.

44.     Plaintiff Lauren Sandberg is a citizen of Nevada who resides in Henderson, Nevada.  Plaintiff Sandberg has been a subscriber of *Woman's Day* magazine for approximately two years.

45.     Plaintiff Nicki Mahood is a citizen of Ohio who resides in Blacklick, Ohio. Plaintiff Mahood has been a subscriber of *Woman's Day* magazine for approximately ten years.

46.     Plaintiff Joyce Hicks is a citizen of Ohio who resides in Cincinnati, Ohio. Plaintiff Hicks has been a subscriber of *Good Housekeeping* magazine for approximately ten years.

47.     Plaintiff Stephen Goldberger is a citizen of Ohio who resides in Cincinnati, Ohio. Plaintiff Goldberger has been a subscriber of *Car and Driver, HGTV,* and *Food Network* magazines for approximately fifteen years.

48.     Plaintiff Dawn Begin is a citizen of Ohio who resides in South Euclid, Ohio. Plaintiff Begin has been a subscriber of *Good Housekeeping* and *Woman's Day* magazines for approximately three years.

49.     Plaintiff Rebeca Venable is a citizen of Washington who resides in Cheney, Washington.  Plaintiff Venable has been a subscriber of *Woman's Day* magazine for approximately 25 years.

50.     Plaintiff Shirley Collazo is a citizen of Puerto Rico who resides in Bayamon, Puerto Rico.  Plaintiff Collazo has been a subscriber of *Woman's Day* magazine for approximately fifteen years.

51.     Plaintiff Maribel Ramirez is a citizen of Puerto Rico who resides in Arecibo, Puerto Rico.  Plaintiff Ramirez has been a subscriber of *Food Network* magazine for approximately two years.

52.     Plaintiff Maricarmen Ocasio is a citizen of Puerto Rico who resides in Carolina, Puerto Rico.  Plaintiff Ocasio has been a subscriber of *Good Housekeeping* magazine for approximately ten years.

53.     Plaintiff Magda Lopez is a citizen of Puerto Rico who resides in Añasco, Puerto Rico.  Plaintiff Lopez has been a subscriber of *Good Housekeeping* magazine for approximately four years.

54.     Defendant Hearst Communications, Inc. is a New York corporation with its principal place of business at 300 West 57th Street, New York, New York, 10019.  Hearst does business throughout Alabama, Indiana, Hawaii, South Dakota, California, Nevada, Ohio, Washington, Puerto Rico, and the rest of the United States.

## JURISDICTION AND VENUE

55.     The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 members of each of the proposed Classes (defined below), the aggregate amount in controversy with respect to the claim alleged on behalf of each of the proposed Classes exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of each of the Classes (including each of the Plaintiffs) is a citizen of a state different from Defendant.

56.     The Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters and principal place of business in New York, New York.

57.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391 because Defendant resides in and is subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL CLAIMS

58.      Defendant directly sells its products and services to consumers in Alabama, Indiana, Hawaii, South Dakota, California, Nevada, Ohio, Washington, and Puerto Rico.

59.      Consumers can purchase subscriptions to any of Hearst's publications through the Internet, telephone, or mail.  Regardless of how the consumer subscribes, Hearst never requires the individual to read or agree to any terms of service, privacy policy, or agreement

9

authorizing Defendant to use his or her name or likeness on or in connection with its Data

Brokerage Products or for any other commercial purposes.

60.     Hearst maintains a vast digital database comprised of its customers' names,

basic demographic information (e.g., home address), and magazine subscription histories and

preferences.

61.     Hearst discloses its magazine subscribers' names and other identifying

information, including but not limited to those subscribers' home addresses, to data aggregators

and appenders, which then provide Hearst with supplemental information, such as—among

many other possible data points—sex, age, race, and political party, about each Hearst subscriber

that they have separately collected.

62.     Hearst then packages this information into its Data Brokerage Products that are

sold, licensed, rented, exchanged, and otherwise disclosed to its various Data Brokerage Clients.

On a per record basis, the information includes basic identifying information about each of

Hearst's subscribers (name, address, magazines subscribed to, among other such details) along

with additional information received from the data aggregators and appenders discussed above.

63.     These Data Brokerage Products are offered for sale in, and, on information and

belief, ultimately sold and entered into commerce throughout, Alabama, Indiana, Hawaii, South

Dakota, California, Nevada, Ohio, Washington, and Puerto Rico, as well as elsewhere

throughout the United States.

64.     Hearst also discloses its Data Brokerage Products to data cooperatives, which in

turn give Hearst access to their own subscription list databases.

65.     Selling Data Brokerage Products comprised of its customers' names and

subscriber information, as detailed above, constitutes a commercial use of its customers'

likenesses on or in connection with goods, merchandise, or products under each of the

aforementioned statutes.

66.    As the subjects of commercial transactions, the aspects of Plaintiffs' likenesses that Defendant uses on or in connection with its products, services, or other commercial activities have significant commercial value.

67.    Because Hearst does not seek its customers' consent, written or otherwise, prior to using their names and likenesses on or in connection with its Data Brokerage Products, its customers remain unaware that their identities are being trafficked on the open market in this way.

68.    By using Plaintiffs' and the Class members' names and likenesses on and in connection with its Data Brokerage Products, without their prior consent, Defendant has directly violated (and continues to directly violate) the Alabama Statute, the Indiana Statute, the Hawaii Statute, the South Dakota Statue, the California Statute, the Nevada Statute, the Ohio Statute, the Washington Statute, and the Puerto Rico Statute.

69.    Defendant has knowingly, intentionally, and willfully violated these statutes. Plaintiffs are informed and believe that, during the time period relevant to this action, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, directed and oversaw the compilation and assembly of the Data Brokerage Products from its customer database, the use of the names and likenesses of Plaintiffs and the members of the Classes on or in connection with such Data Brokerage Products, and the advertising and sales of such Data Brokerage Products to various third parties, including to its Data Brokerage Clients. Defendant has reaped, and continues to reap, significant profits from its nonconsensual sales of Data Brokerage Products containing the names and likenesses, personas, or identities, along with other personally identifying attributes of Plaintiffs and the members of the Classes.

## CLASS ACTION ALLEGATIONS

70.    Plaintiff Anderson seeks to represent a class defined as all Alabama residents who appear in any of Hearst's Data Brokerage Products (the "Alabama Class").

71.    Plaintiffs Leach and Lantz seek to represent a class defined as all Indiana residents who appear in any of Hearst's Data Brokerage Products (the "Indiana Class").

72.     Plaintiff McGruder seeks to represent a class defined as all Hawaii residents who appear in any of Hearst's Data Brokerage Products (the "Hawaii Class").

73.     Plaintiffs Eslinger, Powers, and Ricketts seek to represent a class defined as all South Dakota residents who appear in any of Hearst's Data Brokerage Products (the "South Dakota Class").

74.     Plaintiffs Shaw, Burke, and Martin seek to represent a class defined as all California residents who appear in any of Hearst's Data Brokerage Products (the "California Class").

75.     Plaintiff Sandberg seeks to represent a class defined as all Nevada residents who appear in any of Hearst's Data Brokerage Products (the "Nevada Class").

76.     Plaintiffs Mahood, Hicks, Goldberger, and Begin seek to represent a class defined as all Ohio residents who appear in any of Hearst's Data Brokerage Products (the "Ohio Class").

77.     Plaintiff Venable seeks to represent a class defined as all Washington residents who appear in any of Hearst's Data Brokerage Products (the "Washington Class").

78.     Plaintiffs Collazo, Ramirez, Ocasio, and Lopez seek to represent a class defined as all Puerto Rico residents who appear in any of Hearst's Data Brokerage Products (the "Puerto Rico Class").

79.     Collectively, the classes are referred to as the "Classes."

80.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of each of the Classes number in the hundreds of thousands.  The precise number of class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

81.     Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to:

    a.   Whether Hearst uses class members' names, likenesses, personalities, personas, and other indica of identity on or in its Data Brokerage Products;

    b.   Whether the conduct described herein constitutes a violation of Ala. Code § 6-5-770, *et seq.*;

    c.   Whether the conduct described herein constitutes a violation of IC 32-36-1-1, *et seq.*;

    d.   Whether the conduct described herein constitutes a violation of Haw. Rev. Stat. Ann. § 482P-1, *et seq.*;

    e.   Whether the conduct described herein constitutes a violation of S.D. Codified Laws § 21-64-1, *et seq.*;

    f.   Whether the conduct described herein constitutes a violation of Cal. Civ. Code § 3344;

    g.   Whether the conduct described herein constitutes a violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.*;

    h.   Whether the conduct described herein constitutes a violation of Ohio Rev. Code § 2741.01, *et seq.*;

    i.   Whether the conduct described herein constitutes a violation of RCW 63.60.010, *et seq.*;

    j.   Whether the conduct described herein constitutes a violation of 32 L.P.R. § 3151, *et seq*; and

    k.   Whether Plaintiffs and the Classes are entitled to injunctive relief.

82.    The claims of the named Plaintiffs are typical of the claims of the Classes.

83.    Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of class members will be fairly and adequately protected by Plaintiffs and their counsel.

84.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Classes.  Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

85.     Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of Ala. Code § 6-5-770, *et seq.*
### (By Plaintiff Anderson, Individually and on Behalf of the Alabama Class)

86.     Plaintiff Anderson incorporates by reference and re-alleges herein all paragraphs alleged above.

87.     Plaintiff Anderson brings this claim individually and on behalf of the members of the Alabama Class.

88.     Ala. Code. § 6-5-770, *et seq.,* prohibits an entity or individual from using another individual's name or other indica of identity on or in its products, goods, merchandise, or services without the prior consent.

89.     Liability under the Alabama Right to Publicity is found "without regard as to whether the use is for profit or not for profit."

90.     Plaintiff Anderson and the Alabama Class members each subscribed to one or

more of Defendant's publications while residing in Alabama.

91.     As shown above, Defendant used Plaintiff Anderson's and the putative Alabama Class members' names and indica of identity on or in its Data Brokerage Products without the consent of Plaintiff Anderson or the Alabama Class members.

92.     Plaintiff Anderson is domiciled and suffered injury in Alabama.

93.     Defendant has sold these aspects of Plaintiff Anderson's and the Alabama Class's indica of identities intentionally, willfully, and knowingly.

94.     Based upon Defendant's violation of Ala. Code § 6-5-770, *et seq.*, Plaintiff Anderson and members of the Alabama Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Anderson's and members of the Alabama Class's names and any indica of their identities on or in connection with its products, goods, merchandise, and/or services, (2) statutory damages in the amount of $5,000 per violation to Plaintiff Anderson and the members of the Alabama Class, (3) an award of punitive damages or exemplary damages, and (4) an award of reasonable attorneys' fees, court costs, and reasonable expenses under Ala. Code § 12-19-272(a).

**SECOND CLAIM FOR RELIEF**
**Violation of IC 32-36-1-1, *et seq.***
**(By Plaintiffs Leach and Lantz, Individually and on Behalf of the Indiana Class)**

95.     Plaintiffs Leach and Lantz incorporate by reference and re-allege herein all paragraphs alleged above.

96.     Plaintiff Leach and Plaintiff Lantz bring this claim individually and on behalf of the members of the Indiana Class.

97.     IC 32-36-1-1, *et seq.* prohibits an entity or individual from using another individual's "name" or "likeness" "[o]n or connection with a product, merchandise, goods, services or commercial activities."

98.     Plaintiffs Leach and Lantz and the Indiana Class members each subscribed to one or more of Defendant's publications while residing in Indiana.

99.     As shown above, Defendant used Plaintiff Leach's, Plaintiff Lantz's, and the

putative Indiana Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiffs or the Indiana Class members.

100.     Defendant has sold these aspects of Plaintiff Leach's, Plaintiff Lantz's and the Indiana Class's identities intentionally, willfully, and knowingly.

101.     As the subject of a commercial transaction, the aspects of Plaintiffs Leach's and Lantz's and the Indiana Class's personalities that Defendant uses on or in connection with its products, services, or other commercial activities have commercial value.

102.     Based upon Defendant's violation of IC 32-36-1-1, *et seq.*, Plaintiff Leach, Plaintiff Lantz, and members of the Indiana Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Leach's, Plaintiff Lantz's, and members of the Indiana Class's names and any aspects of their personalities on or in connection with its products, goods, merchandise, services, and/or commercial activities (2) statutory damages in the amount of $1,000 per violation to Plaintiff Leach, Plaintiff Lantz, and the members of the Indiana Class, (3) an award of treble or punitive damages, and (4) an award of reasonable attorneys' fees, costs, and reasonable expenses under IC 32-36-1-10 and IC 32-36-1-12.

### THIRD CLAIM FOR RELIEF
### Haw. Rev. Stat. Ann. § 482P-1, *et seq.*
### (By Plaintiff McGruder, Individually and on Behalf of the Hawaii Class)

103.     Plaintiff McGruder incorporates by reference and re-alleges herein all paragraphs alleged above.

104.     Plaintiff McGruder brings this claim individually and on behalf of the members of the Hawaii Class.

105.     Haw. Rev. Stat. Ann. § 482P-1, *et seq.,* prohibits an entity or individual from using another individual's "name … or likeness, on or in goods, merchandise, or services without prior consent."

106.     Liability under the Hawaii Statute is found "without regard as to whether the use is for profit or not for profit."

107.     Plaintiff McGruder and the Hawaii Class members each subscribed to one or

more of Defendant's publications while residing in Hawaii.

108.     As shown above, Defendant used Plaintiff McGruder and the putative Hawaii Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiff McGruder or the Hawaii Class members.

109.     Plaintiff McGruder is domiciled and suffered injury in Hawaii.

110.     Based upon Defendant's violation of Haw. Rev. Stat. Ann. § 482P-1, *et seq.*, Plaintiff McGruder and members of the Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff McGruder's and members of the Hawaii Class's names and any indica of their identities on or in connection with its goods, merchandise, or services, (2) statutory damages in the amount of $10,000 per violation to Plaintiff McGruder and the members of the Hawaii Class, and (3) an award of reasonable attorneys' fees, court costs, and reasonable expenses under Haw. Rev. Stat. Ann. § 482P-6.

## FOURTH CLAIM FOR RELIEF
### Violation of S.D. Codified Laws § 21-64-1, *et seq.*
### (By Plaintiffs Eslinger, Powers, and Ricketts,
### Individually and on Behalf of the South Dakota Class)

111.     Plaintiffs Eslinger, Powers, and Ricketts incorporate by reference and re-allege herein all paragraphs alleged above.

112.     Plaintiffs Eslinger, Powers, and Ricketts bring this claim individually and on behalf of the members of the South Dakota Class.

113.     S.D. Codified Laws § 21-64-1 *eg seq.,* prohibits an entity or individual from using "any aspect of a personality's right of publicity for commercial purpose … without the express written consent of the personality[.]"  "Commercial purpose" includes "the use of an aspect of a personality's right of publicity in connection with a product, merchandise, goods, services, or commercial activity[.]"  S.D. Codified Laws § 21-64-1.

114.     "Dwana Eslinger," "Belinda Powers," and "Cathy Ricketts," which Defendant used on the Data Brokerage Products that it has sold (and continues to sell), are the "names" that

specifically identify Plaintiffs Eslinger, Powers, and Ricketts.  *See* S.D. Codified Laws § 21-64-1(2).

115.    Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members are each a person and a citizen of the state of South Dakota whose name and likeness have commercial value; Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members are thus each a "personality" within the meaning of S.D. Codified Laws § 21-64-1(2).

116.    Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members each have a "right of publicity," a property interest, in his or her "name" and "likeness" within the meaning of S.D. Codified Laws § 21-64-1(3).

117.    Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members each subscribed to one or more of Defendant's publications while residing in South Dakota.

118.    At no time before or at the time Plaintiffs Eslinger, Powers, or Ricketts (or any of the South Dakota Class members) purchased a subscription to one of Defendant's publications did Defendant notify any of them that it would use their "property interest in [their] name . . . [or] likeness" in connection with "a product, merchandise, goods, service, or commercial activity" by using their name, likeness, and other personally identifying attributes (including home address and title of the publication subscribed to — as well as myriad other personal and demographic information such as gender, age, ethnicity, income, political party, religion, and charitable donation history) – on or in connection with the Data Brokerage Products that Defendant sold and continues to sell,  *see* S.D. Codified Laws §§ 21-64-1 & 21-64-1, and none of them has ever provided "express written consent" prior to Defendant using their "property interest in [their] name . . . [or] likeness" for "commercial purposes" in this way.  *See id.*

119.    During the relevant statutory period, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, sold Data Brokerage Products containing the names, likenesses, and other personally identifying attributes of Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first

obtaining the express written consent of Plaintiffs Eslinger, Powers, or Ricketts or any of the South Dakota Class members to authorize Defendant to use their names, likenesses, or other personally identifying attributes in this way.

120.    Defendant's sales of Data Brokerage Products containing the names and likenesses of Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members, on the open market to anyone interested in purchasing them, constituted the use of "an[] aspect of" the "right[s] of publicity" of Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members for "commercial purposes" within the meaning of S.D. Codified Laws §21-64-2.

121.    Defendant failed to obtain the "express written consent" of Plaintiffs Eslinger, Powers, or Ricketts or any of the South Dakota Class members prior to using "an[] aspect of [their] right[s] of publicity for . . . commercial purpose[s]" in the manner alleged herein.  *Id.*

122.    By and through these actions, Defendant used "an[] aspect of" the "right[s] of publicity"  of Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members "for a commercial purpose . . . without [their] express written consent," in direct violation of S.D. Codified Laws §21-64-1, *et seq.*

123.    Defendant's nonconsensual use of the rights of publicity of Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members for commercial purposes did not constitute "the use of [any] personality's name . . . [or] likeness" in any "[l]iterary work," "[m]aterial that has political or newsworthy value," or an "[a]dvertisement of commercial announcement" for any use permitted by S.D. Codified Laws §21-64-6, nor did it constitute "the use of a[ny] personality's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism in connection with a broadcast or reporting of an event or a topic of general or public interest[.]"  S.D. Codified Laws §§21-64-6 & 21-64-8.

124.    Plaintiffs Eslinger, Powers, and Ricketts and the South Dakota Class members have been injured from the violations of their rights of publicity in the manner described herein.

125.    Based upon Defendant's violations of S.D. Codified Laws § 21-64-1, *et seq.*, Plaintiffs Eslinger, Powers, and Ricketts seek: (1) statutory damages of $1,000.00 per violation

(or of $3,000.00 per violation that the Court finds was knowing, willful or intentional) pursuant to S.D. Codified Laws §21-64-5(2) & (4); (2) a declaration that Defendant's conduct described herein violates South Dakota's Right of Publicity Law; (3) an injunction prohibiting Defendant from further using the rights of publicity of its South Dakota customers in connection with the Data Brokerage Products that it sells, and requiring Defendant to obtain prior express written consent from South Dakota customers prior to doing so in the future, pursuant to S.D. Codified Laws § 21-64-5(1); and, (4) costs and reasonable attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**Violation of Cal. Civ. Code § 3344**
**(By Plaintiffs Shaw, Burke, and Martin, Individually and on Behalf of the California Class)**

126.    Plaintiffs Shaw, Burke, and Martin incorporate by reference and re-allege herein all paragraphs alleged above.

127.    Plaintiffs Shaw, Burke, and Martin bring this claim individually and on behalf of the members of the California Class.

128.    Cal. Civ. Code § 3344 prohibits an entity or individual from using another individual's "name … or likeness, in any manner, on or in products, merchandise, or goods … without such person's prior consent[.]"

129.    Plaintiffs Shaw, Burke, and Martin and the California Class members are each a natural person and thus a "person" within the meaning of Cal. Civ. Code § 3344(a).

130.    Plaintiffs Shaw, Burke, and Martin and the California Class members each subscribed to one or more of Defendant's publications while residing in California.

131.    At no time before or at the time Plaintiffs Shaw, Burke, or Martin (or the members of the California Class) purchased subscriptions to Defendant's publications did Defendant notify any of them that it would use their name or likeness "on or in products, merchandise, or goods" by selling Data Brokerage Products on or in which Defendant used their name or likeness (or other personally identifying attributes, including home address and title of the publication subscribed to, gender, age, ethnicity, income, political party, religion, and charitable donation history).  *See* §3344(a).  Plaintiffs Shaw, Burke, and Martin and the members

of the California Class have never consented to Defendant using their names or likenesses "on or in products, merchandise, or goods." *See id.*

132.    After Plaintiffs Shaw, Burke, and Martin and the members of the California Class purchased subscriptions to Defendant's publications, and during the relevant statutory period, Defendant, either directly or through one or more intermediary acting on its behalf and at its direction, knowingly sold Data Brokerage Products containing their names and likenesses (among other identifying and highly sensitive personal information which, *inter alia*, identified each of them as an individual to whom Defendant had sold a subscription to a particular publication) to various third party Data Brokerage Clients, including data aggregators, data appenders, data cooperatives, and others, without first obtaining consent from (or even giving prior notice of these practices to) Plaintiffs Shaw, Burke, or Martin or any member of the California Class.

133.    The Data Brokerage Products that Defendant knowingly sold and continues to sell on the open market, to anyone interested in purchasing them, constitute "products, merchandise, or goods" within the meaning of Cal. Civ. Code § 3344(a).

134.    Defendant knowingly "use[d]" and continues to "use" the names and likenesses of Plaintiffs Shaw, Burke, and Martin and the other California Class members "on or in" such Data Brokerage Products.  *See id*.

135.    Defendant's unauthorized use of the names and likenesses of Plaintiffs Shaw, Burke, and Martin and the other California Class members on its Data Brokerage Products, as alleged herein, did not constitute "use[s] of . . . name[s] . . . or likeness[es] in connection with any news, public affairs, or sports broadcast or account, or any political campaign[.]"  Cal. Civ. Code §3344(d).

136.    By and through these actions, Defendant, either directly or through one or more intermediary acting on its behalf and at its direction, knowingly "use[d] another's name . . . or likeness . . . on or in products, merchandise, or goods," without such person[s'] prior consent," in direct violation of § 3344(a).

137.    Plaintiffs Shaw, Burke, and Martin and the other California Class members have been injured, in California, from the violations of their rights of publicity that they suffered as a result of Defendant's nonconsensual use of their names and likenesses in the manner described herein.

138.    Based upon Defendant's violation of Cal. Civ. Code § 3344, Plaintiffs Shaw, Burke, and Martin seek: (1) $750.00 in statutory liquidated damages or actual damages, whichever is greater, as well as any profits from Defendant's unauthorized uses of their and the California Class members' names and likenesses that are attributable to such uses and are not taken into account in computing any actual damages, for themselves and each California Class member pursuant to §3344(a); (2) an award of punitive damages pursuant to §3344(a); (3) a declaration that Defendant's conduct described herein violates §3344(a); (4) an injunction prohibiting Defendant from further using the names or likenesses of Plaintiffs Shaw, Burke, or Martin or any of the California Class members on or in the Data Brokerage Products that it sells, and requiring Defendant to obtain prior consent from its California customers prior to doing so in the future; and (5) costs and reasonable attorneys' fees pursuant to §3344(a).

### SIXTH CLAIM FOR RELIEF
#### Violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.*
#### (By Plaintiff Sandberg, Individually and on Behalf of the Nevada Class)

139.    Plaintiff Sandberg incorporates by reference and re-alleges herein all paragraphs alleged above.

140.    Plaintiff Sandberg brings this claim individually and on behalf of the members of the Nevada Class.

141.    Nev. Rev. Stat. Ann. § 597.790 states that "[a]ny commercial use by another of the name … of a person requires the written consent of that person or his or her successor in interest[.]"  "Commercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. Ann. § 597.770.

142.    Plaintiff Sandberg and the Nevada Class members each subscribed to one or more of Defendant's publications while residing in Nevada.

143.    As shown above, Defendant used Plaintiff Sandberg's and the putative Nevada Class members' names and identities on or in its Data Brokerage Products, and thus for a commercial use, without the consent of Plaintiff Sandberg or the Nevada Class members.

144.    Plaintiff Sandberg is domiciled and suffered injury in Nevada.

145.    Defendant has sold these aspects of Plaintiff Sandberg's and the Nevada Class's identities intentionally, willfully, and knowingly.

146.    Based upon Defendant's violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.*, Plaintiff Sandberg and members of the Nevada Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Sandberg's and members of the Class's names and any indicia of their identities on or in connection with its products, goods, merchandise, and/or services, (2) statutory damages in the amount of between $750 per violation to Plaintiff Sandberg and the members of the Nevada Class, and (3) an award of punitive damages or exemplary damages, under Nev. Rev. Stat. Ann. § 597.810.

**SEVENTH CLAIM FOR RELIEF**
**Violation of Ohio Rev. Code § 2741.01, *et seq.***
**(By Plaintiffs Mahood, Hicks, Goldberger, and Begin,**
**Individually and on Behalf of the Ohio Class)**

147.    Plaintiffs Mahood, Hicks, Goldberger, and Begin incorporate by reference and re-allege herein all paragraphs alleged above.

148.    Plaintiffs Mahood, Hicks, Goldberger, and Begin bring this claim individually and on behalf of the members of the Ohio Class.

149.    Ohio Rev. Code § 2741.01, *et seq.,* prohibits an entity or individual from using another individual's "name" or "likeness" "[o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities" without prior consent.

150.    Plaintiffs Mahood, Hicks, Goldberger, and Begin and the Ohio Class members each subscribed to one or more of Defendant's publications while residing in Ohio.

151.    Plaintiffs Mahood, Hicks, Goldberger, and Begin and the Ohio Class members are each a natural living person and therefore an "individual" within the meaning of Ohio Rev. Code. § 2741.02.

152.    Prior to and at the time Plaintiffs Mahood, Hicks, Goldberger, and Begin and the Ohio Class members subscribed to Defendant's publications, Defendant did not notify any of them that it would use their names or other identifying attributes "on or in connection with" the Data Brokerage Products that it sells, and none of them has given Defendant authorization to do so.

153.    After Plaintiffs Mahood, Hicks, Goldberger, and Begin and the Ohio Class members subscribed to Defendant's publications, and during the relevant statutory period, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, knowingly advertised and sold Data Brokerage Products containing the names, likenesses, and other personally identifying attributes to various third-party Data Brokerage Clients, including data aggregators, data appenders, data cooperatives, and various other persons interested in buying them, without first obtaining written consent to these practices from (or even giving prior notice to) Plaintiffs Mahood, Hicks, Goldberger, or Begin or any of the Ohio Class members.

154.    The names "Nicki Mahood," "Joyce Hicks," "Stephen Goldberger," and "Dawn Begin," which are some of the identifying attributes Defendant used on or in connection with the Data Brokerage Products that it sold and continues to sell, are "the actual, assumed, or clearly identifiable name[s] or reference[s] [] that identif[y]" Plaintiffs Mahood, Hicks, Goldberger, and Begin as persons.  Accordingly, Defendant used the  "name[s]" or "likeness[es]," and thus the "persona[s]," of Plaintiffs Mahood, Hicks, Goldberger, and Begin within the meaning of Ohio Rev. Code § 2741.01(A), (C).

155.    As alleged above throughout, Defendant knowingly used the names or likenesses (and thus the personas) of Plaintiffs Mahood, Hicks, Goldberger, and Begin and the Ohio Class members on or in connection with its products, merchandise, goods, or services, and thus for

"commercial purposes" within the meaning of Ohio Rev. Code § 2741.01(b)(1).

156.    Defendant did not request, much less obtain, any prior "written, electronic, digital, or any other verifiable means of authorization" from Plaintiffs Mahood, Hicks, Goldberger, or Begin or any of the Ohio Class members prior to using their names or identities (*i.e.*, personas) for commercial purposes within the meaning of Ohio Rev. Code § 2741.01(F).

157.    Accordingly, by using the "name[s]," i.e., "aspect[s] of [the] persona[s]," of Plaintiffs Mahood, Hicks, Goldberger, and Begin and the Ohio Class members "for a commercial purpose . . . during their lifetime[s]," and while they resided in Ohio, without "written consent," Defendant directly violated Ohio Rev. Code § 2741.01(A), (C), 2741.02(A)-(B).

158.    Plaintiffs Mahood, Hicks, Goldberger, and Begin and the Ohio Class members have been injured, while residing in Ohio, from the violations of their rights of publicity caused by Defendant's nonconsensual use of their names and identities (and thus their personas) in this way.

159.    Based upon Defendant's violation of Ohio Rev. Code § 2741.01, *et seq.*, Plaintiffs Mahood, Hicks, Goldberger, and Begin seek: (1) statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to themselves and each Ohio Class member pursuant to Ohio Rev. Code. §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2); (2) an award of punitive or exemplary damages pursuant to Ohio Rev. Code. § 2741.07(A)(1)(c); (3) an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to using their names or identities on or in the Data Brokerage Products that it advertises and sells pursuant to Ohio Rev. Code. § 2741.07(D)(3); and (4) costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. § 2741.07(D).

**EIGHTH CLAIM FOR RELIEF**
**Violation of RCW 63.60.010, *et seq.***
**(By Plaintiff Venable, Individually and on Behalf of the Washington Class)**

160.    Plaintiff Venable incorporates by reference and re-alleges herein all paragraphs alleged above.

161.    Plaintiff Venable brings this claim individually and on behalf of the members of

the Washington Class.

162.     RCW 63.60.010, *et seq.,* prohibits an entity or individual from using another individual's "name … on or in goods, merchandise, or products entered into commerce in this state … without written or oral, express or implied consent of the owner of the right[.]"

163.     Under the Washington Statute, "[a]n infringement may occur under this section without regard to whether the use or activity is for profit or not for profit."  RCW 63.60.050.

164.     Plaintiff Venable and the Washington Class members each subscribed to one or more of Defendant's publications while residing in Washington.

165.     As shown above, Defendant used Plaintiff Venable's and the putative Washington Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiff Venable or the Washington Class members.

166.     Plaintiff Venable is domiciled and suffered injury in Washington.

167.     Defendant has sold these aspects of Plaintiff Venable and the Washington Class's personalities intentionally, willfully, and knowingly.

168.     As the subject of a commercial transaction, the aspects of Plaintiffs Venable's and the Washington Class's identities that Defendant uses on or in its goods, merchandise, or products have commercial value.

169.     Based upon Defendant's violation of RCW 63.60.010, *et seq.*, Plaintiff Venable and members of the Washington Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Venable's and members of the Washington Class's names and any indica of their identities on or in connection with its goods, merchandise, or products, (2) statutory damages in the amount of $1,500 per violation to Plaintiff Venable and the members of the Washington Class, and (3) an award of reasonable attorneys' fees, court costs, and reasonable expenses under RCW 63.60.060.

## NINTH CLAIM FOR RELIEF
### Violation of 32 L.P.R. § 3151, *et seq.*
### (By Plaintiffs Collazo, Ramirez, Ocasio, and Lopez,
### Individually and on Behalf of the Puerto Rico Class)

170.    Plaintiffs Collazo, Ramirez, Ocasio, and Lopez incorporate by reference and re-allege herein all paragraphs alleged above.

171.    Plaintiffs Collazo, Ramirez, Ocasio, and Lopez each bring this claim individually and on behalf of the members of the Puerto Rico Class.

172.    32 L.P.R. § 3151, *et seq.* prohibits an entity or individual from using another individual's "name" or "any representation of a person" for "commercial, trade, or advertising purposes without the previous consent of said person[.]"

173.    Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and the Puerto Rico Class members are each a "person" within the meaning of 32 L.P.R. § 3151(f).

174.    Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and the Puerto Rico Class members each subscribed to one or more of Defendant's publications while residing in Puerto Rico.

175.    Defendant is a corporation and thus a "juridical person" within the meaning of 32 L.P.R. § 3152.

176.     The Data Brokerage Products that Defendant has sold and continues to sell, on the open market to anyone interested in purchasing them, constitute "product[s], merchandise, good[s], or service[s]" within the meaning of 32 L.P.R. §3151(h).

177.    As shown above, Defendant used the "names" and other personally identifying "attributes" of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and each of the putative Puerto Rico Class members on or in its Data Brokerage Products.

178.    The names "Shirley Collazo," "Maribel Ramirez," "Maricarmen Ocasio," and "Magda Lopez," which Defendant used on the Data Brokerage Products that it has sold and continues to sell, are the "name[s] . . . through which an average observer or listener may identify" Plaintiffs Collazo, Ramirez, Ocasio, and Lopez.  32 L.P.R. §3151(c).  Moreover, the

other personally identifying information pertaining to Plaintiffs Collazo, Ramirez, Ocasio, and Lopez that Defendant included on the Data Brokerage Products that it sold and continues to sell – including their addresses, genders, ages, ethnicities, incomes, religions, and political parties – also constituted, individually or collectively, "attribute[s]" of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez "through which an average observer or listener may identify" them. *Id.* Accordingly, by and through the actions alleged herein, Defendant used the "likeness[es]" of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez within the meaning of 32 L.P.R. §3151(c).

179.   At no time before or at the time Plaintiffs Collazo, Ramirez, Ocasio, and Lopez (or any member of the Puerto Rico Class) purchased subscriptions to Defendant's publications did Defendant notify any of them that it would use their names or other personally identifying attributes "in connection with . . . [the] sale of" its Data Brokerage Products, which are "product[s], merchandise, good[s], or service[s]" within the meaning of 32 L.P.R. § 3152 & 32 L.P.R. §3151(c), (h), and none of them has ever provided their "previous consent" to using their "likenesses" for "commercial purposes" in the manner alleged herein. *See* 32 L.P.R. §3152 & 32 L.P.R. §3151.

180.   Because the Data Brokerage Products that Defendant sold and continues to sell contained the names and other personally identifying attributes of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and the members of the Puerto Rico Class, and identified each such person as having been previously sold a subscription to a particular publication published by Defendant, Defendant used the names and other identifying attributes of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and the members of the Puerto Rico Class "in connection with" its sales and rentals of the Data Brokerage Products (as well as in connection with the past sales of magazine subscriptions to Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and Puerto Rico Class members). *See* 32 L.P.R. § 3151(h).  Accordingly, Defendant used the likenesses of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and the members of the Puerto Rico Class for "commercial purposes" or for "trade purposes" within the meaning of the 32 L.P.R. § 3152.

181.    By and through these actions, Defendant knowingly, deliberately, and with reckless disregard for the rights of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and the Puerto Rico Class members, "use[d] [each of their] likeness[es] for commercial [or] trade . . . purposes without the previous consent of said person[s]," in direct violation of 32 L.P.R. § 3152.

182.    Defendant's nonconsensual use of the likenesses of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and each of the Puerto Rico Class members in connection with the Data Brokerage Products that it has sold and continues to sell, as alleged herein, did not constitute uses of their likenesses "as part of a news report, political expression, sporting, or artistic event transmission, or presentation with a legitimate public interest, and where said likeness is not used with commercial or publicity purposes." 32 L.P.R. § 3157(a).

183.    Defendant acted with "[t]otal carelessness or failure to adhere to a minimal standard of care that raises a presumption of indifference to consequences, implying reckless disregard," in the course of using, without consent, the likenesses of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and each of the Puerto Rico Class members in connection with its sales of the Data Brokerage Products. *See* 32 L.P.R. § 3151(h). Moreover, Defendant had every "reason for knowing or believing that [its] activities," as alleged here, "constituted a violation of the [] publicity rights" of Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and each of the Puerto Rico Class members, *see* 32 L.P.R. § 3153, because Defendant, on information and belief, was aware of the existence of and the rights afforded under Puerto Rico's Right of Publicity Act, and understood and appreciated that its conduct, as alleged herein, was and continues to be undertaken in violation thereof. Defendant has nonetheless refused to cease using its Puerto Rico subscribers' likenesses for commercial purposes without their consent in the manner described herein.

184.    Plaintiffs Collazo, Ramirez, Ocasio, and Lopez each bring this action, individually and on behalf of the Puerto Rico Class, "one (1) year following the date on which she first became aware or should have gained knowledge of the occurrence of the facts that

constitute grounds for [the] cause of action [alleged herein] and serves as the foundation for such action or procedure." 32 L.P.R. § 3156.

185.    Plaintiffs Collazo, Ramirez, Ocasio, and Lopez and the members of the Puerto Rico Class have been injured, in Puerto Rico, from the violations of their rights of publicity that they suffered as a result of Defendant's nonconsensual use of their likenesses in the manner described herein.

186.    Based upon Defendant's violations of 32 L.P.R. § 3151, *et seq.*, Plaintiffs Collazo, Ramirez, Ocasio, and Lopez seek: (1) statutory damages of $100,000 per violation determined to be deliberate or due to gross negligence (or of $20,000 per violation not determined to be deliberate or due to gross negligence), or, alternatively and in the court's discretion, of an amount not less than $750.00 per violation, for each of themselves and each Puerto Rico Class member pursuant to 32 L.P.R. § 3153; (2) a declaration that Defendant's conduct described herein violates Puerto Rico's Right of Publicity Act pursuant to 32 L.P.R. § 3153; (3) an injunction prohibiting Defendant from further using the likenesses of its Puerto Rico customers in connection with the Data Brokerage Products that it sells, and requiring Defendant to obtain prior consent from Puerto Rico customers prior to doing so in the future, pursuant to 32 L.P.R. §3153 and 32 L.P.R. §3152; and (4) costs and reasonable attorneys' fees pursuant to pursuant to 32 L.P.R. §3153.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs as the representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent members of the Classes;

b.    For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For all injunctive relief the court finds appropriate; and

h.     For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  January 14, 2022              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
    Philip L. Fraietta

Philip L. Fraietta
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
pfraietta@bursor.com
jdiamond@bursor.com

Ari J. Scharg*
Benjamin Thomassen*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589.6370
Fax: (312) 589.6378
ascharg@edelson.com
bthomassen@edelson.com

Frank S. Hedin*
Arun G. Ravindran

**HEDIN HALL LLP**
1395 Brickell Ave, Ste 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 800-2201
aravindran@hedinhall.com
fhedin@hedinhall.com

Thomas L. Laughlin, IV
Joseph P. Guglielmo
Erin G. Comite
Sean T. Masson
Carey Alexander
**SCOTT+SCOTT LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.:  212-223-6444
Fax:  212-223-6334
tlaughlin@scott-scott.com
jguglielmo@scott-scott.com
ecomite@scott-scott.com
smasson@scott-scott.com
calexander@scott-scott.com

*Pro hac vice application forthcoming

*Counsel for Plaintiffs and the Proposed Classes*