IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

*In re Hearst Communications State Right of Publicity Statute Cases*

No. 1:21-cv-08895-RA-GWG

## DEFENDANT HEARST COMMUNICATIONS, INC.'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>

Jonathan R. Donnellan
Andrea R. Butler
Sarah S. Park
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
Email: jdonnellan@hearst.com
        abutler@hearst.com
        sarah.park@hearst.com

*Attorneys for Defendant Hearst Communications, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

PLAINTIFFS' ALLEGATIONS ......................................................................................... 3

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.     Hearst Did Not Make an Infringing Commercial Use of Any Plaintiff's Name. ...............5

     A.     By Their Terms, the Right of Publicity Laws Apply Only to a Narrow Set of Infringing "Uses" of Identity, None of Which Are Alleged Here. ......................... 5

     B.     Hearst's Purported Communication of Data, Without More, Is Not an Infringing Use of any Identity.................................................................................................. 9

     C.     At Most, Plaintiffs Allege an Incidental Use of Their Identities That Does Not Infringe the Right of Publicity Laws. .................................................................. 16

II.    If Plaintiffs' Overbroad Reading of the Right of Publicity Laws Were Credited, the First Amendment and Equivalent State Protections Would Bar Any Application of Those Laws to Hearst's Alleged Speech. ....................................................................................18

     A.     Hearst's Alleged Communication Is Fully Protected Speech............................. 19

     B.     The Right of Publicity Laws Are Content-Based and Speaker-Based Restrictions on Speech, on Their Face.................................................................................... 21

     C.     The Right of Publicity Laws Would Not Satisfy Strict Scrutiny as Applied to Hearst's Alleged Speech. .................................................................................... 23

CONCLUSION.................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aligo v. Time-Life Books, Inc.*,
   No. C 94–20707, 1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ...............................................7

*Allison v. Vintage Sports Plaques*,
   136 F.3d 1443 (11th Cir. 1998) ......................................................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).......................................................................................................4

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006).....................................................................................................19

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................................4

*Bergen v. Martindale-Hubbell, Inc.*,
   285 S.E.2d 6 (Ga. 1981)...............................................................................................20

*Boelter v. Hearst Communications, Inc.*,
   192 F. Supp. 3d 427 (S.D.N.Y. 2016)...........................................................................20

*Brooks v. Thomson Reuters Corp.*,
   No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ..................................13, 14

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011).....................................................................................................23

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
   95 F.3d 959 (10th Cir. 1996) .......................................................................................22

*Clark v. Martinez*,
   543 U.S. 371 (2005).....................................................................................................19

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387 (Cal. 2001).........................................................................................6, 14

*Current Audio, Inc. v. RCA Corp.*,
   71 Misc. 2d 831 (Sup. Ct. N.Y. Cnty. 1972) ..................................................................6

*Davis v. Elec. Arts Inc.*,
   775 F.3d 1172 (9th Cir. 2015) .....................................................................................16, 17

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ................................................19

*Dobrowolski v. Intelius, Inc.*,
    No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)...........................10

*Dwyer v. American Express Co.*,
    652 N.E.2d 1351 (Ill. App. Ct. 1995) ...........................................12, 13

*Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*,
    No. 19-CV-1458, 2020 WL 2795198 (W.D. Wash. May 29, 2020) ......................7

*Esch v. Universal Pictures Co.*,
    No. 09-CV-02258, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) .........................6

*ETW Corp. v. Jireh Publ'g, Inc.*,
    332 F.3d 915 (6th Cir. 2003) ..........................................6, 12, 18, 20

*Exeltis USA Inc. v. First Databank, Inc.*,
    520 F. Supp. 3d 1225 (N.D. Cal. 2021) ........................................20

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ......................................14, 24

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991).....................................................15, 16

*Frazier v. Boomsma*,
    No. CV07-08040, 2007 WL 2808559 (D. Ariz. Sept. 27, 2007)...........................22

*Haelan Lab'ys, Inc. v. Topps Chewing Gum, Inc.*,
    202 F.2d 866 (2d Cir. 1953).................................................5

*Hart v. Elec. Arts, Inc.*,
    717 F.3d 141 (3d Cir. 2013).............................................5, 6, 7

*Harvey v. Sys. Effect, LLC*,
    154 N.E.3d 293 (Ohio Ct. App. 2020).......................................6, 17

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ...............................................20

*Howard v. Antilla*,
    294 F.3d 244 (1st Cir. 2002)................................................5

*Huston v. Hearst Commc'ns, Inc.*,
    No. 21-cv-1196, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022) ..................2, 10, 11, 14

*Joseph Burstyn, Inc. v. Wilson*,
   343 U.S. 495 (1952)................................................................................20

*Krause v. RocketReach, LLC*,
   No. 21 CV 1938, --- F. Supp. 3d ----, 2021 WL 4282700 (N.D. Ill. Sept. 21,
   2021) .......................................................................................................12

*Nieman v. Versuslaw, Inc.*,
   No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) .....................................15

*No Doubt v. Activision Publ'g, Inc.*,
   192 Cal. App. 4th 1018 (2011) ...............................................................6

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015)..............................................................21, 22, 23, 24

*Ret. Sys. v. MF Glob., Ltd.*,
   620 F.3d 137 (2d Cir. 2010).....................................................................4

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ...........................................................19, 22

*Schifano v. Greene Cnty. Greyhound Park, Inc.*,
   624 So. 2d 178 (Ala. 1993)......................................................................17

*Schroeder v. Volvo Grp. N. Am., LLC*,
   No. LACV 20-05127, 2020 WL 6562242 (C.D. Cal. Sept. 3, 2020) .....................................16

*Shibley v. Time, Inc.*,
   341 N.E.2d 337 (Ohio Ct. App. 1975)......................................................12

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)..............................................................................21

*Stillman v. Paramount Pictures Corp.*,
   147 N.Y.S.2d 504 (Sup. Ct. N.Y. Cnty. 1956) ......................................17

*U.S. News & World Report, Inc. v. Avrahami*,
   No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996)............................10, 12, 17, 19

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000)..............................................................................23

*Vrdolyak v. Avvo, Inc.*,
   206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...................................................19

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
   992 N.E.2d 859 (Ind. Ct. App. 2013)....................................................17

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977)..................................................................................................16

**Statutes**

17 U.S.C. § 107.............................................................................................................6

17 U.S.C. § 201(d)(1) ...................................................................................................9

Ala. Code § 6-5-770, *et seq.* ............................................................................... *passim*

Cal. Civ. Code § 3344 ......................................................................................... *passim*

Cal. Civ. Code § 3344.1 ...........................................................................................9, 18

Haw. Rev. Stat. § 482P-1, *et seq.* ...................................................................... *passim*

Ind. Code § 32-36-1-1, *et seq.* ........................................................................... *passim*

Nev. Rev. Stat. § 597.770, *et seq.* ..................................................................... *passim*

Ohio Rev. Code Ann. § 2741.01, *et seq.* ............................................................ *passim*

Ohio Rev. Code Ann. § 3345.011 .............................................................................21

P.R. Laws Ann. tit. 32, § 3151, *et seq.* .............................................................. *passim*

S.D. Codified Laws § 21-64-1, *et seq.* ............................................................... *passim*

Wash. Rev. Code § 63.60.010, *et seq.* ............................................................... *passim*

**Other Authorities**

H.R. Rep. 2727, Reg. Sess. (Wash. 2008) ...............................................................23

J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* §
    1:23 (2d ed. 2012).........................................................................................5, 6, 13

Restatement (Second) of Torts § 652C cmt. d (1977) ......................................15, 16, 17

Restatement (Third) of Unfair Competition § 46 (1995)............................................6

Restatement (Third) of Unfair Competition § 47 cmt. c (1995)...............................22

S. 714, 31st Leg., Reg. Sess. (Haw. 2021)................................................................9

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev.
    193 (1890).......................................................................................................5

Defendant Hearst Communications, Inc. ("Hearst" or "Defendant"), through its undersigned counsel, hereby moves to dismiss the Consolidated Amended Class Action Complaint [ECF No. 29] ("Compl."), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This case has nothing to do with the right of publicity.  The Complaint is devoid of allegations that any name was used for a commercial purpose as defined under right of publicity laws, such as advertising, marketing, promotion, or merchandising.  There is no allegation that any name was used to motivate a transaction, the way a tennis star's name is used to sell sporting goods.  Plaintiffs do not (and cannot) even specifically allege Hearst communicated *their individual names* to anyone.  Yet Plaintiffs seek untold millions from Hearst for violating their "right[s] of publicity" under the laws of eight states and Puerto Rico, by allegedly providing a list of magazine subscribers to contractual counterparties.

Plaintiffs contort the right of publicity beyond recognition.  Even if Hearst did what Plaintiffs allege, not just *any* mention of a name implicates the right of publicity.  A narrow right of relatively recent vintage, the right of publicity is defined in each of the nine jurisdictions as a *property* right in limited *commercial uses* of one's *unique* name or likeness, not unlike intellectual property.  The right of publicity archetypally involves advertising, promotion, marketing, or similar commercial activities that make *use* of the identity's unique value to influence a transaction, thereby appropriating the value to the user.  The laws at issue require consent for such a covered commercial use of identity.  The laws do not in any way govern the possible communication of a list of names to a contractual partner.

Every court to examine a claim like Plaintiffs' has rejected it.  Just this month, Judge Mihm of the U.S. District Court for the Central District of Illinois summarily dismissed an Illinois right of publicity claim brought by counsel for Plaintiffs on behalf of another purported magazine subscriber, making the same central allegations against Hearst regarding the communication of subscriber names.  *See Huston v. Hearst Commc'ns, Inc.*, No. 21-cv-1196, 2022 WL 385176, at *3 (C.D. Ill. Feb. 7, 2022).  Judge Mihm held the allegations failed to state a claim that the subscriber's identity was used for a "commercial purpose," namely advertising or promotion of another product, as required under the Illinois law.  *Id.*  Every right of publicity statute at issue here has a homologous requirement, mandating the same result.

*Huston* and other authorities uniformly establish that an individual has no right of publicity in one's name as part of a mailing list.  There is no right of publicity in a name, in and of itself, absent its use for a covered commercial purpose under the laws—*e.g.*, to *publicize* or promote something.  Plaintiffs allege no such use here.

The implications of Plaintiffs' claims are far-reaching.  Plaintiffs urge this Court to accept a premise that no court has ever accepted before—that within the familiar contours of the right of publicity there is couched the ability to effectively ban the distribution of telephone directories, directories listing professionals, and other publications that have historically received robust Constitutional protection, absent the express consent of those whose names are included. Plaintiffs' position is plainly untenable, and there is no limiting principle that can be deduced from the Complaint.

Plaintiffs' interpretation not only lacks textual basis and defies reason, it also starkly illustrates why the First Amendment has always been an essential bulwark against potential abuses of the right of publicity.  The Complaint attempts to graft an expansive and poorly

defined restraint on speech onto laws that were never intended to achieve that result and are therefore wildly ill-suited to the task.  Even if Plaintiffs could rewrite the right of publicity as they wish, the claim would be an overreach and would fail, as the First Amendment would not countenance such a blunderbuss restriction on speech.

For the reasons herein, Hearst respectfully requests that the Court dismiss Plaintiffs' claims, in their entirety, with prejudice.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs' allegations are sparse and most notable for their omission of any facts supporting a right of publicity claim.  The Complaint does not allege that Plaintiffs' names or identities were ever used in any way to advertise, promote, or market any product or service. Rather, Plaintiffs allege that Hearst is a magazine publisher that rents or sells certain data (so-called "Data Brokerage Products"), allegedly comprised of "the identities of its subscription customers," to third parties with whom Hearst has standing commercial relationships (so-called "Data Brokerage Clients").  Compl. ¶¶ 2–3, 62.[1]  Plaintiffs do not say how many Data Brokerage Clients receive Hearst's subscriber names.  According to Plaintiffs, all of whom are alleged subscribers, Hearst's practices violate the right of publicity laws where they reside—Alabama, California, Hawaii, Indiana, Nevada, Ohio, Puerto Rico, South Dakota, and Washington.  *See id.* ¶¶ 6, 34–53.[2]

---

[1]    Among other material inaccuracies in the Complaint, Plaintiffs' allegation that Hearst Communications, Inc. publishes the magazines they purchased is incorrect.  Compl. ¶ 1.  Moreover, should this case continue, issues of notice, consent, and applicable statutes of limitations, would likely preclude class certification.  Nonetheless, Plaintiffs' allegations are assumed to be true for purposes of this Motion.

[2]    Ala. Code § 6-5-770, *et seq.* ("Alabama Statute"); Cal. Civ. Code § 3344 ("California Statute"); Haw. Rev. Stat. § 482P-1, *et seq.* ("Hawaii Statute"); Ind. Code § 32-36-1-1, *et seq.* ("Indiana Statute"); Nev. Rev. Stat. § 597.770, *et seq.* ("Nevada Statute"); Ohio Rev. Code Ann. § 2741.01, *et seq.* ("Ohio Statute"); P.R. Laws Ann. tit. 32, § 3151, *et seq.* ("Puerto Rico Statute"); S.D. Codified Laws § 21-64-1, *et seq.* ("South Dakota Statute"); Wash. Rev. Code § 63.60.010, *et seq.* ("Washington Statute").

While Plaintiffs say they never consented to their names being sold or rented to Data Brokerage Clients, they also do not allege their names ever *were* sold or rented. According to Plaintiffs, Hearst's "customers remain unaware that their identities" are being disclosed. *Id.* ¶ 67. Plaintiffs say they do not know how many subscribers are referenced in Hearst's data, but surmise there may be "hundreds of thousands" in each of the states represented. *Id.* ¶ 80. Plaintiffs (despite bringing right of *publicity* claims) do not allege that any recipient of subscriber data has known, at any time, what names the data contained. Logically, Plaintiffs therefore do not allege that any recipient ascribed a value to any unique name they purportedly received, including that of any Plaintiff—let alone that anyone was induced to purchase a Data Brokerage Product because of any Plaintiff's name. All the statutes at issue award significant statutory damages under certain conditions.[3]

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Furthermore, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if the defense appears on the face of the complaint." *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (citation omitted).

---

[3]    Ala. Code § 6-5-774; Cal. Civ. Code § 3344(a); Haw. Rev. Stat. § 482P-6; Ind. Code § 32-36-1-10; Nev. Rev. Stat. § 597.810; Ohio Rev. Code Ann. § 2741.07; P.R. Laws Ann. tit. 32, § 3156; S.D. Codified Laws § 21-64-5; Wash. Rev. Code § 63.60.060.

## ARGUMENT

### I.     Hearst Did Not Make an Infringing Commercial Use of Any Plaintiff's Name.

Throughout the evolution of the right of publicity, including its codification by states, one principle has remained constant—not every allusion to one's name is, in and of itself, protectable.  The question is: what specific *use* has been made of one's identity, and is that particular use governed by the right of publicity?  Because Plaintiffs fail to allege an infringing use of their identities under any of the laws they cite, they fail to state a claim for relief.

### A.     By Their Terms, the Right of Publicity Laws Apply Only to a Narrow Set of Infringing "Uses" of Identity, None of Which Are Alleged Here.

The right of publicity statutes at issue were not drafted in a vacuum but resulted from the recent development in American jurisprudence of a recognized protection for an identity's unique value in limited commercial contexts.  While the genesis of the right lies in an "invasion of privacy by appropriation" tort, itself of relatively recent origin,[4] the right of publicity appeared largely in response to the limitations of a "privacy" right in "protecting the property interests of celebrities and people already in the public eye."  *Hart v. Elec. Arts, Inc.*, 717 F.3d 141, 150 (3d Cir. 2013).  At its inception, the right of publicity was primarily to protect famous likenesses— those with a meaningful commercial value to protect—from unauthorized use in advertisements, endorsements, promotion, merchandising, and the like.  The phrase "right of publicity" first appeared in a case involving the use of "photographs of leading baseball-players" to sell gum. *Haelan Lab'ys, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866, 867–68 (2d Cir. 1953); *see also*

---

[4]      *See* J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* § 1:23 (2d ed. 2012) (hereinafter "McCarthy").  This appropriation tort was one of four causes of action "distilled" by Dean William Prosser from the "amorphous legal protection of privacy," as originally set forth in the seminal article by future Justice Brandeis and Samuel Warren.  *Howard v. Antilla*, 294 F.3d 244, 247–48 (1st Cir. 2002) (citing Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)).

Restatement (Third) of Unfair Competition § 46 cmt. d (1995) ("The right is most often invoked to protect the value associated with the identity of a celebrity.").

In a typical right of publicity case, a famous likeness is reproduced to "capitalize on [its] . . . fan-base," to influence the purchase of a product. *Hart*, 717 F.3d at 162 (citing *No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th 1018, 1035 (2011)). It is the identity's *unique* utility in influencing commercial behavior that may have value, as property. *See Esch v. Universal Pictures Co.*, No. 09-CV-02258, 2010 WL 5600989, at *2 (N.D. Ala. Nov. 2, 2010) ("The plaintiff must demonstrate that there is a 'unique quality or value in his likeness' that, if appropriated" would benefit defendant) (quoting *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1447 (11th Cir. 1998)); McCarthy § 5:19 (right of publicity is infringed by "[u]sing a person's identity . . . to *draw attention to* a product or advertisement") (emphasis added); *Current Audio, Inc. v. RCA Corp.*, 71 Misc. 2d 831, 835–36 (Sup. Ct. N.Y. Cnty. 1972) (right of publicity "is at best a limited [right] and has been accorded vitality only where there is an unauthorized use of the name or picture for advertising purposes").

While the modern right of publicity is not confined to public figures, true to its origins it remains "in the nature of a property right" in the exploitation of one's unique individual identity in narrow commercial contexts.[5]  Restatement (Third) of Unfair Competition § 46 cmt. g (1995);

---

[5]     Fittingly, courts have regularly looked to intellectual property to help define the contours of publicity rights in the jurisdictions at issue here. *See, e.g.*, *Allison*, 136 F.3d at 1448 (explaining policy rationale for applying the first-sale doctrine on the transferability of "the three principal forms of intellectual property rights"—copyright, patent, and trademark—to the right of publicity in Alabama); Ala. Code § 6-5-773(f) cmt. (subsection (f) of the Alabama Statute "is an articulation of the first sale doctrine as recognized in *Allison*"); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 938 (6th Cir. 2003) (applying copyright's transformative use test to balance the Ohio common law right of publicity against the freedom of expression); *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 308 (Ohio Ct. App. 2020) (holding *ETW* was consistent with the Ohio Statute and the Restatement); *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 404 (Cal. 2001) (same, applying California Statute). Notably, exceptions to the right of publicity in the statutes at issue are framed in terms of permissible "uses" of property—Alabama calls such permissible uses of identity "fair use[s]," a concept borrowed from copyright. Ala. Code § 6-5-773(b) ("It is a fair use . . . if the use of the indicia of identity . . . is part of an . . . expressive work"); 17 U.S.C. § 107.

*see also Hart*, 717 F.3d at 151 ("[T]he goal of maintaining a right of publicity is to protect the property interest that an individual gains and enjoys in his identity through his labor and effort. . . . [A]s with protections for intellectual property, the right of publicity is designed to encourage further development of this property interest.").

The nine statutes here follow the rule, defining the right of publicity as a *property* right over circumscribed *commercial* uses of one's *unique* identity, through advertising, marketing, promotion, endorsement, or equivalent commercial activity.  *See, e.g.*, *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, No. 19-CV-1458, 2020 WL 2795198, at *9 (W.D. Wash. May 29, 2020) ("[T]he statutory language is clear: The [Washington Statute] does not apply to circumstances where the use did not inaccurately claim or state an endorsement by the individual or personality."); *Aligo v. Time-Life Books, Inc.*, No. C 94–20707, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994) (under California Statute plaintiff must show "defendant knowingly used the plaintiff's name, photograph or likeness for purposes of advertising or solicitation and . . . a direct connection between the use and the commercial purpose").[6]  In relevant part, the statutes provide:

- **Alabama Code § 6-5-772**: "any person . . . who *uses or causes the use* of the indicia of identity of a person, *on or in products, goods, merchandise, or services entered into commerce in this state*, or for purposes of *advertising or selling*, or *soliciting purchases* of, products, goods, merchandise, or services . . . without consent shall be liable . . . ."

- **California Civ. Code § 3344**: "Any person who knowingly *uses*" indicia of identity "*on or in products, merchandise, or goods*", or for purposes of *advertising or selling*, or *soliciting purchases of*, products, merchandise, goods or services" without consent "shall be liable . . . ."

---

[6]      Furthermore, the Alabama, Hawaii, Indiana, Nevada, and Washington Statutes apply by their terms only to the "use" of identity *within* the respective state.  Ala. Code § 6-5-772(a) (products "entered into commerce in this state"); Wash. Rev. Code § 63.60.050 (same); Haw. Rev. Stat. § 482P-5 (same); Ind. Code § 32-36-1-1(a) (law "applies to an act or event that occurs within Indiana"); Nev. Rev. Stat. § 597.780 (law "appl[ies] to any commercial use within this state").  Plaintiffs allege no facts suggesting any infringing "use" occurred in these states—they allege only harm to the respective representative Plaintiffs by virtue of domicile.  Compl. ¶¶ 92, 98, 109, 144, 166.  For this additional reason Counts I, II, III, VI, and VIII fail to state a claim and should be dismissed.

- **Hawaii Rev. Stat. § 482P-5**: "any person who *uses or authorizes the use of*" indicia of identity "*on or in goods, merchandise, or services entered into commerce in this State*, or for purposes of *advertising* products, merchandise, goods, or services" without consent "has infringed a publicity right . . . ."

- **Indiana Code §§ 32-36-1-2 & 32-36-1-8**: "A person may not *use* an aspect of a personality's right of publicity *for a commercial purpose* . . . without having obtained previous written consent"; "'*[C]ommercial purpose*' means the *use* of an aspect of a personality's right of publicity as follows: (1) *On or in connection with a product, merchandise, goods, services, or commercial activities*. (2) For *advertising or soliciting purchases* of products, merchandise, goods, services, or for *promoting commercial activities*. (3) For the purpose of fundraising."

- **Nevada Rev. Stat. §§ 597.780 & 597.810**: "Any *commercial use* of" identity without consent is subject to liability; the law "appl[ies] to *any commercial use within this state* of a living or deceased person's name, voice, signature, photograph or likeness . . . ."

- **Ohio Rev. Code Ann. §§ 2741.01 & 2741.02**: "a person shall not *use* any aspect of an individual's persona *for a commercial purpose*"; "'*Commercial purpose*' means the *use of or reference to*" identity "(1) *On or in connection with a place, product, merchandise, goods, services, or other commercial activities* . . . ; (2) For *advertising or soliciting [a] purchase* . . . ; (3) For the purpose of *promoting* travel to a place; (4) For the purpose of fundraising."

- **Puerto Rico St., P.R. Laws Ann. tit. 32, §§ 3151 & 3152**: "Any . . . person who *uses* another's likeness *for commercial, trade, or advertising purposes* without [] previous consent . . . shall be liable"; "*Commercial purpose*. - The *use* of a person's likeness in connection with *an advertisement, offer, or sale of a product, merchandise, good or service in the market*."

- **South Dakota Codified Laws §§ 21-64-1 & 21-64-2**: "No person may *use* any aspect of a personality's right of publicity for a *commercial purpose* . . . without [] express written consent"; "'*Commercial purpose*,' the *use* of an aspect of a personality's right of publicity *in connection with a product, merchandise, goods, service, or commercial activity*; for *advertising or soliciting purchases* of a product, merchandise, goods, service, or for promoting a commercial activity; or for the purpose of fund-raising."

- **Washington Rev. Code §§ 63.60.010 & 63.60.050**: "Any *person who uses or authorizes the use of*" indicia of identity "*on or in goods, merchandise, or products entered into commerce in this state*, or for purposes of *advertising* products, merchandise, goods, or services" without consent "has infringed such right"; "The right exists whether or not it was *commercially exploited* by the individual or the personality" during their lifetime.

The nine statutes all deem this right of publicity, or the right to protect the use of one's identity in commercial contexts such as advertising or marketing, to be a "*property*" right.[7] Importantly, this is a limited property right, confined to specified commercial uses.  Per the laws' plain text, it is *not* a "property" right in one's name as a means of identification.  In the same way not every reference to a work implicates the intellectual property holder's rights, the right of publicity does not permit a right of refusal over every reference to one's name.  Rather, the text of the laws reproduced above shows it is a narrow property right only in the "use" of a name for a covered commercial purpose, particularly advertising, marketing, merchandising, endorsement, or promotion.  As a result, under the nine statutes at issue, Plaintiffs must allege not just any *mention* of their names, but an infringing *use*.  As every court has found to date, Plaintiffs' claims fail this test.

**B.**     **Hearst's Purported Communication of Data, Without More, Is Not an Infringing Use of any Identity.**

The Complaint is devoid of any factual allegations that would bring it within the right of publicity.  Those courts that have examined claims similar to Plaintiffs' have consistently rejected them because the (possible) communication of people's names as part of a data set or mailing list, in and of itself, makes no "use" of the commercial value of an individual's identity for the circumscribed purpose of the right of publicity laws.  Hearst is aware of no authority to

---

[7]     Ala. Code § 6-5-771(3) (defining right of publicity as "property" right); Cal. Civ. Code § 3344.1(b) (same); Haw. Rev. Stat. § 482P-2 (same); Ind. Code § 32-36-1-16 (same); Ohio Rev. Code Ann. §§ 2741.01(D) & 2741.04 (same); P.R. Laws Ann. tit. 32, § 3154 (same); S.D. Codified Laws §§ 21-64-1 & 21-64-4 (same); Wash. Rev. Code § 63.60.010 (same).  Nevada does not use the term "property" to define the right of publicity but, like the other eight states, describes it as "freely transferable," assignable and descendible as property (including intellectual property) would be.  Nev. Rev. Stat. § 597.800(1); *see* 17 U.S.C. § 201(d)(1) (copyright ownership rights are transferable and descendible); S. 714, 31st Leg., Reg. Sess. (Haw. 2021) (according to committee report, Hawaii Statute was intended to "allow[] the people of Hawaii to protect their legacy and rights that are not covered by federal copyright law or state and federal trademark laws").

the contrary, under any state's law.  Simply put, the existing authority across jurisdictions has repudiated Plaintiffs' claims, typically at the pleading stage.

The Central District of Illinois recently dismissed a virtually identical claim by another alleged magazine subscriber employing counsel who also represent Plaintiffs.  *Huston*, 2022 WL 385176, at *3.  The plaintiff in *Huston* alleged Hearst used plaintiff's identity for a "commercial purpose" (defined in the Illinois Right of Publicity Act as, *inter alia*, "on or in connection with the offering for sale or sale of a product, merchandise, [or] goods") when Hearst "sold" "Mailing List[s]" of magazine subscribers, thereby violating the law to the tune of $1,000 per class member.  *Id.* at *1–2.  The court held the plaintiff failed to state a claim that her identity was used for a "commercial purpose" under the IRPA, which governs "the use of an individual's identity to promote or entice the purchase of some other product."  *Id.* at *2 (citing *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities *are* part of the product offered for sale.")) (emphasis added).  The court found the plaintiff failed to identify "any case law to support [her] interpretation of the IRPA," that Hearst's alleged subscriber data could be an infringing "product," "merchandise," or "good."  *Id.* at *3.  The reasoning of *Huston* applies to the nine statutes at issue here, which all employ similar language to the same ends.  *Huston* is, moreover, in accord with other courts that have examined similar claims.

In *U.S. News & World Report, Inc. v. Avrahami*, No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996), cited by the *Huston* decision, the court held that a magazine subscriber whose name and address were "rented" as part of a larger subscriber mailing list for direct marketing purposes "*has no property right in [his] name*" for purposes of such a list and could

not claim a violation of Virginia's right of publicity statute.  *Id.* at *1, 6 (emphasis added).

Addressing the common and long-standing industry practice of subscriber mailing lists, the court

held the "exchange of the defendant's name as part of a mailing list does not invade any property

right he may have in his name" or violate his right of publicity.  *Id.* at *6.  As the court stated,

"[t]he inclusion of a name as part of a larger mailing list for purposes of a direct mail solicitation

*does not constitute use of that name in the promotion of an actual product or service itself.*"  *Id.*

at *7 (emphasis added); *see also id.* ("The inclusion of an individual name as part of a mailing

list constitutes neither a use for an advertising purpose nor a use for the purpose of trade, as

defined by the statute.").

        In concluding the subscriber's name lacked "any commercial value" within the meaning

of the right of publicity, *id.* at *6, the court observed that "[i]t is not possible to rent only one

name on a mailing list. . . .  Typically, the [U.S. News] lists contain at least 100,000 names and

addresses.  *There is no value associated with or assigned to an individual name on a mailing list.*

*The value of a list comes not from the individual names contained on the list, but entirely from*

*the list's association with a particular organization or group.*"  *Id.* at *2 (emphasis added).

Critically, "neither U.S. News nor the [recipient of the list] Smithsonian knew the specific names

of the individuals contained on the magnetic computer strip, *U.S. News did not identify any*

*individual name that would be contained on the magnetic computer strip, and U.S. News did not*

*promote or advertise its list as containing any particular name.*"  *Id.* at *4 (emphasis added).

        This parallels Plaintiffs' allegations.  Data Brokerage Clients allegedly seek data from

Hearst because "Hearst maintains a vast digital database" of subscribers—*i.e.*, because of the

data's association with *Hearst*, not with any one of the Plaintiffs.  Compl. ¶ 60.  There is no

allegation that any recipient was ever aware of any one of the "hundreds of thousands" of names

of subscribers in a given state, let alone that any recipient sought out data because it included any of the Plaintiffs. *Id.* ¶ 80.  There is no allegation Hearst "promote[d] or advertise[d] its list as containing any particular name." *U.S. News*, 1996 WL 1065557, at *4.[8]  No Plaintiff's property right in the commercial value of their identity has been infringed, or even used at all, in a manner contemplated by the right of publicity laws at issue.

By the same token, in *Shibley v. Time, Inc.*, 341 N.E.2d 337 (Ohio Ct. App. 1975), the court affirmed dismissal of a claim under then Ohio common law for "appropriation . . . of [] personality" against magazine publishers for "selling subscription lists to direct mail advertising businesses . . . ." *Id.* at 338–39.  Citing Prosser, the court observed the appropriation tort "refers to those situations where the plaintiff's name or likeness is *displayed to the public* to indicate that the plaintiff *indorses the defendant's product or business*," and found this commercial purpose was not achieved through the sale of subscriber lists. *Id.* at 339 (emphases added).[9]

Citing *Shibley*, the court in *Dwyer v. American Express Co.*, 652 N.E.2d 1351 (Ill. App. Ct. 1995) affirmed dismissal of an Illinois common law appropriation claim arising out of American Express's "practice of renting information" about cardholders. *Id.* at 1352–53.  The court found no "appropriation . . . of one's name or likeness for another's use or benefit," reasoning:

> [A] single, random cardholder's name has little or no intrinsic value to defendants (or a merchant).  Rather, an individual name has value only when it is associated with one of defendants' lists. . . . [D]efendants' practices do not deprive any of the cardholders of any value their individual names may possess.

---

[8]    Plaintiffs' allegations are easily distinguishable from cases where a service shows a "free preview" of data using an individual's identity to encourage a user to pay for access to more data, which some courts have found to make a promotional use of identity. *See, e.g.*, *Krause v. RocketReach, LLC*, No. 21 CV 1938, --- F. Supp. 3d ----, 2021 WL 4282700, at *1, 3 (N.D. Ill. Sept. 21, 2021) (distinguishing between mere inclusion in informational directory, which plaintiff did not challenge, versus alleged use of identity in free "preview" to "entice customers to purchase [a] subscription service," which did state a claim for violation of the Illinois Right of Publicity Act).

[9]    *See ETW*, 332 F.3d at 930–31, 952 n.2 (Ohio common law largely followed the Restatement, as evolved from Prosser, and is consistent with the Ohio Statute).

*Id.* at 1355–56.  As shown above, the same holds true here.

Per Plaintiffs' own allegations, it makes no difference whatsoever to the commercial value of the data if a given subscriber is a celebrity or a recluse.  The recipient of the data would not know or care; it is receiving "hundreds of thousands" of names without allegedly being aware of *any* of them.  Compl. ¶ 80.  It would turn the right of publicity on its head for a plaintiff to claim that right over a "product" for which her identity, or even its fame or celebrity, is irrelevant.  Such a claim does not come close to alleging "publicity" of any kind.  *See* McCarthy § 5:19 (right of publicity means using "identity . . . to draw attention to a product").

Even if "Data Brokerage Clients" knew which subscribers were contained within lists they received, which is not alleged, this still would not be enough to state a right of publicity claim absent allegations showing a use of identity for advertising, promotion, or equivalent commercial purposes.  In *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), the court granted a motion to dismiss right of publicity claims over dossiers of personal information, sold by Thomson Reuters to users looking for "all the information Thomson Reuters has on an individual in the company's database . . . ."  *Id.* at *1.  The plaintiffs, representing those whose information was in the database, claimed violations of California's common law and statutory rights of publicity.  *Id.* at *2.  Even though in *Brooks*, unlike here, the user sought information on a particular individual, the court held that the individual's right of publicity was still not infringed because their identity was not used "'for promotional purposes,' *i.e.*, to advertise or promote a separate product or service.  Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service."  *Id.* at *4.  The *Brooks* court found no "appropriation" of identity for purposes of the right of publicity where the plaintiffs' information "[was] not sent to

-13-

unsuspecting . . . users to advertise or promote . . . some other third party's products or services;
they were sent only to . . . subscribers who deliberately paid Thomson Reuters *to receive
information about them*."  *Id.* at *5 (emphasis added).

As did the court in *Huston*, the *Brooks* court rejected a fiction similar to the one that
Plaintiffs urge here—that a data set is a "product" separate from, and promoted by, the names
that are "in" the data set, for purposes of the right of publicity laws.  As the *Brooks* court said
about Thomson Reuters's dossiers of personal information, "Plaintiffs allege the product *is* their
name, likeness, and personal information.  Plaintiffs do not cite a single right of publicity case
with analogous facts."  *Id.* at *4 (emphasis in original).  Like the *Brooks* and *Huston* courts,
Hearst is unaware of any case finding a right of publicity in such facts.

Likewise, in *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F.
Supp. 3d 767 (N.D. Cal. 2019), the court dismissed a California common law right of publicity
claim predicated on Facebook's sharing users' personal information, holding the "allegations
about how Facebook shared the plaintiffs' information with third parties is categorically different
from the type of conduct made unlawful by this tort, such as using a plaintiff's face or name to
promote a product or service."  *Id.* at 803.  The *In re Facebook* court quoted *Comedy III*, 25 Cal.
4th at 399, for the principle that the "right of publicity, like copyright, protects a form of
intellectual property that society deems to have some social utility," and "[y]ears of labor may be
required before one's skill, reputation, notoriety or virtues are sufficiently developed to permit an
economic return through some medium of commercial promotion."  *Id.*[10]

---

[10]     Although *In re Facebook* applied California common law on the right of publicity, *Comedy III* was decided
under the California Statute, 25 Cal. 4th at 391, and the *Brooks* court found *In re Facebook* persuasive in deciding
claims under both California common law and the California Statute.  *See* 2021 WL 3621837, at *5.

-14-

In keeping with the text of all nine statutes, *see supra*, Section I.A., the cases herein underscore that names in a data set or mailing list are not property that is protected by the right of publicity, absent a covered commercial use such as promotion, advertising, or merchandising. *See* Restatement (Second) of Torts § 652C cmt. d (1977) ("The value of the plaintiff's name is *not appropriated by mere mention of it* . . . ; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity.") (emphasis added); *see also Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (dismissing Illinois right of publicity claim, holding name was not "used for a 'commercial purpose'" when it was merely mentioned in court records searchable through defendant websites).

This lack of an absolute ownership interest in one's name finds an analogue in copyright law. A "bedrock" precept of copyright is that mere biographical, identifying, or other *facts* about oneself are not protectable as intellectual property. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991). In rejecting a copyright claim over white page directory listings reporting the names and information of telephone subscribers, the Supreme Court held in *Feist* that "[c]ensus data," like "all facts . . . . may not be copyrighted and *are part of the public domain available to every person*." *Id.* at 347–48 (emphasis added) (quotation marks and citations omitted). Accordingly, the names of subscribers in the white pages "are uncopyrightable facts; they existed before [the phone company] reported them and would have continued to exist if [the phone company] had never published a telephone directory." *Id.* at 361.

As the Court in *Feist* explained, "raw data" such as a name cannot be owned as property; only facts that are worked upon and expressed with sufficient "originality" are potentially subject

to copyright protection.  *Id.* at 347.  Similarly, a name is not subject to protection under the right of publicity *unless* used for a covered commercial purpose such as promotion or marketing.  *See* Restatement (Second) of Torts § 652C cmt. d (1977).  Until then, a name is just a name; it is not property.

These common limits on ownership take root in the fact that both copyright and the right of publicity are subject to constitutional restraints on their scope, given the First Amendment's broad protection for free speech.  Both rights must live within and accommodate those limits.[11] *Cf. Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 573 (1977) ("the State's interest [in the right of publicity] is closely analogous to the goals of patent and copyright law, focusing on the right of the individual to reap the reward of his endeavors").  Even if Plaintiffs' theory could be reconciled with the limits embedded in the statutory text at issue here, it could not be squared with the clear constitutional limits on ownership of names and other basic biographical information, and the constitutional right to communicate such information.

To Hearst's knowledge, no court has recognized a right of publicity claim resembling Plaintiffs', under any law.  This Court should not be the first.

C.    **At Most, Plaintiffs Allege an Incidental Use of Their Identities That Does Not Infringe the Right of Publicity Laws.**

Even if one were to overlook the absence of any promotional use of Plaintiffs' names, their claims would fail because Plaintiffs cannot allege a unique commercial value to any of their individual identities as allegedly used here, meaning that any alleged use by Hearst of their identities would be deemed incidental at most and not the basis for a right of publicity claim.[12]

---

[11]    Of course, copyright receives far greater protection than the right of publicity because it is independently protected under the Constitution, while the right of publicity has no such grounding.

[12]    "Incidental use is a defense for right of publicity and commercial misappropriation claims."  *Schroeder v. Volvo Grp. N. Am., LLC*, No. LACV 20-05127, 2020 WL 6562242, at *12 (C.D. Cal. Sept. 3, 2020) (citing *Davis v.*

As *U.S. News* held, "[t]he inclusion of a name as part of a larger mailing list—where no relationship exists between the individual name and the exchange of the list—is 'too fleeting and incidental' to be actionable" under Virginia's right of publicity statute.  1996 WL 1065557, at *7 (citing *Stillman v. Paramount Pictures Corp.*, 147 N.Y.S.2d 504 (Sup. Ct. N.Y. Cnty. 1956), *aff'd and modified on other grounds*, 2 A.D.2d 18 (1956), *aff'd*, 5 N.Y.2d 994 (1959)).  The same is true here.

       As in a photo of a vast crowd—here, a crowd of at least hundreds of thousands of people (Compl. ¶ 80)—no Plaintiff can allege any unique commercial value to her individual presence among the multitudes.  *See Davis*, 775 F.3d at 1180 ("The rationale underlying this doctrine is that an incidental use has no commercial value." (citation omitted)).  Any use of Plaintiffs' names was at most incidental, and they fail to state a claim.  *See Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993) (rejecting misappropriation claim at Alabama common law where "[t]here [was] no unique quality or value in the [plaintiffs'] likenesses that would result in commercial profit to the [defendant] simply from using a photograph that included them—unidentified and seated in a group") (citing Restatement (Second) of Torts § 652C cmt. d (1977)); *Harvey*, 154 N.E.3d at 305–07 (rejecting claim under Ohio Statute where plaintiff showed no evidence her name had "any commercial value" and use was "incidental," appearing on "three slides of a 200-page presentation"); *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 869–70 (Ind. Ct. App.

---

*Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015)).  Factors considered by courts include: "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work[,] and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication."  *Davis*, 775 F.3d at 1180 & n.5 (citation omitted) (applying the test even though California courts had not expressly adopted it, observing that "the defense is widely recognized" across jurisdictions).

2013) (finding use of name in press release "incidental" when it was "merely mentioned" to identify parties, and use did not appropriate any commercial value).

Plaintiffs have not alleged any act by Hearst infringing their rights. Nor can they cure this pleading defect, given the nature of the allegations. The Court's analysis may end here.

## II.    If Plaintiffs' Overbroad Reading of the Right of Publicity Laws Were Credited, the First Amendment and Equivalent State Protections Would Bar Any Application of Those Laws to Hearst's Alleged Speech.

As shown above, Plaintiffs' failure to allege any infringing use of their identities is fatal to their suit. The right of publicity laws do not apply to anything Hearst is alleged to have done. There is thus no need to consider the constitutional implications of Plaintiffs' claims. If, however, Plaintiffs' vastly overbroad reading of the statutes were to be credited, the constitutional difficulties with their claims would immediately become clear. That is because giving credence to Plaintiffs' claim would require an expansion of the right of publicity laws that would bring them into direct conflict with the First Amendment.

The right of publicity laws cannot be stretched beyond their narrow commercial scope—advertising, marketing, promotion and the like—to cover Hearst's alleged communications, consistent with constitutional protections for speech. "There is an inherent tension between the right of publicity and the right of freedom of expression under the First Amendment," *ETW*, 332 F.3d at 931. This dichotomy has been codified in the nine right of publicity statutes at issue.[13]

---

[13]     Two states (Alabama and Ohio) expressly exempt conduct protected by the First Amendment and their state constitutions. *See* Ala. Code § 6-5-773(a) ("Nothing in this article will allow for an abridgement of free speech rights under the First Amendment of the United States Constitution and Section 4 of the Constitution of Alabama of 1901."); Ohio Rev. Code Ann. § 2741.09(A)(6) (statute does not apply to "use of the persona of an individual that is protected by the First Amendment to the United States Constitution"). The rest create exceptions to the right of publicity that approximate some core constitutional protections of speech, though not in comprehensive fashion. For example, with minor variations, all the laws at issue generally exempt the use of identity in news reporting or artistic works. Ala. Code § 6-5-773; Cal. Civ. Code § 3344.1; Haw. Rev. Stat. § 482P-7; Ind. Code § 32-36-1-1; Nev. Rev. Stat. § 597.790; Ohio Rev. Code Ann. § 2741.09; P.R. Laws Ann. tit. 32, § 3157; S.D. Codified Laws § 21-64-6; Wash. Rev. Code § 63.60.070.

Hearst's alleged conduct is fully protected speech.  Because the right of publicity laws are facially content-based regulations that could not meet strict scrutiny as applied to Hearst's speech, the Court should avoid any application of these laws to Hearst's speech as alleged.[14]  *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) (under doctrine of constitutional avoidance, statutory constructions that "would raise a multitude of constitutional problems" should be avoided).

**A.      Hearst's Alleged Communication Is Fully Protected Speech.**

Hearst's purported communication—of accurate data in its possession to contractual counterparties—is both a commonplace, lawful practice and fully protected by the First Amendment.  "The sale, rental, or exchange of mailing lists is a common, standard business practice . . . throughout the United States." *U.S. News*, 1996 WL 1065557, at *1 ("Numerous government entities routinely engage in the sale or rental of mailing lists, including the federal government and various departments and agencies of the Commonwealth of Virginia government.").

Hearst's alleged compilations of subscriber names, like directories, are fully protected expression under the First Amendment.  *See, e.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 965 (9th Cir. 2012) (holding yellow page directories "are entitled to full First Amendment protection" as non-commercial speech; "[W]e do not see a principled reason to treat telephone directories differently from newspapers, magazines, television programs, radio shows, and similar media that does not turn on an evaluation of their contents."); *Vrdolyak v. Avvo, Inc.*, 206

---

[14]      There is no need to "nullify more of a legislature's work than is necessary."  *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006).  This axiom has special force where, as here, Plaintiffs interpret the law in such a tortured manner to begin with.  *See Sarver v. Chartier*, 813 F.3d 891, 905–06 (9th Cir. 2016) (affirming grant of anti-SLAPP motion for failure to "state and substantiate a legally sufficient" right of publicity claim arising out *Hurt Locker* movie, upon finding that applying the California Statute would violate the First Amendment since "it is simply a content-based speech restriction," and plaintiff could not show compelling state interest) (citation omitted).

F. Supp. 3d 1384, 1385–86, 1388 (N.D. Ill. 2016) (holding online attorney directory was non-commercial speech "akin to the yellow pages directory" and fully protected by First Amendment); *Bergen v. Martindale-Hubbell, Inc.*, 285 S.E.2d 6, 6–7 (Ga. 1981) (First Amendment and Georgia Constitution protect publication of attorney directory).

The fact that Hearst's speech is allegedly sold for profit does not make it commercial speech or lessen its protection in any way.  *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."); *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 n.7 (9th Cir. 2010) ("Hallmark's card is not advertising the product; it *is* the product.  It is sold for a profit, but that does not make it commercial speech for First Amendment purposes.") (emphasis in original); *ETW*, 332 F.3d at 924 ("Speech is protected even though it is carried in a form that is sold for profit."); *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1230 (N.D. Cal. 2021) ("collection of . . . consumer information" which is sold and relied upon for "commercial ends" is not commercial speech).[15]

Of course, as noted above, the Court need not ever reach the question of whether the right of publicity laws may be constitutionally applied to Hearst's conduct because the statutes' clear limits, and Plaintiffs' allegations, make clear there is no actionable claim under those laws. However, if the right of publicity laws were read in such a way as to apply as alleged, they would be unconstitutional as applied, for the First Amendment would forbid burdening Hearst's fully protected speech through such an expansive application.

---

[15]      While the court in *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427, 445, 447 (S.D.N.Y. 2016), held similarly alleged data licensing practices to be commercial speech, Hearst respectfully disagrees with the *Boelter* court's decision, which is at odds with the prevailing weight of authority cited herein and was never subject to appellate review.

**B.     The Right of Publicity Laws Are Content-Based and Speaker-Based Restrictions on Speech, on Their Face.**

There can be no dispute that the right of publicity laws at issue impose content-based restrictions on speech.  They do so by design.  "Content-based laws . . . target speech based on its communicative content."  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

The right of publicity laws restrict the use of identity in certain content, while excepting other content.  All nine statutes prohibit the unauthorized "use" of identity in restricted commercial content such as "advertising" or "merchandise."  *Supra*, Section I.A.  All nine statutes allow the use of identity in favored content, such as reporting or works of art.  *See supra* at 18 n.13.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 558–60 (2011) (finding law to be content-based in preventing certain entities from selling "records containing prescriber-identifiable information" without consent "for marketing purposes," but allowing use for other purposes, including "health care research," "compliance" with formularies, and others).

Beyond these common policy preferences, individual variations among exceptions underscore the content-based (and speaker-based) nature of the restrictions.  Each of the nine statutes has its own peculiarly favored speech.  For example:

- Nevada uniquely exempts uses of identity "in connection with the efforts of a governmental agency to promote travel and tourism in [Nevada], [or] portray historical events or commemorate persons or physical sites that are significant in the history of [Nevada] . . . ."  Nev. Rev. Stat. § 597.790(2)(g).

- Ohio exempts the use of identity "by an institution of higher education"—defined as one of an enumerated list of schools within Ohio—"for the promotion of the institution of higher education and its educational or institutional objectives."  Ohio Rev. Code Ann. § 2741.09(A)(5); *id.* § 2741.01(G); *id.* § 3345.011.

- Alabama exempts the use of identity for "talk shows."  Ala. Code § 6-5-773(b).

- Seven of nine statutes contain exceptions specifically for sports broadcasts.[16] Of those states, only four expressly exempt advertising for a sports broadcast.[17]

Many of these exceptions are not just content-based but also target certain speakers, such as by favoring tourism agencies, talk show hosts, or sports broadcasters. Washington also, for example, exempts "the owners or employees of any medium used for advertising . . . ." Wash. Rev. Code § 63.60.070(4). The wide variation highlights that the laws make content- and speaker-based determinations in defining the scope of their coverage.

There is no common thread among all these exceptions, save that each respective statute treats some speech "less favorably" than others.[18] *Reed*, 576 U.S. at 160; *Sarver*, 813 F.3d at 903 ("By its terms, California's right of publicity law clearly restricts speech based upon its content."); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 972 (10th Cir. 1996) (baseball player association's attempt to enjoin parody baseball cards under Oklahoma right of publicity law "goes to the content of the speech, not merely to its time, place, or manner"); *Frazier v. Boomsma*, No. CV07-08040, 2007 WL 2808559, at *15 (D. Ariz. Sept.

---

[16]     Ala. Code § 6-5-773(b); Cal. Civ. Code § 3344(d); Haw. Rev. Stat. § 482P-7(b)(2); Nev. Rev. Stat. § 597.790(2); Ohio Rev. Code Ann. § 2741.02(D)(1); P.R. Laws Ann. tit. 32, § 3157(a); Wash. Rev. Code § 63.60.070(2)(b).

[17]     Ala. Code § 6-5-773(b); Haw. Rev. Stat. § 482P-7(b)(3); Nev. Rev. St. § 597.790(2)(f); Wash. Rev. Code § 63.60.070(2)(c).

[18]     This is not an exhaustive list of examples. Among others, Puerto Rico exempts the use of a likeness specifically for "criticism or remarks in academia or research . . . ." P.R. Laws Ann. tit. 32, § 3157(c). Hawaii and Washington exempt certain "works of art that are not published in more than five copies" and "[t]he advertisement or sale of a rare or fine product . . . which incorporates" the author's signature. Haw. Rev. Stat. § 482P-7(b)(1) & (5); Wash. Rev. Code § 63.60.070(2)(a). Indiana exempts the use of identities that "have commercial value solely because the personality has been formally charged with or convicted of a crime." Ind. Code § 32-36-1-1(c)(4). Hawaii and Washington exempt the use of a "name that is merely descriptive and used fairly and in good faith only to identify or describe something other than the individual or personality, such as, . . . a party to a transaction," but they do not expressly exempt identifying information other than names for the same purpose, though it is not evident why such a distinction would have meaning. Haw. Rev. Stat. § 482P-7(e); Wash. Rev. Code § 63.60.070(5); *see* Restatement (Third) of Unfair Competition § 47 cmt. c (1995) ("The use of a person's identity primarily for the purpose of communicating information or expressing ideas is not generally actionable as a violation of the person's right of publicity."). Indiana and Ohio exempt the use of a "name to truthfully identify" someone as an author of a written work or performer of a recorded performance, but not for any other purpose. Ind. Code § 32-36-1-1(c)(2); Ohio Rev. Code Ann.. § 2741.09(A)(2).

27, 2007) (application of Arizona right of publicity law "would result in a content-based restriction" on speech).

In sum, the right of publicity laws at issue target certain content and speakers, subjecting the laws to strict constitutional scrutiny if held to cover Hearst's protected speech as alleged in the Complaint.

### C.   The Right of Publicity Laws Would Not Satisfy Strict Scrutiny as Applied to Hearst's Alleged Speech.

As content- and speaker-based regulations, the right of publicity laws are subject to strict scrutiny. *Reed*, 576 U.S. at 164. They could not pass constitutional muster as applied to Hearst's speech. "Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 163. Any curtailment of speech must be "actually necessary" to the restriction imposed. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). "It is rare that a regulation restricting speech because of its content will ever be permissible." *Id.* (quoting *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000)).

In seeking to punish the mere possible inclusion of their names on a mailing list of magazine subscribers, Plaintiffs' purported application of the right of publicity laws is about as far from a "narrow[] tailor[ing]" to any compelling state interest as one can imagine. The state's interest in the right of publicity, as shown above and as evident from the plain text of the statutes (*supra*, Section I.A.), is to protect the individual's ability to exploit the commercial value of their unique, one-of-a-kind likeness. *See also, e.g.*, H.R. Rep. 2727, Reg. Sess. (Wash. 2008) (showing intent of Washington Statute to protect "Princess Diana and Jimi Hendrix's personality rights," in part out of consideration for Washington photography and licensing businesses Getty Images and Corbis, which favor "protect[ing] representation of famous personalities").

-23-

Suppressing the communication of aggregated data points to a contractual partner—who does not even know what names it has received—does nothing to advance this state interest, much less in a narrowly tailored way.  As the *In re Facebook* court put it, the communication of information on users of a product "is *categorically different* from the type of conduct made unlawful by" the right of publicity, which protects the value of identity to "promote a product or service."  402 F. Supp. 3d at 803 (emphasis added).  Application of the right of publicity laws to the facts alleged here would be the antithesis of narrow tailoring and would effectively penalize the publication of any directory-like product such as telephone books, which merit full speech protections.  Strict constitutional scrutiny would not permit such a result.

The First Amendment harm posed by Plaintiffs' claims is especially pointed considering the enormous statutory damage awards they claim to seek, in amounts from $750 up to $100,000 per violation, depending on the statute.[19]  The right of publicity laws surely would not be "narrowly tailored" if they could sweep up Hearst's lawful, accurate communications and impose potentially debilitating monetary penalties for its speech in the process.  *Reed*, 576 U.S. at 163.

The right of publicity laws as Plaintiffs conceive of them would burden far more speech than legislatures ever intended, including speech wholly unrelated to the aim of the laws.  The right of publicity laws could not survive scrutiny if applied to Hearst's speech.

## CONCLUSION

For the reasons stated herein, Hearst respectfully requests that the Court dismiss the Complaint in its entirety.  Because no amount of repleading can save Plaintiffs' claims, they should be dismissed with prejudice.

---

[19]     *See* Compl. ¶¶ 94, 102, 110, 125, 138, 146, 159, 169, 186.

Dated: February 14, 2022

By:  /s/ Jonathan R. Donnellan

Jonathan R. Donnellan
Andrea R. Butler
Sarah S. Park
*The Hearst Corporation*
Office of General Counsel
300 West 57th Street, 40th Floor
New York, NY 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
jdonnellan@hearst.com
abutler@hearst.com
sarah.park@hearst.com

*Attorneys for Defendant Hearst*
*Communications, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to counsel of record on February 14, 2022.

<u>/s/ Jonathan R. Donnellan</u>
Jonathan R. Donnellan