**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re Hearst Communications State Right of Publicity Statute Cases* | Case No. 1:21-cv-08895-RA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................. 1

FACTUAL ALLEGATIONS ................................................................................................ 3

PERTINENT STATUTORY SCHEMES............................................................................. 4

MOTION TO DISMISS STANDARD................................................................................. 5

ARGUMENT ........................................................................................................................ 5

I.      PLAINTIFFS STATE COGNIZABLE CLAIMS UNDER THE
        MISSAPPROPRIATION STATUTES.................................................................... 5

        A.      The Misappropriation Statutes Explicitly Prohibit the Use of a
                Person's Name and Other Indicia of Identity "On or In" a Product
                or Service Without Consent ......................................................................... 5

        B.      Illinois and Virginia Right of Publicity Statutes Are Materially
                Distinguishable from the Misappropriation Statutes At Issue Here ...................... 8

        C.      The Misappropriation Statutes Prohibit More Conduct than the
                Common Law.................................................................................................. 13

        D.      Hearst's Copyright and Incidental Use Arguments Are
                Inapplicable.................................................................................................... 15

II.     THE FIRST AMENDMENT DOES NOT PROTECT HEARST'S
        CONDUCT ............................................................................................................... 19

        A.      Plaintiffs' Claims Concern Purely Commercial Speech Warranting
                Only Intermediate Scrutiny........................................................................... 20

        B.      The Misappropriation Statutes Survive Hearst's As-Applied
                Challenge ....................................................................................................... 23

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Aligio v. Time-Life Books, Inc.*,
  No. C 94-20707, 1994 WL 715605 (N.D. Cal Dec. 19, 2004)...................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................... 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ........................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 5

*Berger v. Capitol Color Mail, Inc.*,
  38 Va. Cir. 261 (1995)................................................................................................................ 12

*Boelter v. Hearst Commcn's, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017) ....................................................................................... 11

*Boelter v. Hearst Communications, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................................................. passim

*Bosley v. Wildwett.com*,
  310 F. Supp. 2d 914 (N.D. Ohio 2004) .................................................................................... 7, 9

*Bravado Int'l Grp. Merch. Servs., Inc. v. Sean Broihier & Assocs.*,
  2015 WL 13915022 (C.D. Cal. Aug. 17, 2015) ....................................................................... 7, 9

*Brooks v. Thomson Reuters Corp.*,
  No. 21-cv-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)............................. 14, 15

*California Outdoor Equity Partners v. City of Corona*,
  2015 WL 4163346 (C.D. Cal. July 9, 2015)............................................................................... 23

*Callahan v. PeopleConnect, Inc.*,
  2021 WL 5050079 (N.D. Cal. Nov. 2021) ................................................................................. 18

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) .............................................................................................................. 20, 23

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
  2015 WL 4365439 (N.D. Cal. July 16, 2015) ............................................................................ 23

*Collection Bureau of San Jose v. Rumsey*,
  24 Cal. 4th 301, 6 P. 3d 713 (2000)........................................................................................... 15

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal.4th 387 (Cal. 2001) ............................................................ passim

*Conn. Bar. Ass'n v. United States*,
  620 F.3d 81 (2d Cir. 2010) ................................................................ 21

*Contest Promotions, LLC v. City & Cnty. of San Francisco*,
  2015 WL 4571564 (N.D. Cal. July 28, 2015) ...................................... 23

*Current Audio, Inc. v. RCA Corp.*,
  71 Misc. 2d 831 (Sup. Ct. N.Y. Cnty. 1972) ........................................ 6

*Daniels v. FanDuel, Inc.*,
  109 N.E.3d 390 (Ind. 2018) ................................................................ 5

*Davis v. Elec. Arts Inc.*,
  775 F.3d 1172 (9th Cir. 2015) ........................................................... 16

*Dex Media W., Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012) ............................................................. 22

*Dobrowolski v. Intelius, Inc.*,
  No. 17-cv-001406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ......... 11

*Doe v. Darien Lake Theme Park & Camping Resort, Inc.*,
  277 A.D.2d 967 (4th Dep't 2000) ...................................................... 17

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985) .................................................................... 21, 22

*Dwyer v. American Express Co.*,
  652 N.E.2d 1351 (Ill. App. Ct. 1995) ................................................ 14

*Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*,
  No. 19-cv-1458, 2020 WL 2795198 (W.D. Wash. May 29, 2020) ........... 6

*Esch v. Universal Pictures Co.*,
  No. 09-cv-02258, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) .............. 6

*ETW v. Jireh Pub., Inc.*,
  332 F.3d 915 (6th Cir. 2003) ........................................................ 13, 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) .......................................................................... 16

*Florida Bar v. Went For It, Inc.*,
  515 U.S. 618 (1995) .......................................................................... 20

iii

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................ 19

*Gaylor v. Vill. Of Ringwood*,
  363 Ill. App. 3d 543 (2006) ................................................................................ 11

*Harvey v. Systems Effect, LLC*,
  154 N.E. 3d 293 (Ohio App. 2020) .................................................................... 18

*Huston v. Hearst Communications, Inc.*,
  No. 21-cv-001196, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022) .......................... 10, 11

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
  No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022) ........................... 7, 8, 9

*In re: Facebook Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................ 14

*King v. Gen. Info. Svcs., Inc.*,
  903 F. Supp. 2d 303 (E.D. Pa. 2012) .................................................................. 22

*Knapke v. PeopleConnect Inc.*,
  --- F.Supp.3d ----, 2021 WL 3510350 (W.D. Wash. Aug. 2021) ...................... 18

*Lukis v. Whitepages Inc.*,
  2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) ...................................................... 11

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ............................................................................ 21

*Nieman v.  Versuslaw, Inc.*,
  2012 WL 3201931 (C.D.  Ill.  Aug. 3, 2012) .................................................... 11, 13

*Perkins v. Linkedin Corp.*,
  53 F. Supp. 3d 1222 (N.D. Cal. 2014) ................................................................ 19

*Radio Today, Inc. v. Westwood One, Inc.*,
  684 F. Supp. 68 (S.D.N.Y. 1988) ....................................................................... 18

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ............................................................................................ 23

*Schifano v. Greene Cnty. Greyhound Park, Inc.*,
  624 So. 2d 178 (Ala. 1993) ................................................................................. 19

*Sessa v. Ancestry.com Operations Inc.*,
  --- F.Supp.3d ----, 2021 WL 4245359 (D. Nev. Sept, 16, 2021) ...................... 21

*Shibley v. Time, Inc.*,
    45 Ohio App. 2d 69 (Ohio Ct. App. 1975) ................................................. 13

*Sorrell v. IMS Health, Inc.*,
    131 S.Ct. 2653 (2011).............................................................................. 20

*Stayart v. Google, Inc.*,
    710 F. 3d 719 (7th Cir. 2013) .................................................................. 17

*Thompson v. Getty Images (US), Inc.*,
    2013 WL 3321612 (N.D. Ill. July 1, 2013) ................................................ 11

*Trans Union Corp. v. F.T.C.*,
    267 F.3d 1138 (D.C. Cir. 2001)................................................................ 22

*U.S. News & World Report, Inc. v. Avrahami*,
    No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13 ,1996) ........................ 11, 12

*United Reporting Pub. Corp. v. Cal. Highway Patrol*,
    146 F.3d 1133 (9th Cir. 1998) ................................................................. 22

*Upper Deck Co. v. Panini Am., Inc.*,
    469 F. Supp. 3d 963 (S.D. Cal. 2020) ...................................................... 18

*Vrodolyak v. Avvo*,
    206 F. Supp. 3d 1384- (N.D. Ill 2016) ..................................................... 22

*Vugo, Inc. v. City of New York*,
    931 F.3d 42 (2d Cir. 2019) ...................................................................... 20, 23

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ............................................................................... 24

*Westminster Presbyterian Church of Muncie v. Yonghong Cheng*,
    992 N.E. 2d 859 (Ind. Ct. App. 2013) ...................................................... 19

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977)............................... 24

*Zoll v. Jordache Enterprises Inc.*,
    No. 01 CIV. 1339 (CSH), 2003 WL 1964054 (S.D.N.Y. Apr. 24, 2003) ............ 17

## STATUTES

15 U.S.C. §§ 1681 ............................................................................................ 22

765 ILCS 1075/1 ............................................................................................... 2

765 Ill. Comp. Stat. Ann. 1075/30(a).................................................................. 9

765 Ill. Comp. Stat. Ann. 1075/5 .................................................................................... 9, 10

Ala. Code § 6-5-771(1) ........................................................................................................ 4

Ala. Code § 6-5-772(a) ..................................................................................................... 1, 4

Ala. Code § 6-5-773(b) ...................................................................................................... 24

Cal. Civ. Code § 3344 .................................................................................................... 4, 5, 6

Cal. Civ. Code § 3344(a) .............................................................................................. 1, 4, 15

Cal. Civ. Code § 3344(d) .................................................................................................... 16

Haw. Rev. Stat. Ann. § 482P-1 ...................................................................................... 4, 24

Haw. Rev. Stat. Ann. § 482P-5 ....................................................................................... 1, 4

Ill. Comp. Stat. Ann. 1075/5 .............................................................................................. 10

Nev. Rev. Stat. Ann. § 597.770 ........................................................................................... 4

Nev. Rev. Stat. Ann. § 597.770(1) ....................................................................................... 1

Nev. Rev. Stat. Ann. § 597.790(2)(g) ................................................................................. 24

Ohio Rev. Code § 2741.01(B)(1) .......................................................................................... 1

Ohio Rev. Code § 2741.02(B)(1) ........................................................................................ 13

Ohio Rev. Code §2741.01(A) ............................................................................................... 4

Ohio Rev. Code §2741.02(A)-(B) ......................................................................................... 4

Ohio Revised Code § 2741.01 ............................................................................................. 9

RCW 63.60.010 .............................................................................................................. 4, 24

RCW 63.60.050 ............................................................................................................... 1, 4

S.D. Codified Laws § 21-64-1 .............................................................................................. 4

S.D. Codified Laws § 21-64-1(1) .......................................................................................... 1

Va. Code. Ann. § 8.01-40 .................................................................................................. 12

Plaintiffs in this consolidated action submit the following response in opposition to the motion to dismiss (ECF Nos. 37-38 (the "Motion" or "Mot.")) filed by Defendant Hearst Communications, Inc.

## **INTRODUCTION**

Plaintiffs and the proposed Class members subscribed to magazines like *Good Housekeeping*, *Cosmopolitan*, and *Seventeen*, which are published by Hearst. After a subscriber gives Hearst her name and home address to receive her publication in the mail, Hearst packages the subscriber's identity into a valuable product comprised of data that, *inter alia*, identifies her (and each of its other subscriber's) age, race, religion, politics, and other highly sensitive personal attributes ("Data Brokerage Products") – without consent. Hearst then sells, rents, and exchanges these products with its "Data Brokerage Clients." Hearst earns a hefty profit monetizing its customers' identities into Data Brokerage Products in this way.

This conduct, however, violates the laws of Alabama, Indiana, Hawaii, South Dakota, California, Nevada, Ohio, Washington, and Puerto Rico (collectively the "Misappropriation Statutes"). With the exception of Puerto Rico's, each statute explicitly prohibits "the use of the indicia of identity of a person, <u>on or in</u> products, goods, merchandise, or services . . . ." *See, e.g.*, Ala. Code § 6-5-772(a) (emphasis added).[1]

---

[1]    *See* IC 32-36-1-2(1) (defining use of a likeness for a "commercial purpose" to include "the use of an aspect of a personality's right of publicity as follows: (1) On or in connection with a product . . . ."); Haw. Rev. Stat. Ann. § 482P-5 (prohibiting "the use of a living or deceased individual's or personality's name . . . on or in goods, merchandise, or services . . ."); S.D. Codified Laws § 21-64-1(1) (prohibiting use of one's name "in connection with a product, merchandise, goods, service, or commercial activity" without consent); Cal. Civ. Code § 3344(a) (holding liable "[a]ny person who knowingly uses another's name . . . in any manner, on or in products, merchandise, or goods. . . ."); Nev. Rev. Stat. Ann. § 597.770(1) ("Commercial use includes the use of the name . . . of a person on or in any product, merchandise or goods. . . ."); Ohio Rev. Code § 2741.01(B)(1) (defining "commercial purpose" as "the use of or reference to an aspect of an individual's persona in any of the following manners: (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities . . . ."); RCW 63.60.050 (prohibiting "the use of a living or deceased individual's or personality's name . . . on or in goods, merchandise, or products. . . ."). Puerto Rico uses different phrasing, defining "commercial purpose" as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market." 32 L.P.R. § 3151(h).

The Motion fails to recognize that Plaintiffs' claims arise from Hearst's "use" of their identities "on or in" the Data Brokerage Products, and instead focuses on a separate, independent prong of the statutes that prohibits the use of one's likeness for the purpose of endorsing, advertising, or promoting a product. But that is not the prong that Plaintiffs' theory of liability is premised on because this is not a false advertising or apparent endorsement case – this is a misappropriation case. Hearst's arguments for dismissal thus completely miss the mark, and the legal authority to which it cites is plainly inapposite. In addition to citing one irrelevant decision after another concerning the endorsement prong (rather than the misappropriation prong) of the Misappropriation Statutes, Hearst relies on decisions addressing statutory language that is also not at issue here (such as the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et. seq.*, as discussed in *Huston v. Hearst Communications, Inc.*, No. 21-cv-1196, 2022 WL 385176, at *3 (C.D. Ill. Feb. 7, 2022)), and attempts to further muddy the water by focusing on non-statutory common law publicity claims, which likewise have no bearing on this case. As discussed herein, Hearst's cases do not speak to the statutory basis of Plaintiffs' claims under the first prong of the Misappropriation Statutes, which prohibits the use of a person's identity "on or in" a product without consent, regardless of whether the identity is used for advertising purposes.

As a backup argument, Hearst says that its practices of trafficking in its subscribers' personal data are protected by the First Amendment. The argument is baseless. Hearst's practices of selling and renting subscribers' data – an operation separate and distinct from its core publication business – is a quintessential example of the sort of *commercial* speech that a legislature may properly regulate without running afoul of the First Amendment. Indeed, another court in this District recently rejected an identical First Amendment argument in a case challenging the exact same conduct at issue here under a Michigan privacy law. *See Boelter v. Hearst*

*Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) (Torres, J.).

The Complaint alleges that Hearst has systematically and flagrantly commercialized its subscribers' names and addresses by selling them to its Data Brokerage Clients without consent, in violation of the Misappropriation Statutes. These factual allegations adequately state claims for relief under each of the Misappropriation Statutes. Accordingly, the Motion should be denied.

## FACTUAL ALLEGATIONS

Hearst is an international media conglomerate and publishes some of the most widely circulated magazines in the United States, including *Country Living*, *Harper's Bazaar*, *Cosmopolitan*, *Esquire*, *Woman's Day*, *Good Housekeeping*, *Redbook*, *Seventeen*, and *O, the Oprah Magazine.* (Comp. ¶ 1). As such, Hearst maintains a vast digital database comprised of its customers' names, basic demographic information (*e.g.*, home address), and magazine subscription histories and preferences. (Comp. ¶ 60).

Hearst discloses its magazine subscribers' names and other identifying information, including but not limited to those subscribers' home addresses, to data aggregators and appenders, which then provide Hearst with supplemental information including a subscriber's sex, age, race, and political party, among other data points. (Comp. ¶ 61). Hearst then packages this composite identity information into its Data Brokerage Products, which it sells, licenses, rents to, and exchanges with Data Brokerage Clients. (Comp. ¶ 62). On a per record basis, the information includes identifying information about each of Hearst's subscribers (name, address, magazines subscribed to, among other such details) and the additional information received from the data aggregators and appenders discussed above. *Id.*

These Data Brokerage Products are offered for sale in, and, on information and belief, ultimately sold and entered into commerce throughout, Alabama, Indiana, Hawaii, South Dakota, California, Nevada, Ohio, Washington, and Puerto Rico, as well as elsewhere throughout the

United States.   (Comp. ¶ 63).   Hearst also discloses its Data Brokerage Products to data cooperatives, which in turn give Hearst access to their own subscription list databases. (Comp. ¶ 64).  Hearst does not seek its subscribers' consent, written or otherwise, prior to using their names and likenesses on or in connection with its Data Brokerage Products.  (Comp. ¶ 67).  Its customers remain unaware that their identities are being trafficked on the open market in this way.  *Id.*

## PERTINENT STATUTORY SCHEMES

As the Complaint details, each of the Misappropriation Statutes prohibits the non-consensual use of indicia of a person's identity for "commercial purposes," which is defined to include, *inter alia*, the use of an identity "on or in products, goods, merchandise, or services." (Compl. ¶¶ 7-31.)[2]  This "use" prohibition arises under the first prong of the Misappropriation Statutes and is distinct from the statutes' second prong prohibiting the use of an identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services."[3]  *See*, *e.g.*, *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 395 (Cal. 2001) (explaining that the "plain meaning" of the California statute prohibits the use, without consent, of a likeness "either (1) 'on or in' a product, *or* (2) in 'advertising or selling' a product," and that "[t]he two uses are not synonymous") (emphasis in original).  The Misappropriation Statutes explicitly provide that an individual's name is a protected aspect of identity (also variously referred to as an "aspect of personality", "persona," or "likeness").[4]

The Misappropriation Statutes exempt use of a likeness in art, news reporting, sports broadcasting, and political campaigns from the scope of regulated conduct to avoid First

---

[2]       Ala. Code § 6-5-772(a); IC 32-36-1-2; Haw. Rev. Stat. Ann. § 482P-5; *Id.* § 21-64-1(1); Cal. Civ. Code § 3344; Nev. Rev. Stat. Ann. § 597.770; Ohio Rev. Code §2741.02(A)-(B); RCW 63.60.050; 32 L.P.R. § 3152.
[3]       *Id.*
[4]       Ala. Code § 6-5-771(1); IC 32-36-1-1(3); Haw. Rev. Stat. Ann. § 482P-1; S.D. Codified Laws § 21-64-1; Cal. Civ. Code § 3344(a); Nev. Rev. Stat. Ann. § 597.770; Ohio Rev. Code §2741.01(A); RCW 63.60.010; 32 L.P.R. § 315(c).

Amendment violations.  *See*, *e.g.*, *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 396 (Ind. 2018) ("These enumerated exceptions, including 'material with newsworthy value,' represent an obvious attempt to avoid constitutional issues with the statute.").

## MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  The court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

## ARGUMENT

### I. PLAINTIFFS STATE COGNIZABLE CLAIMS UNDER THE MISSAPPROPRIATION STATUTES

The Misappropriation Statutes explicitly prohibit the nonconsensual use of a person's name or other indicia of identity "on or in" a product or service.  The Misappropriation Statutes do not, as Hearst would have the Court believe, additionally require that the use of the person's name or other indicia of identity occur in connection with advertising or endorsing a separate product.  Thus, the Complaint states a claim, and the Motion should be denied.

### A. The Misappropriation Statutes Explicitly Prohibit the Use of a Person's Name and Other Indicia of Identity "On or In" a Product or Service Without Consent

Each of the Misappropriation Statutes prohibits at least two things: the use of a person's name "on or in" a product, *and* the use of a person's name "for purposes of advertising or selling, or soliciting purchase of" a product.  *See*, *e.g.*, Cal. Civ. Code § 3344 (the "California Statute");

*see also* note 1, *supra*.  Hearst's motion to dismiss focuses almost exclusively on a separate, independent, and for purposes of this case, irrelevant, prong of these statutes that prohibits false or apparent endorsements,[5] entirely ignoring the first prong (prohibiting the misappropriation of one's likeness) at issue here.

The California Supreme Court's decision in *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 21 P.3d 797 (Cal. 2001) illustrates the distinction.  In *Comedy III*, the defendant argued that the plaintiff had not established a violation of the California Statute because the defendant did not use the plaintiff's likeness "for the purpose of advertising, selling, or soliciting the purchase of, products or services."  *Id.* at 801.  But the California Supreme Court rejected that argument, explaining that the California Statute "makes liable any person who, without consent, uses [a plaintiff's likeness], either (1) 'on or in' a product, *or* (2) 'in advertising or selling' a product."  *Id.* at 802 (emphasis in original).  "The two uses are not synonymous: in the apt example given by the Court of Appeal, there is an obvious difference between 'placing a celebrity's name on a 'special edition' of a vehicle, and using that name in a commercial to endorse or tout the same or another vehicle.'"  *Id.*

The same logic applies here.  While it is conceivable that Hearst *could* use Plaintiffs' names and identities to advertise its products or services, *this* case is about its use of their identities "on or in" its Data Brokerage Products that the company sells and rents.  Thus, contrary to Hearst's assertion, under the Misappropriation Statutes, Plaintiffs are not required to plead "an infringing

---

[5]       Indeed, the following cases cited by Hearst concern *only* the endorsement prong.  *See Esch v. Universal Pictures Co.*, No. 09-cv-02258, 2010 WL 5600989, at *2 (N.D. Ala. Nov. 2, 2010) (professional MMA fighter claimed Alabama Statute violation for non-consensual likeness appropriation in advertising trailer for film) (cited in Motion at 6); *Current Audio, Inc. v. RCA Corp.*, 71 Misc. 2d 831, 835-36 (Sup. Ct. N.Y. Cnty. 1972) (finding defendant had no publicity rights in a depiction of Elvis Pressley at a press conference under New York common law right of publicity) (cited in Motion at 6); *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, No. 19-cv-1458, 2020 WL 2795198, at *9 (W.D. Wash. May 29, 2020) (plaintiff's claim based entirely on endorsement prong of Washington Statute) (cited in Motion at 7) *Aligio v. Time-Life Books, Inc.*, No. C 94-20707, 1994 WL 715605, at *2 (N.D. Cal Dec. 19, 2004) (plaintiff's photo used to promote a separate music anthology product) (cited in Motion at 7).

use" "for a covered commercial purpose, particularly advertising, marketing, merchandising, endorsement, or promotion." (Mot. at 9). Rather, using Plaintiffs' likenesses *on* or *in* the product or service – in this case, the Data Brokerage Products that Hearst sells and rents – is itself violative of the California statute. *See*, *e.g.*, *In re Clearview AI, Inc., Consumer Privacy Litig.*, No. 21-cv-0135, 2022 WL 444135, at *11 (N.D. Ill. Feb. 14, 2022) (holding that under the California Statute, "plaintiffs need not allege that defendants used their photos or likenesses for purposes of advertising, selling, or soliciting").

The same is true of the other Misappropriation Statutes, all of which (except Puerto Rico's, as explained below), independently prohibit the use of a person's name "on" or "in" a product or service, and *additionally* prohibit (in a separate prong of the disjunctively written "commercial purpose" definitions of each of the statutes) the use of a person's name to promote or advertise a product or service. *See*, *e.g.*, *Bravado Int'l Grp. Merch. Servs., Inc. v. Sean Broihier & Assocs.*, 2015 WL 13915022, at *8-9 (C.D. Cal. Aug. 17, 2015) (agreeing that the Indiana Statute, like the California Statute, is "not limited solely to the separate use of a likeness to advertise a good or service" but also "bars the use of a likeness 'on or in connection with a product . . .'"); *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 922-23 (N.D. Ohio 2004) (agreeing that the sale of video containing plaintiff's image in it violated Ohio Statute "even if [the video] does not reference Defendants' other wares" for advertising purposes).

Hearst argues that "communication of people's names as part of a data set or mailing list, in and of itself, makes no 'use' of the commercial value of an individual's identity for the purpose of the right of publicity law." (Mot. at 9.). But that argument fails for several reasons. For one, as previously discussed, each of the statutes specifically defines "commercial purpose" to include the use of names "on or in" a product, without requiring an additional use of the name for

advertising or endorsement purposes (uses which are prohibited in a separate, independent prong of the definition).  *See* note 1, *supra*.  Thus, the Court should reject Hearst's attempts to conflate these two independent, disjunctively written prongs of the Misappropriation Statutes' "commercial purpose" definitions.  Second, because Hearst includes its subscribers' names "on or in" lists that are sold, licensed, rented, exchange, and otherwise disclosed to its various Data Brokerage Clients, which themselves plainly constitute products or goods (and the rentals of such lists plainly constitute services) that are sold for profit.  As such, Hearst indisputably uses its subscribers' names and other identifying information "on or *in* products, goods, merchandise, or services," a "commercial purpose" specifically delineated in each of the Misappropriation Statutes.  *See Clearview AI*, 2022 WL 444135, at *11 (in substantially similar case plaintiffs stated a claim for commercial use of their photographs by alleging "the Clearview defendants knowingly used their photos by accessing the Clearview database for a profit"). Because it uses its subscribers' names in a product without their consent, Hearst violates the letter of the Misappropriation Statutes.

Since Plaintiffs' claims for relief are based entirely in the unambiguous plain language of the "use" prong of the Misappropriation Statutes, the cases cited by Hearst, which, in contrast, concern the "advertising" or "endorsement" prong, are inapposite and have no bearing on Plaintiffs' claims.

**B.     Illinois and Virginia Right of Publicity Statutes Are Materially Distinguishable from the Misappropriation Statutes At Issue Here**

Defendant's principal authority for its ill-founded contention that its data business does not violate the Misappropriation Statutes is *Huston v. Hearst Communications, Inc.*, No. 21-cv-1196, 2022 WL 385176 (CD Ill. Feb. 7, 2022), a recent decision in which a district court held that Hearst's use of subscriber information on mailing lists was not a "commercial purpose" covered by the Illinois Right of Publicity Act ("IRPA").  But *Huston* dealt with a different statute

containing different statutory language.  It has no bearing here whatsoever.

As detailed above, with the exception of the Puerto Rico statute (discussed below), the Misappropriation Statutes *specifically* prohibit the unconsented use of a person's identity "on or in connection with a … product."  Ohio Revised Code § 2741.01; *see also* note 1, *supra* and FAC ¶¶ 7-31 (detailing relevant portions of the Alabama, California, Hawaii, Indiana, Nevada, South Dakota, and Washington Statutes (same)).  In contrast, IRPA does *not* contain this specific prohibition.  *See* 765 Ill. Comp. Stat. Ann. 1075/30(a).  Rather, IRPA defines "commercial purpose" as including three things—i.e., "the public use or holding out of an individual's identity (i) on or in connection with *the offering for sale or sale* of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising."  765 Ill. Comp. Stat. Ann. 1075/5 (emphasis added).  In contrast, except for the Puerto Rico statute, the Misappropriation Statutes do not contain language limiting the "use" prong to the "offering or for sale or sale" of a product.

As explained below, Plaintiffs respectfully disagree with *Huston*'s holding under IRPA and, to the extent the Court finds it has any relevance here, believe the decision was wrongly decided.[6]  But regardless of whether *Huston*'s statutory analysis was right (as Defendant obviously believes) or wrong (as Plaintiffs would argue), the debate simply has no bearing because the Misappropriation Statutes at issue here *explicitly* forbid the unconsented use of a person's identity "on or in connection with a … product," without any requirement that said use be connected to advertising, endorsement, or promotion of a product.  *See*, *e.g.*, *Comedy III*, 25 Cal.4th at 395; *In re Clearview AI*, 2022 WL 444135, at *11; *Bravado Int'l*, 2015 WL 13915022, at *8-9; *Bosley*, 310 F. Supp. 2d at 922-23.

---

[6]     *Huston* is currently on appeal to the U.S. Court of Appeals for the Seventh Circuit.

Admittedly, the analysis is different with respect to the Puerto Rico statute, which, in contrast to the other Misappropriation Statutes, defines "commercial purpose" as "[t]he use of a person's likeness *in connection with* an advertisement, offer, or *sale* of a product, merchandise, good or service in the market." 32 L.P.R. § 3151(h) (emphasis added). Arguably—and unlike any of the other Misappropriation Statutes—this bears some resemblance to the language in IRPA, which defines "commercial purpose" as "the public use or holding out of an individual's identity (i) on or *in connection with the* offering for sale or *sale* of a product, merchandise, goods, or services." 765 Ill. Comp. Stat. Ann. 1075/5 (emphasis added). Thus, at best, a textual analysis of the IRPA could have some bearing to the claim brought under the Puerto Rico statute—but *not* to claims brought under the other Misappropriation Statutes, each of which specifically prohibits the use of identities "on or in" products. In any event, under *both* the IRPA and Puerto Rico statute, it should be straightforward that Plaintiffs' names and identity information are being used "in connection with" the "sale" of the Data Brokerage Products because Hearst is *actually selling* their names and identity information to its Data Brokerage Clients. How much more "connected" to a "sale" could their identities possibly be than this?

Despite IRPA's plain language, the *Huston* court interpreted the statute as prohibiting only the use of another's identity "in connection with the *offer for sale* of any product or service to a third party." *Huston*, 2022 WL 385176, at *3 (emphasis added). The court in *Huston* appears to have ignored the statute's separate prohibition on uses of one's identity "on or in connection with the offering for sale *or* sale" of a product, good, or service. 765 Ill. Comp. Stat. Ann. 1075/5 (emphasis added). The court's failure to appreciate the first prong of the IRPA's "commercial purpose" definition (concerning the use of a name in connection with the "sale" of a product) as separate and distinct from the second prong (concerning the use of identities in "advertising or

promoting" goods or services) contravenes the principle that Illinois statutes should be interpreted "[i]n order that no part of the statute be rendered superfluous or meaningless." *Gaylor v. Vill. Of Ringwood*, 363 Ill. App. 3d 543 (2006). Instead of a robust statutory analysis, the *Huston* court simply relied on decisions addressing the second prong of the IRPA's "commercial purpose" definition (in cases where the litigants had not briefed the distinction between the two prongs) to broadly conclude that the IRPA in its entirety only "prohibits the use of an individual's identity to promote or entice the purchase of some other product." *Huston* 2022 WL 385176, at *2 (citing *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012)). *See also id.* (citing and discussing *Dobrowolski v. Intelius*, 2018 WL 11185289, at *3 (N.D. Ill. May. 21, 2018); *Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013), *Lukis v. Whitepages Inc.*, 2020 WL 6287369, at *4 (N.D. Ill. Oct. 27, 2020)).[7]

But even if the Court were to follow *Huston* (which, for the reasons discussed herein, it should not), then—at best—it would arguably apply to the claim brought under the Puerto Rico statute. But for all the reasons discussed herein, neither it nor the textual analysis of the IRPA would apply to the other Misappropriation Statutes, which specifically prohibit the use of identities "on or in" products without qualification.

Defendant's reliance on *U.S. News & World Report, Inc. v. Avrahami*, No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13,1996), concerning Virginia's Right of Publicity Statute, is

---

[7]     The remainder of the *Huston* opinion is equally unpersuasive. For example, *Huston* suggests that Hearst's alleged conduct was "a standard practice in the direct mail industry." 2022 WL 385176, at * 3 (C.D. Ill. Feb. 7, 2022), citing *U.S. News & World Report, Inc. v. Avrahami*, No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13 ,1996). But the fact that a practice is standard does not mean it is lawful; indeed, Judge Torres recently found that Hearst's so-called standard practices violate Michigan privacy law. *See Boelter v. Hearst Commcn's, Inc.*, 269 F. Supp. 3d 172, 201-02, 206-07 (S.D.N.Y. 2017) (granting plaintiff's motion for summary judgment based on disclosures of same alleged Data Brokerage Products). Here, regardless of whether Hearst's conduct is a "standard practice," that conduct falls within the plain letter of the Misappropriation Statutes, including the Puerto Rico statute, and is illegal.

similarly unavailing.  (Mot. at 10-11.)  For one thing, like the Illinois statute discussed in *Huston*,

Virginia's publicity statute is materially different from the Misappropriation Statutes at issue here.

Whereas the Misappropriation Statues explicitly prohibit the non-consensual use of an individual's

name "on or in" a product, good, or service, the Virginia statute contains no such prohibition.

Instead, the Virginia statute merely prohibits the non-consensual use of a name "for purposes of

trade."  Va. Code. Ann. § 8.01-40;[8] *Berger v. Capitol Color Mail, Inc.*, 38 Va. Cir. 261 (1995)

("What constitutes use of a picture for 'purposes of trade' is not expressly defined by the statute.").

*Avrahami* is thus of no value to interpreting the Misappropriation Statutes.  Beyond this, there is

no reason to assign any weight to the opinion because it engages in no statutory analysis to support

its "conclusion[] of law" that "[t]he inclusion of an individual name as part of a mailing list

constitutes neither a use for an advertising purpose nor a use for the purpose of trade, as defined

by the statute."  *Id.* at *7.  Indeed, the *Avrahami* court—like the *Huston* opinion—conflates the

"advertising" and "purpose of trade" prongs of the statute as both covering advertising and nothing

else.  *See id.* at *7 (citation omitted) ("The inclusion of a name as part of a larger mailing list for

purposes of a direct mail solicitation does not constitute use of that name in the promotion of an

actual product or service itself.").  For those reasons, *Avrahami* does not speak to whether Plaintiffs

have stated claims under the Misappropriation Statutes.

---

[8]        In relevant part the Virginia Statutes states as follows:

Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, or if dead, of the surviving consort and if none, of the next of kin, or if a minor, the written consent of his or her parent or guardian, for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use. And if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by this chapter, the jury, in its discretion, may award punitive damages.

Va. Code Ann. § 8.01-40 (West).

Finally, Hearst also cites *Nieman v. Versulaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), where the court dismissed an IRPA claim finding the claim was non-cognizable over IRPA's express news and public account exceptions codified at 765 ILCS 35(b)(2).  Here, Hearst does not even attempt to invoke a newsworthiness exception in its Motion.  Like the rest of the decisions to which Hearst cites, *Nieman* is inapposite to the issues presented in the Motion.

C.   **The Misappropriation Statutes Prohibit More Conduct than the Common Law**

Defendant also seeks to analogize the Complaint's claims to a litany of decisions involving common law publicity claims, most of which (again) involve "endorsement" claims rather than "use" claims.  These too are fundamentally inapposite.  For example, *Shibley v. Time, Inc*., 45 Ohio App. 2d 69, 72 (Ohio Ct. App. 1975) (cited at Mot. at 12) involved an inherently dissimilar common law claim for invasion of privacy, which the court, citing *Prosser*, explained was limited to "public" displays indicating endorsement.   But the Ohio Statute, like all the Misappropriation Statutes on which Plaintiffs' claims are based, (a) has no "public display" requirement, and (b) sweeps far more broadly than just endorsement claims, encompassing use of an individual's persona "on or in connection with a place, product, merchandise, goods, services, or other commercial activities" as well.   Ohio Rev. Code § 2741.02(B)(1).  *See also Bosley*, 310 F. Supp. 2d at 922-23 (agreeing that the sale of video containing plaintiff's image violated Ohio Statute "even if [the video] does not reference Defendants' other wares" for advertising purposes).[9]

The factual allegations of the Complaint present clear-cut, statutorily based entitlements to

---

[9]     Defendant asserts that the Ohio common law is consistent with the Ohio Statute (Mot. at fn. 9, citing *ETW v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003)).  However, *ETW* does not discuss either of the material differences between the common law privacy claim discussed above and the Ohio Statute.

relief arising from Hearst's *non-consensual* inclusion of Plaintiffs' and the respective classes' identifying information "on or in" Hearst's Data Brokerage Products.  By contrast, cases like *Shibley* turn on the unique limitations of common law claims that are irrelevant to this case.  *See also Dwyer v. American Express Co.*, 652 N.E.2d 1351 (Ill. App. Ct. 1995) (cited in Mot. at 12-13) (finding plaintiff failed to state a claim for Illinois common law intrusion upon seclusion without any reference a statutory claim under IRPA); *In re: Facebook Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (cited in Mot. at 14) (granting motion to dismiss California common law right of publicity claim without discussion of California Statute). The Misappropriation Statutes, enacted after extensive deliberations and input from industry experts and the like, reflect the judgment of these states to proscribe exactly the sort of conduct that Hearst is alleged to have committed in this case.  That certain common law requirements like those at issue in *Shibley* were left behind in the legislative process is unsurprising – but their omission matters. The plain statutory text must control.  This Court should decline Hearst's invitation to second-guess the considered judgment of these legislative bodies by reading unwritten requirements into these statutory schemes.

Defendant also cites *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), where a court rejected a California right of publicity claim that involved the defendant's unconsented, direct sale of the plaintiff's personal information to third parties.  (Mot. at 13-14.)  There, the court found that the defendant did not "appropriate" the plaintiffs' identities because it did not use them either as "endorsements" of its product or for "promotional purposes, *i.e.*, to advertise or promote a separate product or service." *Brooks*, 2021 WL 3621837, at *4.  However, the court did not acknowledge the California right of publicity statute's language prohibiting the use of persons' identities "*on or in* products,

merchandise, or goods" without consent.  Cal. Civ. Code § 3344(a) (emphasis added).  *See also Collection Bureau of San Jose v. Rumsey*, 24 Cal. 4th 301, 310, 6 P. 3d 713, 719 (2000) (a court must "give effect to the plain and express language of a statute").  Further, the court did not cite or discuss the California Supreme Court's decision in *Comedy III*, which expressly held that the two prongs "are not synonymous," and which confirmed that selling t-shirts with a likeness printed on them constituted a prohibited use of a likeness "'on . . . products, merchandise, or goods' within the meaning of the statute," even though there was no advertisement or promotion. 25 Cal.4th at 395.  To compound that flaw, the *Brooks* court appears to have given dispositive, substantive weight to the fact that, historically, right of publicity claims—whether brought under state statutes or common law—address false endorsement or "promotion" claims.  *Brooks*, 2021 WL 3621837, at *4 ("Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service.") (collecting cases).  But just because "virtually all" cases address false endorsements or promotions does not give the court leeway to ignore the express statutory language—*i.e.*, prohibiting the use of identities "on or in" commercial products—on which Plaintiffs' claims are based.  This Court should follow the California Supreme Court's binding interpretation of the California Statute in *Comedy III*, not the *Brooks*' court's non-binding interpretation.

### D. Hearst's Copyright and Incidental Use Arguments Are Inapplicable

Hearst attempts to graft copyright law defenses into the Misappropriation Statutes, but provides no statutory or case-law support for this contention.

For example, Hearst argues that a "bedrock" precept of copyright is that mere biographical, identifying, or other facts about oneself are not protectable as intellectual property (Mot. at 15), and that, consequently, the inclusion of one's name on a product is not actionable under state

Misappropriation Statutes.  This non-sequitur directly contradicts the Misappropriation Statutes, which expressly provide that the use of a *name*, standing alone, is a prohibited commercial use.  *See* Section I, *supra*.  Names are, of course, central to identity.  For this reason, every one of the Misappropriation Statutes specifically prohibits the non-consensual use of a person's name for commercial purposes.

Hearst relies on *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347 (1991), which holds that names (and phone numbers) contained in the White Pages are uncopyrightable facts.  But *Feist's* holding is based on the principle that "the primary objective of copyright is not to reward the labor of authors, but to promote the Progress of Science and useful Arts."  *Id.* at 349 (internal quotation omitted).  While that may be true, it has nothing to do with this case—*Feist* did not analyze any right of publicity claim, let alone the Misappropriation Statutes.  Copyright and the right of publicity derive from two different sources and serve two different purposes; defenses to one are not automatically defenses to the other.  *See*, *e.g.*, *Comedy III*, 25 Cal.4th at 404 (cautioning that "a wholesale importation of the fair use doctrine into right of publicity law would not be advisable").  Instead, the Misappropriation Statutes define their own defenses and exemptions.  *See*, *e.g.*, Cal. Civ. Code § 3344(d) (exempting use of a likeness "in connection with any news, public affairs, or sports broadcast or account" from consent requirement).

Hearst also attempts to invoke the incidental use defense as grounds for why Plaintiffs' claims should be dismissed.  But Hearst has not established that this defense exists for all of the statutes at issue, and, even if the defense were available, whether the use of a likeness is incidental is a factual question that cannot be resolved on the pleadings.  *See Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 (9th Cir. 2015) (explaining that relevant factors to determine incidental use include "(1) whether the use has a unique quality or value that would result in commercial profit

to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication."). *See also Zoll v. Jordache Enterprises Inc.*, No. 01 CIV. 1339 (CSH), 2003 WL 1964054, at *20 (S.D.N.Y. Apr. 24, 2003) (finding incidental use was a jury question where unsuitable for resolution on a motion to dismiss); *Doe v. Darien Lake Theme Park & Camping Resort, Inc.*, 277 A.D.2d 967, 967 (4th Dep't 2000) (denying motion to dismiss finding incidental use to be a jury question).

In any case, Plaintiffs' pleading plainly defeats any affirmative defense of incidental use at this stage.   In relevant part, the Complaint alleges that Hearst "sold, licensed, rented, exchange[d], and otherwise disclosed to its various Data Brokerage Clients…on a per record basis… information [that] includes basic identifying information about each of Hearst's subscribers (name, address, magazines subscribed to, among other such details) along with additional information received from the data aggregators and appenders," (Comp. ¶ 62) and that "as the subjects of commercial transactions, the aspects of Plaintiffs' likenesses that Defendant uses on or in connection with its products, services, or other commercial activities have significant commercial value." (Comp. ¶ 65).   Moreover, Plaintiffs plausibly allege that Hearst's use of Plaintiffs' and the proposed Class Members' names and identifying information is not incidental to Hearst's data brokerage business; rather, it is essential.   *See Stayart v. Google, Inc.*, 710 F. 3d 719, 723 (7th Cir. 2013) (evaluating privacy claim under Wisconsin statute finding plaintiffs state a cause of action where there is a "substantial rather than incidental connection between the use [of plaintiff's name, likeness, etc.] and defendant's commercial purpose.").   The Data Brokerage Products consist of Hearst's subscribers' identities, including their contact and demographic information.   The primary value these products have is the fact that they contain the identities of

real individuals and a means to contact them.  The inherent commercial value of these lists is evidenced by the fact that they are bought, sold, and traded.  See *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 157521, at \*2 (W.D. Wash. April 2021) ("To assert [an Ohio Misappropriation] claim, Plaintiff must only plead that there is some value in associating a good or service with her identity.") (citing *Harvey v. Systems Effect, LLC*, 154 N.E. 3d. 293, 306 (Ohio App. 2020)) (analyzing Ohio Misappropriation Statute); *see also Knapke v. PeopleConnect Inc.*, --- F. Supp. 3d ----, 2021 WL 3510350, at \*6 (W.D. Wash. Aug. 2021) ("[T]here is no express element that someone in Ohio view the misappropriated likeness.").

At the pleading stage, the foregoing allegations plausibly state a claim for relief over Hearst's purported defense of incidental use.  *See Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 75 (S.D.N.Y. 1988) (denying motion to dismiss, where, upon applying Fed. R. 12(b)(6) standard and accepting Plaintiff's allegations as true, Defendant could not sustain incidental use as basis to avoid liability for violating New York Civil Rights law; *Upper Deck Co. v. Panini Am., Inc.,* 469 F. Supp. 3d 963, 986 (S.D. Cal. 2020) (denying motion to dismiss claim under California Statute noting "The Complaint alleges that the use of [Michael] Jordan's name was not incidental; therefore, the Court cannot determine as a matter of law that Defendant's inclusion of Jordan's image in its trading cards was merely incidental.").

Nevertheless, Hearst repeatedly argues that each individual is just one of many names on the list, but that does not change the analysis.  The right of publicity is the "inherent right of *every human being* to control the commercial use of his or her identity."  *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 928 (6th Cir. 2003) (emphasis added); *see also Callahan v. PeopleConnect, Inc.*, 2021 WL 5050079, at \*14 (N.D. Cal. Nov. 2021) ("The statutory text makes no mention of preexisting value, and in fact can be read to presume that a person whose name, photograph, or

likeness is used by another for commercial purposes without their consent is 'injured as a result thereof.'") (citing *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 808 (N.D. Cal. 2011)) (analyzing California Misappropriation Statute).  The basis of Plaintiffs' claims is that Hearst appropriates this valuable right from each of its subscribers by including their names and identity information in its Data Brokerage Products without consent.  That it does so on a massive scale does not excuse its conduct.  *See Perkins v. LinkedIn Corp.,* 53 F. Supp. 3d 1222, 1255 (N.D. Cal. 2014) (stating "LinkedIn's alleged use of Plaintiffs' names and likenesses was critical, not incidental, to Defendant's commercial purpose" where plaintiffs' allegation was that LinkedIn sent email solicitations to subscribers' contacts and email contained subscribers' names and likenesses).

Hearst also relies on a host of wholly inapposite cases to support its incidental use defense.  For example, in *Schifano v. Greene Cnty. Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993), the court found there was no commercial value to defendant in the display of a group photo where plaintiffs were one of many individuals pictured while seated.  By contrast, here, there is obvious commercial value in gathering and selling every individual's name, address, and other identifying information in Data Brokerage Products.  Indeed, the lists would have no value if Hearst's Data Brokerage Clients could *not* use each individual's identify information "on a per record basis."  (Compl. ¶ 61). Unlike a group photo, which is sold for its overall gestalt, the information in Hearst's databases is *only* valuable if *individuals* can be identified and directly sent advertisements.  Likewise, *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E. 2d 859, 896-70 (Ind. Ct. App. 2013), involved the mention of an individual's name in a press release concerning a matter of public concern, rather than an attempt to monetize Plaintiffs' indicia of identity, as here.

## II.   THE FIRST AMENDMENT DOES NOT PROTECT HEARST'S CONDUCT

Hearst argues that the Misappropriation Statutes are content-based regulations that must

satisfy strict scrutiny to comply with the First Amendment.  That is wrong.  The Misappropriation Statutes regulate Hearst's commercial speech, and thus need only satisfy intermediate scrutiny, which they readily do.  As such, Hearst's 'as applied' challenge to the Misappropriation Statutes fails.

A.     **Plaintiffs' Claims Concern Purely Commercial Speech Warranting Only Intermediate Scrutiny**

It is black-letter law that "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression."  *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 (1980).  *See also Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) ("[W]e engage in 'intermediate' scrutiny of restrictions on commercial speech, analyzing them under the framework set forth in *Central Hudson*."); *Sorrell v. IMS Health, Inc.*, 131 S.Ct. 2653, 2663 (2011) ("the government's interest in protecting consumers from commercial harms explains why commercial speech can be subject to greater governmental regulation than noncommercial speech.").  Commercial speech is "expression related solely to the economic interests of the speaker and its audience."  *Central Hudson*, 447 U.S. at 561.  Regulation of commercial speech is subject only to intermediate scrutiny, not strict scrutiny.  *See Vugo, Inc. v. City of New York*, 931 F.3d 42, 44 (2d Cir. 2019).

There can be no serious dispute that Hearst's Data Brokerage Products constitute commercial speech.  Indeed, in a comprehensive and well-reasoned decision, *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016), Judge Torres concluded that Hearst's transmission of its subscribers' identity information to third-parties was "commercial in nature."  *Id.* at 445.  *Boelter* concerned putative class action claims challenging Hearst's list brokering practices under Michigan's Video Rental Privacy Act ("VRPA"), a statute that prohibits sellers of certain written materials from disclosing readers' identities to third-parties.  Judge Torres reasoned

that the speech at issue was "solely related to the economic interests of the speaker and audience," "relays an individual's economic preferences," and "facilitates the proposal of new commercial transactions." *Id.* at 445 (internal punctuation and quotations omitted), citing *Conn. Bar. Ass'n v. United States*, 620 F.3d 81, 93 (2d Cir. 2010).   Accordingly, Judge Torres rejected Hearst's contention that the sale of its subscribers' identity information was non-commercial speech warranting strict scrutiny.

The contours of the Misappropriation Statutes are identical to those of VRPA.   By their plain terms the Misappropriation Statutes all only cover the non-consensual use of the indicia of identity for *commercial purposes*.   *See Sessa v. Ancestry.com Operations Inc.*, --- F. Supp. 3d ---- , 2021 WL 4245359, at *14 (D. Nev. Sept, 16, 2021) ("[O]ur cases clarify that a publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising.") (citing *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1016 (9th Cir. 2017)).   Areas that historically implicate the First Amendment – newsgathering, the arts, politics, and the like – are expressly carved out of the Misappropriation Statutes' reach.   *See* Section I, *supra*.   Additionally, the speech at issue is limited to identity information obtained from a commercial transaction (the subscription to a magazine), and therefore is of interest to only the subscriber, Hearst, and Hearst's Data Product Customers, not the public writ large.   *Cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759, 762-63 (1985) (a "credit report concerns no public issue," but rather is speech of "purely private concern" that is "solely motivated by the desire for profit" and is thus "of less First Amendment concern").   Moreover, Hearst communicates these lists for the express purpose of fostering other commercial transactions by third parties, and perhaps most saliently, for the purpose of generating profit.   Thus, exactly as in *Boelter*, here, by every metric, "[Hearst's] disclosing consumer information is – primarily, if not entirely – an economic act."  192 F. Supp.

3d. at 445.

Indeed, the Misappropriation Statutes are analogous to laws that regulate how consumer information gathered in credit reports may be disseminated, which courts have uniformly analyzed under the commercial speech doctrine. *See*, *e.g*, *King v. Gen. Info. Svcs., Inc.*, 903 F. Supp. 2d 303, 307 (E.D. Pa. 2012) (in challenge to Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, holding that "[t]he appropriate test for analyzing the reduced First Amendment protection accorded to consumer report information is the Supreme Court's commercial speech doctrine"); *Trans Union Corp. v. F.T.C.*, 267 F.3d 1138, 1141 (D.C. Cir. 2001) (FTC's restrictions on the sale of consumer reports was commercial speech subject to intermediate scrutiny); *see also United Reporting Pub. Corp. v. Cal. Highway Patrol*, 146 F.3d 1133, 1137 (9th Cir. 1998), *rev'd on other grounds sub nom. Los Angeles Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32 (1999) ("United Reporting sells arrestee information to clients; nothing more…This is a pure economic transaction … comfortably within the core notion of commercial speech.").

Hearst ignores this precedent and instead relies on cases involving phone books and directories which are easily distinguishable. In *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 965 (9th Cir. 2012), for instance, the court found that phone books include both commercial speech (e.g., advertisements) as well as non-commercial speech (e.g., information of public concern about community events). By contrast, here, the alleged speech is purely commercial as set forth above, *see Vrodolyak v. Avvo*, 206 F. Supp. 3d 1384, 1385-86, 1388 (N.D. Ill 2016) (describing an attorney directory as composed of "non-commercial" information), and does not convey information of public concern but rather information "of purely private concern," *Dun*, 472 U.S. at 759, to Hearst and its Data Brokerage Clients, *see also Boelter*, 192 F. Supp. 3d at 445. *Dex Media* said nothing to suggest that the aggregate identity information of private individuals

constitutes a matter of public concern, nor could it.

Hearst cites *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), for the proposition that strict scrutiny should apply to the Misappropriation Statutes because the restrictions are content- and speaker-based. "However, *Reed* does not concern commercial speech, and therefore does not disturb the framework which holds that commercial speech is subject only to intermediate scrutiny as defined by the *Central Hudson* test." *Contest Promotions, LLC v. City & Cnty. of San Francisco*, 2015 WL 4571564, at *4 (N.D. Cal. July 28, 2015); *California Outdoor Equity Partners v. City of Corona*, 2015 WL 4163346, at *10 (C.D. Cal. July 9, 2015) ("*Reed* does not concern commercial speech … The fact that *Reed* has no bearing on this case is abundantly clear from the fact that *Reed* does not even *cite Central Hudson*, let alone apply it.") (emphasis in original); *Citizens for Free Speech, LLC v. Cnty. of Alameda*, 2015 WL 4365439, at *13 (N.D. Cal. July 16, 2015) (confirming that, despite the Supreme Court's ruling in *Reed*, commercial speech must be examined "under intermediate scrutiny, not strict scrutiny"). Although Hearst relies on *Sorrell* to make the same argument, the Second Circuit has explicitly held that "[f]ollowing *Sorrell*, this Court has continued to apply *Central Hudson*'s intermediate scrutiny test to commercial speech restrictions," including content-based ones. *See Vugo*, 931 F.3d at 49-50.

The Data Brokerage Products are commercial speech subject to intermediate scrutiny.

### B.      The Misappropriation Statutes Survive Hearst's As-Applied Challenge

Under *Central Hudson*, government regulation of commercial speech survives the First Amendment if: (1) the restriction seeks to further a substantial government interest; (2) the restriction directly advances the government's interest; and (3) the restriction reaches no further than necessary to accomplish the objective. 447 U.S. at 564. Hearst's as-applied challenge fails because the Misappropriation Statutes are sufficiently proportional to advance a substantial state

interest under *Central Hudson*.[10]

  <u>There Is a Substantial Government Interest in Protecting the Individual Right of Publicity</u>. The legislative determination that each individual has the exclusive right to control his or her likeness for commercial purposes animates each of the Misappropriation Statutes.  *See*, *e.g.*, Haw. Rev. Stat. § 482P-1 ("Every individual or personality has a property right in the use of the individual's or personality's name, voice, signature, and likeness."); Wash Rev. Code. § 63.60.010 ("Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness.").  This is a substantial state interest.  *See Zacchini v. Scripps-Howard Broad. C*o., 433 U.S. 562, 573 (1977) (recognizing the state's interest in safeguarding the right of publicity is "closely analogous to the goals of patent and copyright law").

  <u>The Misappropriation Statutes Directly Advance the Interest in Protecting Individuals' Right of Publicity</u>.  The Misappropriation Statutes create a right of publicity and prohibit the commercial use of an individual's name, likeness, or identity without that individual's consent. This regime "reduces the likelihood" that a person's right of publicity will be infringed without their permission.  *Boelter*, 192 F. Supp. 3d at 449.  Moreover, the Misappropriation Statutes' exemptions for things like news reporting, political speech, and artistic expression are "narrow, sensible exceptions" which "do not handicap the law's ability to advance the state's goals."  *Id.*

  <u>The Misappropriation Statutes Are Narrowly Drawn</u>.  The Misappropriation Statutes are

---

[10] Hearst does not appear to launch a facial challenge to the Misappropriation Statutes based on their exemptions for certain categories of speech.  (Mot. at. 21).  Hearst notes for example, that the Nevada Statute exempts the use of identity information in connection with the government's ability to promote tourism (NRS § 597.790(2)(g)) while Alabama includes "talk shows" among traditionally exempted First Amendment activities (Ala. Code § 6-5-773(b)).  To the extent Hearst raises a facial challenge, it fails.  Generally, facial challenges are not well-taken because they require a court to entertain factual scenarios not presently before it.  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  Thus they may succeed only where a party establishes that there are *no* constitutional applications of the statute.  *Id.* at 449.  Hearst has not attempted to make that showing. Moreover, Hearst has not demonstrated that the exemptions "prohibit a substantial amount of protected speech." *Boelter*, 192 F. Supp. 3d at 451-52.  To the contrary, the exemptions serve to regulate *less* speech than otherwise would be subject to the statutes.

sufficiently tailored to advance the aforementioned state interest without exceeding that purpose. First, the Misappropriation Statutes are all limited to certain "commercial uses," *e.g.*, the sphere where an individual's property rights in her personality are uniquely implicated.   Second, specifically exempted from the Statute's reach are those areas that traditionally implicate heightened First Amendment protections; for example, newsworthy matters, reporting, political speech, artistic performance, and literally works among others.   By specifically including these exemptions, the legislatures that passed these statutes avoided unnecessarily regulating speech. *See Boelter*, 192 F. Supp. 3d at 449.

Nevertheless, Hearst baselessly asserts that "suppressing the communication of aggregated data points to a contractual partner – who does not even know what names it has received – does nothing to advance this state interest[,]" referring to the interest "in protect[ing] an individual's ability to exploit the commercial value of their unique, one-of-a-kind likeness."  (Mot. at 23-24). But how can that be when the whole purpose of the Data Brokerage Products is to "exploit the commercial value" of Plaintiffs' identity information?   Indeed, the products *only* have value because Plaintiffs' identities are in the products. Yet again, Defendant willfully neglects the Misappropriation Statutes' plain language.   The Misappropriation Statutes serve to keep actors like Hearst from commercially exploiting individuals' indicia of identity without their consent. With consent – which, ostensibly, would come at a price – Hearst would be free to sell and share identity information in any manner otherwise consistent with the law.

As such, the Misappropriation Statutes strike an appropriate balance between the First Amendment and a valid state interest.  They do not violate the First Amendment

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be denied in its entirety.

Dated:  March 23, 2022          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
      Philip L. Fraietta

Philip L. Fraietta
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
pfraietta@bursor.com
jdiamond@bursor.com

Ari J. Scharg*
Benjamin Thomassen*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589.6370
Fax: (312) 589.6378
ascharg@edelson.com
bthomassen@edelson.com

Frank S. Hedin*
Arun G. Ravindran
**HEDIN HALL LLP**
1395 Brickell Ave, Ste 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 800-2201
aravindran@hedinhall.com
fhedin@hedinhall.com

Thomas L. Laughlin, IV
Joseph P. Guglielmo
Erin G. Comite
Sean T. Masson
Carey Alexander
**SCOTT+SCOTT LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Tel.:  212-223-6444
Fax:  212-223-6334
tlaughlin@scott-scott.com
jguglielmo@scott-scott.com
ecomite@scott-scott.com

smasson@scott-scott.com
calexander@scott-scott.com

*Pro hac vice* application forthcoming

*Counsel for Plaintiffs and the Proposed Classes*