IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

*In re Hearst Communications State Right of Publicity Statute Cases*

No. 1:21-cv-08895-RA-GWG

**DEFENDANT HEARST COMMUNICATIONS, INC.'S**
**REPLY MEMORANDUM OF LAW**
**<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS</u>**

Jonathan R. Donnellan
Andrea R. Butler
Sarah S. Park
THE HEARST CORPORATION
Office of General Counsel
300 West 57th Street, 40th Floor
New York, New York 10019
Tel: (212) 649-2484
Fax: (212) 554-7000
Email: jdonnellan@hearst.com
       abutler@hearst.com
       sarah.park@hearst.com

*Attorneys for Defendant Hearst Communications, Inc.*

-i-

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1
ARGUMENT ............................................................................................................................ 3
I.   Plaintiffs Cannot Allege any Infringing Commercial Use of Their Names by Hearst. ....... 3
II.  Plaintiffs' Application of Right of Publicity Laws Runs Afoul of the Constitution. .......... 9
CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boelter v. Hearst Communications, Inc.*,
    192 F. Supp. 3d 427 (S.D.N.Y. 2016) ................................................................................10

*Bosley v. Wildwett.com*,
    310 F. Supp. 2d 914 (N.D. Ohio 2004) ..................................................................................4

*Bravado Int'l Grp. Merch. Servs., Inc. v. Sean Broihier & Assocs.*,
    No. CV-14-03375, 2015 WL 13915022 (C.D. Cal. Aug. 17, 2015) .................................2, 3, 4

*Brooks v. Thomson Reuters Corp.*,
    No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......................................4, 6

*Callahan v. PeopleConnect, Inc.*,
    No. 20-CV-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ............................................8

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
    447 U.S. 557 (1980) .........................................................................................................9, 10

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
    No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022) ..................................................4

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
    25 Cal. 4th 387 (2001) .......................................................................................................2, 3

*Davis v. Elec. Arts Inc.*,
    775 F.3d 1172 (9th Cir. 2015) ................................................................................................8

*Dex Media West, Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ..................................................................................................9

*Doe v. Darien Lake Theme Park & Camping Resort, Inc.*,
    277 A.D.2d 967 (4th Dep't 2000) ..........................................................................................8

*Dwyer v. American Express Co.*,
    652 N.E.2d 1351 (Ill. App. Ct. 1995) ....................................................................................7

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
    499 U.S. 340 (1991) ...........................................................................................................7, 8

*Huston v. Hearst Communications, Inc.*,
    No. 21-cv-1196, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022) ..........................................1, 5, 6

*Knapke v. PeopleConnect Inc.*,
    553 F. Supp. 3d 865 (W.D. Wash. 2021) ...............................................................................8

*Kolebuck-Utz v. Whitepages Inc.*,
   No. C21-0053, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) ............................................8

*Nieman v. Versuslaw, Inc.*,
   No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ......................................................6

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1222 (N.D. Cal. 2014) ...................................................................................8

*Radio Today, Inc. v. Westwood One, Inc.*,
   684 F. Supp. 68 (S.D.N.Y. 1988) ...........................................................................................8

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ..........................................................................................................9, 10

*Shibley v. Time, Inc.*,
   341 N.E.2d 337 (Ohio Ct. App. 1975) ...................................................................................7

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ..........................................................................................................9, 10

*Stayart v. Google, Inc.*,
   710 F.3d 719 (7th Cir. 2013) ..............................................................................................8, 9

*U.S. News & World Report, Inc. v. Avrahami*,
   No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996) .......................................5, 6, 8

*United States v. Caronia*,
   703 F.3d 149 (2d Cir. 2012) .................................................................................................10

*Upper Deck Co. v. Panini Am., Inc.*,
   469 F. Supp. 3d 963 (S.D. Cal. 2020) ....................................................................................8

*Zoll v. Jordache Enters. Inc.*,
   No. 01 CIV. 1339, 2003 WL 1964054 (S.D.N.Y. Apr. 24, 2003) ..........................................8

**Statutes**

Cal. Civ. Code § 3344(b) .................................................................................................................8

Haw. Rev. Stat. § 482P-7(f) ............................................................................................................8

Ohio Rev. Code Ann. § 2741.09(A)(4) ...........................................................................................8

P.R. Laws Ann. tit. 32, § 3151(c) ....................................................................................................8

Wash. Rev. Code § 63.60.070(6) .....................................................................................................8

Defendant Hearst, through its undersigned counsel, respectfully submits this reply in further support of its Motion to dismiss the Complaint.[1]

## INTRODUCTION

Plaintiffs cannot point to a single case or authority that supports their claims.

Faced with myriad authorities in the Motion showing there is no right of publicity in one's name as part of a mailing list, Plaintiffs resort to arguing that these cases are all "irrelevant"—including *Huston v. Hearst Communications, Inc.*, No. 21-cv-1196, 2022 WL 385176 (C.D. Ill. Feb. 7, 2022), *appeal docketed*, No. 22-1489 (7th Cir. Mar. 28, 2022), which involved the same allegations.  Opp. 2, 9.  To avoid application of this clear precedent, Plaintiffs offer a novel theory that each statute purportedly includes an entirely separate "prong" that is untethered from the familiar commercial activities that could give rise to a right of publicity claim—such as "advertising, marketing, merchandising, endorsement or promotion"—yet is so far-reaching as to forbid the communication of names "on or in" a list, even if the recipient is never alleged to be aware of any name on the list.  *Id.* at 2, 6–7.  Because the authorities cited in the Motion do not recognize this "prong," Plaintiffs dismiss them as "inapposite"; Plaintiffs explicitly disavow that they are alleging Hearst used their identities for anything like "advertising, marketing, merchandising, endorsement or promotion."  *Id.*

But no case cited by Plaintiffs recognizes such a dubious, all-encompassing "prong," either.  Each of the cases they cite involving the "use" of identity "on or in" a "product" involves the use of famous likenesses to **sell merchandise**, *i.e.*, printing a likeness of The Three Stooges on t-shirts and lithographs for sale, or selling postcards and cell phone cases bearing certain

---

[1] Unless otherwise stated herein, all capitalized terms and abbreviations shall have the meaning accorded to them in Hearst's Memorandum of Law in Support of its Motion to Dismiss (the "Motion") (ECF No. 38).  Plaintiffs' Opposition to Defendant's Motion to Dismiss (ECF No. 42) is referred to herein as "Opposition" or "Opp."

musicians' likenesses.  *Id.* at 6–7 (citing *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 395 (2001); *Bravado Int'l Grp. Merch. Servs., Inc. v. Sean Broihier & Assocs.*, No. CV-14-03375, 2015 WL 13915022, at *1 (C.D. Cal. Aug. 17, 2015)).  Such merchandising is a widely recognized application of the right of publicity.  Opp. 1 & n.1 ("With the exception of Puerto Rico's, each statute explicitly prohibits 'the use of the indicia of identity of a person, *on or in* products, goods, *merchandise*, or services'" (second emphasis added)).  Yet, as noted above, Plaintiffs concede this case involves no merchandise.  *See id.* at 6–7.

In sum, while Plaintiffs admit every statute at issue requires them to show a "use" of identity for particular "commercial purposes," they cite no authority interpreting such commercial "use" under any statute so broadly as to cover the conduct alleged here.  *Id.* at 4.  This is not surprising.  Given the development of the right of publicity to protect the use of *unique* identities for advertising, merchandising, promotion, and similar narrow commercial purposes—none of which are alleged here—this is not a close case.  The decisions uniformly rejecting claims like Plaintiffs' make this clear.  *See* Mot. 9–15.

Plaintiffs spend much of their Opposition trying to distinguish the body of case law foreclosing their claims by highlighting minor distinctions among statutes in the prohibited uses of an identity—such as "in connection with the offering for sale . . . of a product," versus "in connection with the . . . sale of a product," versus "on or in products . . . entered into commerce," versus "for purposes of trade"—without explaining why these distinctions make a difference here.  Opp. 3, 10, 12; Mot. 7.

In this case, such differences among the laws are not material.  The Court need not outline the precise contours of all nine laws to find that this case lies beyond the application of any of them: there is no formulation of the right of publicity, and no authority interpreting any

right of publicity law, that permits Plaintiffs' claims to proceed. Every case cited by Plaintiffs or Defendant in which a right of publicity claim was allowed to proceed involves, at a minimum, *the use of an individual identity's unique commercial value to influence a transaction*. Plaintiffs do not, and cannot, allege that here. Their claims are based on an unsupported reading of the laws that would lead to absurd results, ban unquestionably protected speech, and set the laws on a collision course with the First Amendment. Plaintiffs declined an opportunity to amend their claims, which should be dismissed with prejudice. *See* ECF No. 39.

## ARGUMENT

**I.     Plaintiffs Cannot Allege any Infringing Commercial Use of Their Names by Hearst.**

Plaintiffs cite no authority supporting their novel theory, which is at odds with the plain language of each statute defining the right of publicity as a "property" right in the affirmative "use" of a specific, unique individual's identity for a covered commercial purpose. Mot. 7–9.

While Plaintiffs rely on language in some (but not all) of the statutes prohibiting the unauthorized use of a name "on or in" a "product," the cases Plaintiffs cite interpreting this language deal with merchandising—the placement of a likeness on a product for sale like a t-shirt—a straightforward commercial exploitation of a unique identity, as in advertising, promotion, endorsement, and marketing. Opp. 6–7 (citing *Comedy III*, 25 Cal. 4th at 395; *Bravado*, 2015 WL 13915022, at *1). Neither *Comedy III* nor *Bravado* remotely suggest there is a heretofore unrecognized "prong" of any right of publicity law going so far as to prohibit the communication of a mailing list. *See Comedy III*, 25 Cal. 4th at 395 (finding likeness was used "on . . . products, merchandise, or goods" under California right of publicity statute where defendant "sold more than just the incorporeal likeness of The Three Stooges," and placed likeness on "tangible personal property" that could be "sold and displayed" (lithographs) or "sold

-3-

and worn on the body" (t-shirts)); *Bravado*, 2015 WL 13915022, at *8 ("It is [] the likeness itself that is being used to sell [other] items" such as postcards and cell phone cases). Plaintiffs do not allege Hearst used names to sell merchandise, and their cases interpreting the use of a name "on or in" separate products are irrelevant.

Two additional cases cited by Plaintiffs also plainly do not apply. The court in *Bosley v. Wildwett.com*, 310 F. Supp. 2d 914 (N.D. Ohio 2004) found the plaintiff's identity was "used . . . for a commercial purpose" under Ohio's right of publicity statute when her name, image, and likeness were "prominent[ly]" displayed on the cover of a video featuring her, and "promotional images" of her were displayed on a website that "clearly constitute[d] an advertisement for the video." *Id.* at 922. Plaintiffs acknowledge no such allegations of promotion or advertisement are present here. Opp. 6–7. In *In re Clearview AI, Inc., Consumer Privacy Litig.*, No. 21-cv-0135, 2022 WL 444135 (N.D. Ill. Feb. 14, 2022), Clearview allegedly "harvest[ed] an individual's unique biometric identifiers and information" from photographs on the internet, then allowed users to upload an individual's photograph to its database to search for information about that individual. *Id.* at *2–3. Thus, *Clearview* involved the defendants' use of a specific individual's unique identity to induce a commercial transaction, *i.e.*, the use of the database. *See id.* at *11. *Clearview* has no application here, where no recipient of an alleged mailing list is alleged to have *ever* been aware of *any* specific individual's identity.[2]

Plaintiffs otherwise try to manufacture unconvincing distinctions to escape the weight of authority barring their claims. Yet Plaintiffs provide no coherent reason why minor variations in

---

[2] *Clearview*, issued the same day the Motion was filed, is arguably in tension with *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021), where the court found the plaintiffs failed to state a California common law right of publicity claim even though they alleged, similar to *Clearview,* that their "names, likeness, and personal information is what attracts the attention of Thomson Reuters's customers to the dossiers on the CLEAR platform." *Id.* at *4. Nevertheless, any potential conflict between *Brooks* and *Clearview* is not material since even *Clearview,* as noted herein, is easily distinguishable from the facts alleged here.

the wording of the statutes at issue—all requiring the "use" of a specific identity for a covered commercial purpose—should matter here.  In seeking to avoid application of *Huston*, Plaintiffs contend the Illinois statute—which also prohibits the unauthorized "use" of identity "on or in connection with the offering for sale or sale of a product"—is somehow so different from the laws at issue as to have "no bearing here whatsoever." Opp. 9.  This defies belief.  Plaintiffs admit that at least the Puerto Rico statute's prohibition, which is at issue in this case, is virtually indistinguishable from that of the Illinois law.  *See id.* at 10.  More broadly, Plaintiffs' pleading (which they chose not to amend) makes no distinction between Puerto Rico's law and those of the other eight jurisdictions; they claim Hearst violated all nine laws "[b]y using Plaintiffs' and the Class members' names and likenesses on and in connection with its Data Brokerage Products[.]"  Compl. ¶ 68; *see also id.* ¶ 177 (claiming violation of Puerto Rico statute where "Defendant used the 'names' . . . of Plaintiffs . . . on or in its Data Brokerage Products").

It is only now, after the *Huston* decision was issued, that Plaintiffs claim to perceive a difference among the statutes without explaining why.  No such difference matters here.  Indeed, the plaintiffs in *Huston* made, and the court rejected, the same argument Plaintiffs make here with respect to all nine statutes.  *See* 2022 WL 385176, at *3 ("Ms. Huston argues that this case arises entirely under the first 'commercial purpose' prong, which specifically concerns public use or holding out of an individual's name 'on or in connection with the offering for sale or sale of a product, merchandise, goods, or services.'").  Hearst reproduced the language of all nine laws precisely to show how consistent their prohibitions are, which Plaintiffs do not deny. Mot. 7–8; Opp. 4 ("As the Complaint details, each of the Misappropriation Statutes prohibits the non-consensual use of indicia of a person's identity for 'commercial purposes[.]'").  Plaintiffs cannot escape the conclusion that *Huston* is directly on point.  Similarly, Plaintiffs claim *U.S.*

*News & World Report, Inc. v. Avrahami*, No. 95-1318, 1996 WL 1065557 (Va. Cir. Ct. June 13, 1996) is distinguishable because the Virginia statute employs slightly different language. Opp. 11–12. That law prohibited unauthorized "use" of a name "for the purposes of trade," and Plaintiffs do not explain why this is narrower or significantly different from the laws at issue, prohibiting "use" for "commercial purposes." *Id.* at 4, 12 n.8.

Plaintiffs alternatively argue *Huston*, *Avrahami*, and *Brooks* were wrongly decided. *See* Opp. 9, 12, 15. Plaintiffs say all three courts got the law wrong because they "conflate[d]" the different (imagined) "prongs" of the right of publicity laws as all requiring the use of a name for "promotion" or "advertising." *Id.* at 12, 15 ("[T]he *Brooks* court appears to have given dispositive, substantive weight to the fact that, historically, right of publicity claims—whether brought under state statutes or common law—address false endorsement or 'promotion' claims."). It is correct to say all three courts were persuaded the right of publicity has always involved some commercial use of identity akin to "promotion," but Plaintiffs draw the wrong conclusion; the uniformity of outcomes before courts faced with similar issues shows why Plaintiffs have no claim, not why every court has misjudged the law.³

Likewise, Plaintiffs give no principled reason why cases decided under common law are "irrelevant to this case." Opp. 13–14. Plaintiffs contend—conspicuously without citation—that the statutes at issue, "enacted after extensive deliberations and input from industry experts and the like, reflect the judgment of these states to proscribe *exactly the sort of conduct that Hearst is*

---

³ Plaintiffs reject several more cases as "concern[ing] *only* the endorsement prong" of right of publicity laws, but none of these decisions discusses the existence of different "prongs" of any state's law, let alone suggests Plaintiffs' claims could be made consistent with the law. Opp. 6 n.5. Plaintiffs further incorrectly describe *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) as limited to evaluating the newsworthiness exception of the Illinois right of publicity law; this is not accurate. Opp. 13; *Nieman*, 2012 WL 3201931, at *4 (finding plaintiff failed to allege his name was used for a "commercial purpose" when it was merely mentioned in court records searchable through defendant websites).

*alleged to have committed in this case*," as distinct from the right of publicity at common law. *Id.* (emphasis added). There is simply no support whatsoever for this conclusion—whether in the plain text of the laws, their legislative history, cases interpreting them, or otherwise. Indeed, the extant legislative history shows the reverse. *See, e.g.*, Mot. 23. Hearst is unaware of any authority suggesting the common law in any of the jurisdictions at issue would require a different result in this case. If Plaintiffs were aware of any such authority, they surely would have said so. Rather, cases such as *Shibley v. Time, Inc.*, 341 N.E.2d 337 (Ohio Ct. App. 1975), and *Dwyer v. American Express Co.*, 652 N.E.2d 1351 (Ill. App. Ct. 1995), reinforce that the right of publicity, in its various formulations, has *never* prohibited the communication, sale, or rental of subscriber mailing lists like the ones alleged here.

Plaintiffs misunderstand Hearst's point about *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 347 (1991). Mot. 15–16. Plaintiffs build a straw man, arguing "defenses to [copyright] are not automatically defenses to the [right of publicity]." Opp. 16. While this is undeniable, it is also disingenuous, as Hearst pointed to *Feist*'s holding as an "analogue in copyright law." Mot. 15. Plaintiffs have no substantive response to this analogy, which accords with the statutes' defining the right of publicity as a "property" right. *Id.* at 9.

As Plaintiffs themselves recognize, the right of publicity is not a right of refusal over every mention of one's name, but a property right in the value of one's name when used for a narrow commercial purpose. Opp. 25 ("[T]he Misappropriation Statutes are all limited to certain 'commercial uses,' *e.g.*, the sphere where an individual's property rights in her personality are uniquely implicated."). The right is transferable, assignable, and descendible as property. *See* Mot. 9 n.7. The same is not true of the mere *fact* of one's name; John Doe can assign the right of publicity in his name, but he cannot assign the *fact* that his name is John Doe or prevent the

mention of his name in all contexts. *See Avrahami*, 1996 WL 1065557, at *6 (subscriber "has no property right in [his] name," and "the exchange of [his] name as part of a mailing list does not invade any property right he may have in his name"). The analogous intellectual property rule in *Feist* is instructive here, and Plaintiffs fail to show otherwise.

As to Hearst's showing that Plaintiffs have at most alleged non-actionable incidental use, Plaintiffs primarily contend this issue cannot be resolved on the pleadings. Opp. 16–17.[4] Their own cases belie this conclusion—*Stayart v. Google, Inc.*, 710 F.3d 719 (7th Cir. 2013), cited by Plaintiffs, held the incidental use doctrine applied under Wisconsin law on a motion to dismiss since the plaintiff had "not pled any facts showing a substantial connection between Google's use of her name and its efforts to generate advertising revenues," where the plaintiff alleged Google's algorithm used her name to automatically suggest search queries. *Id.* at 721; Opp. 17. Other decisions reserving the question of incidental use for the fact-finder involved the use of identity for traditional advertising or promotional purposes, which are absent here.[5] Per

---

[4] Plaintiffs' contention that "Hearst has not established that this defense exists for all of the statutes at issue" is unavailing. Opp. 16. Setting aside that several statutes have codified some variation on an incidental use defense, Plaintiffs rely on the same authority—*Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015)—cited by Hearst for the principle that the defense is "widely recognized" even where not codified. Mot. 16–17 n.12; Opp. 16–17; Cal. Civ. Code § 3344(b); Haw. Rev. Stat. § 482P-7(f); Ohio Rev. Code Ann. § 2741.09(A)(4); P.R. Laws Ann. tit. 32, § 3151(c); Wash. Rev. Code § 63.60.070(6). "Incidental use" is a common formulation for a use of identity that "has no commercial value" because it is incidental or de minimis. *Davis*, 775 F.3d at 1180. Plaintiffs admit all statutes require a "use" of identity for commercial purposes. Opp. 4. A use too incidental to show a commercial purpose is therefore not actionable—Plaintiffs point to no authority suggesting otherwise under any state's law.

[5] Opp. 17–19 (citing *Zoll v. Jordache Enters. Inc.*, No. 01 CIV. 1339, 2003 WL 1964054, at *20 (S.D.N.Y. Apr. 24, 2003) (plaintiff was "the star of [a] well-known commercial" allegedly re-used as "part and parcel of [a] promotional campaign"); *Doe v. Darien Lake Theme Park & Camping Resort, Inc.*, 277 A.D.2d 967, 967 (4th Dep't 2000) (plaintiffs' photo was allegedly used in advertising brochures and home pages); *Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 74–75 (S.D.N.Y. 1988) (person's name was allegedly falsely used on album label to suggest they produced the album); *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 986 (S.D. Cal. 2020) (Michael Jordan's image was allegedly included on trading cards "to take advantage of Jordan's enormous brand value" and "drive[] product sales"); *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053, 2021 WL 1575219, at *2 (W.D. Wash. Apr. 22, 2021) (personal information was allegedly displayed in a "free preview, as an enticement to purchase Defendant's subscription service"); *Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 871 (W.D. Wash. 2021) (similar); *Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203, 2021 WL 5050079, at *1 (N.D. Cal. Nov. 1, 2021) (similar); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1225 (N.D. Cal. 2014) (someone's information was allegedly used by LinkedIn in targeted advertisements to their contacts)).

Plaintiffs' allegations, neither magazine subscribers nor list recipients are aware of the identity of any individual among the many thousands in the list—the value of the list, per their own allegations, is therefore not tied to the commercial value of any single person's identity. Plaintiffs plead themselves out of a claim. *See Stayart*, 710 F.3d at 721; Mot. 16–18.

**II.    Plaintiffs' Application of Right of Publicity Laws Runs Afoul of the Constitution.**

Plaintiffs do not dispute that the laws at issue are content-based regulations that favor certain forms of speech over others.[6]  *See* Mot. 21–23.  Nor do Plaintiffs dispute that the laws would not withstand strict scrutiny as applied to Hearst's alleged speech.  *See id.* at 23–24.  They argue only that intermediate scrutiny is the appropriate standard, and the right of publicity laws satisfy intermediate scrutiny as applied.  They are wrong on both counts.

*Reed* makes plain that laws that regulate speech "based on its communicative content," such as those at issue here, are subject to strict scrutiny review.  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).  Even if *Reed* alone did not require application of strict scrutiny here, strict scrutiny would apply because the communication of names and addresses *en masse* is non-commercial speech, more akin to phone books or directories (held non-commercial even when sold for profit), than to the personal credit reports to which Plaintiffs attempt to analogize.  Mot. 19–20; Opp. 22.[7]

In any event, Plaintiffs' claims would not survive intermediate scrutiny if *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980),

---

[6]    Contrary to Plaintiffs' assumption (Opp. 24 n.10), the content-based nature of the laws is as relevant to as-applied challenges as it is to facial challenges.  *See, e.g.*, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 569 (2011).

[7]    Plaintiffs misapply *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012). Opp. 22.  The Ninth Circuit held a yellow page directory was fully protected even if it contained "a wide array of advertisements." *Dex*, 696 F.3d at 959.  There are no allegations Hearst's purported speech contains advertisements or other "core" commercial speech; the alleged names here are akin to the noncommercial content in the phone book, and this is an even easier case than *Dex*.  The only commercial aspect of the speech Plaintiffs identify is Hearst's purported "commercial motive in publishing" the alleged lists, which longstanding Supreme Court precedent holds is not enough to transform a publication into commercial speech.  *Id.* at 960 (citing cases); Mot. 20.

could properly be applied. Mot. 23–24.[8]  The right of publicity laws as broadly envisioned by Plaintiffs would not be "narrowly drawn" to *directly advance* in a *material way* any *substantial* governmental interest in protecting individuals' right of publicity.  *United States v. Caronia*, 703 F.3d 149, 164 (2d Cir. 2012) (citing *Central Hudson*, 447 U.S. at 566).  Banning mailing lists would burden far more speech than any legislature intended, yet would have nothing to do with protecting Michael Jordan's likeness from unauthorized promotional use.  Mot. 23–24.

The failure of the laws as Plaintiffs would apply them (to mailing lists) to directly advance the laws' aim (to protect the right of *publicity*) is exacerbated by the unique exceptions to each state's law.  Mot. 21–22.  In *Sorrell*, the fact that a law prohibited the use of identifying information for marketing but allowed "insurers, researchers, journalists, the State itself, and others to use the information" undercut the state's professed aim of preserving confidentiality. 564 U.S. at 572–73.  The laws here aim to prevent certain commercial uses of identity yet permit, *e.g.*, tourism boards, state universities, and other favored speakers to use the same information commercially.  This speaks to the narrowness of the law's scope and its aim. Forbidding Hearst's alleged use of names as part of lists would not directly advance that aim. The laws cannot be applied to Hearst's alleged speech in the broad manner advanced by Plaintiffs without running afoul of the First Amendment in one way or another.

## CONCLUSION

Hearst respectfully seeks dismissal of the Complaint in its entirety, with prejudice.

---

[8]   Plaintiffs' reliance on *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) is misguided for a number of reasons.  Respectfully, the court's determination that the alleged subscriber mailing lists at issue there were commercial speech was incorrect and failed to address controlling Supreme Court precedent on that issue.  Second, the statute in *Boelter*, including its limited exceptions, is not comparable to the statutes here.  *See id.* at 435; Opp. 24–25.  Finally, and significantly, *Boelter* declined to address the clear language of *Reed*, which was argued to have superseded *Central Hudson*'s intermediate scrutiny analysis for commercial speech restrictions that are content-based, given *Reed*'s application of strict scrutiny to a commercial sign ordinance.  (Notably, the Michigan legislature amended the statute at issue in *Boelter* to avoid future misapplications of that law as in that case.)

Dated: April 12, 2022                              By: /s/ Jonathan R. Donnellan

                                                  Jonathan R. Donnellan
                                                  Andrea R. Butler
                                                  Sarah S. Park
                                                  *The Hearst Corporation*
                                                  Office of General Counsel
                                                  300 West 57th Street, 40th Floor
                                                  New York, NY 10019
                                                  Tel: (212) 649-2484
                                                  Fax: (212) 554-7000
                                                  jdonnellan@hearst.com
                                                  abutler@hearst.com
                                                  sarah.park@hearst.com

                                                  *Attorneys for Defendant Hearst*
                                                  *Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above document filed through the ECF system will be sent electronically to counsel of record on April 12, 2022.

/s/ Jonathan R. Donnellan
Jonathan R. Donnellan