**EXHIBIT A**

**2022 WL 1157500**
Only the Westlaw citation is currently available.
United States District Court, N.D. California.

Aviva KELLMAN, et al., Plaintiffs,
v.
SPOKEO, INC., Defendant.

Case No. 3:21-cv-08976-WHO
|
Signed 04/19/2022

**Synopsis**
**Background:** Individuals whose names and information were displayed in teaser profiles for website that aggregated personal information brought putative class action under the Class Action Fairness Act against website operator, asserting state law claims including violation of various states' right-of publicity statutes, misappropriation of name or likeness, and violation of California's Unfair Competition Law (UCL). Operator moved to dismiss.

**Holdings:** The District Court, William H. Orrick, J., held that:

newsworthiness exception to Ohio's right-of-publicity statute did not apply;

teaser profiles did not qualify for "newsworthy" exception to Indiana's right-of-publicity statute;

use of individuals' names and information was not "incidental" as would render the conduct not actionable under California's privacy law;

allegations satisfied the unfair prong of claim under the UCL;

Communications Decency Act (CDA) did not immunize operator;

dormant Commerce Clause did not preclude claims; and

teaser profiles were not protected by the First Amendment.

Motion denied.

**Procedural Posture(s):** Motion to Dismiss for Lack of Subject Matter Jurisdiction; Motion to Dismiss for Failure to State a Claim.

**Attorneys and Law Firms**

Raina Challeen Borrelli, Pro Hac Vice, Samuel Joseph Strauss, Pro Hac Vice, Turke & Strauss LLP, Madison, WI, Michael Francis Ram, Morgan & Morgan Complex Litigation Group, San Francisco, CA, for Plaintiffs.

Daniel D. Queen, Jennifer M. Chang, John Nadolenco, Mayer Brown LLP, Los Angeles, CA, for Defendant.

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. Nos. 23, 24

William H. Orrick, United States District Judge

**INTRODUCTION**

**\*1** Defendant Spokeo, Inc. ("Spokeo") runs a website that provides information about particular individuals aggregated from various sources. To advertise paid subscriptions to the site, Spokeo uses "teasers"—profiles of real people with some information redacted. The plaintiffs in this putative class action claim that, when Spokeo used teasers of them, it violated their rights of publicity and appropriated their names and likenesses in violation of California, Ohio, and Indiana law.

Spokeo moves to dismiss on numerous grounds; its motion is denied. District courts have come out on both sides of many of the issues here, but I conclude that the plaintiffs' claims are actionable. The plaintiffs have Article III standing to sue for these alleged violations. They have adequately pleaded that their names, likenesses, and related information have commercial value and were being used for a commercial purpose. The teasers are not subject to statutory exceptions for newsworthiness or public interest information. Spokeo is not immune from liability under the Communications Decency Act. Enforcing these rights does not violate the dormant Commerce Clause. And Spokeo's alleged conduct is not shielded by the First Amendment.

## BACKGROUND

Spokeo is a corporation with its principal place of business in California. Complaint ("Compl.") [Dkt. No. 1] ¶ 20. According to the Complaint, Spokeo owns and operates a website (www.spokeo.com) that aggregates online information about individuals. *See id.* ¶¶ 2–15. The plaintiffs allege that Spokeo uses individuals' "names, personal information, photographs, likenesses, and personas" in online advertisements. *Id.* ¶ 2. The named plaintiffs— Aviva Kellman, Jason Fry, and Nicholas Newell—each allege that Spokeo used their names and other information in this way. *See id.* ¶¶ 2–3, 38–85.

Specifically, Spokeo advertises its website by displaying "teaser profiles" of individuals that can include "names; ages; current and past cities of residence; partially redacted addresses, emails, and phone numbers; and other personal information" and sometimes photographs. *Id.* ¶ 4. The "teaser" then states that Spokeo "possesses additional information" including " 'Criminal Records'; 'Sex Offenses'; 'DUIs'; 'details about birth, marriage, and divorce'; 'Relationship Status'; 'Location History'; 'Estimated Salary'; 'Family Members'; and redacted 'Full Address[es]'; 'Email Address[es],' and 'Phone Number[s].' " *Id.* ¶ 5 (alterations in Complaint). The teasers state that a user will receive access to the "full profile" of the individual if they purchase a subscription (for $24.95 per month). *Id.* ¶ 6. The plaintiffs claim that Spokeo also advertises that a user will be charged 95 cents for access to a *specific* profile, but that fine print "reveals" that this purchase also comes with a full membership that begins billing after a one-week free trial. *Id.* ¶ 7.

These memberships, the plaintiffs allege, give users access to profiles on "hundreds of millions of individuals" that incorporate data from "over 12 billion records" from "thousands of data sources." *Id.* ¶ 8. They include things like contact information, location history, photos, social media accounts, lists of family members, court records, employment information, "and much more." *Id.* And users can track specific individuals and receive notifications when their information changes. *Id.* ¶ 9. The profiles and ads are "sole[ly]" authored and created by Spokeo; none of them contain user-generated content. *Id.* ¶ 10.

**\*2** According to the plaintiffs, they "do not know how Spokeo obtained their personal information." *Id.* ¶ 11. They

do know that Spokeo states that it collects the information "from a large variety of public online and offline sources" like property records, consumer reports, court records, unspecified "business records," and social networks. *Id.* The plaintiffs claim that they may have shared this information "with certain companies or the government in a variety of contexts," such as when making a credit card purchase or creating a social media profile. *Id.* ¶ 14. But, they say, they "did not consent to the commercial use of their personal information and personas to promote subscriptions to a website with which they have no relationship." *Id.* ¶ 15.

Each of the plaintiffs alleges that he or she was harmed by Spokeo's business practices. None of them used or subscribed to Spokeo's services. *See id.* ¶¶ 25, 29, 33. Yet each of their information was used in one of Spokeo's "teaser profile" ads. *Id.* ¶¶ 26, 30, 34. In each case, Spokeo publicly displays information about the plaintiff, some of it redacted. *Id.* But, like the teasers discussed above, it also claims to have additional information about each plaintiff. In particular, the plaintiffs claim that their names, information, and likenesses were associated on the teasers with Spokeo having information about things like "employment history," "photos and videos," "marital status," and "historical records." *Id.* ¶¶ 28, 32, 36. And it also states to have information about "arrests," "felonies," and "court records." *Id.* Spokeo advertises that purchasing a membership will give access to the full information about each plaintiff. *Id.*

To take one representative example, the Complaint includes a screenshot of the teaser profile for Kellman:





*Id.* ¶ 40. The blurred redactions of certain information exist that way in the teaser. *Id.* As the plaintiffs point out, the "court records" section states that it "may" include "arrests," "traffic violations," "sex offenders," and "felonies." *Id.* ¶ 41. If a user wishes to sign up for a paid membership, the webpages that they use to do so likewise include Kellman's name and information (or the name and information of whichever person the user was viewing as a teaser). *Id.* ¶¶ 45, 46.

The other named plaintiffs' names and information are used in materially identical ways by Spokeo. *See id.* ¶¶ 56, 72. Fry's also includes a picture of him. *See id.* ¶ 56. Each named plaintiff alleges that he or she has not committed a felony and is not a sex offender. *Id.* ¶¶ 48, 65, 81.

The plaintiffs filed suit in this court in November 2021, claiming jurisdiction under the Class Action Fairness Act. They seek to represent a nationwide class of "[a]ll people in the United States who are not Spokeo members and whose names and personal information Spokeo incorporated in teaser profiles used to promote its Spokeo memberships." *Id.* ¶ 86. And they seek to represent two subclasses, one of Indiana residents and one of Ohio residents. *Id.* (Newell is a citizen of Ohio and Fry is a citizen of Indiana. *Id.* ¶¶ 29, 33.) They bring seven claims: (1) violation of California's right of publicity statute, Cal. Civ. Code § 3344; (2) appropriation of a name or likeness under California law; (3) violation of Indiana's right of publicity statute, Ind. Code § 32-36-1; (4) appropriation of a time or likeness under Indiana law; (5) violation of Ohio's right of publicity statute, Ohio Rev. Code § 2741; (6) appropriation of a name or likeness under Ohio law; and (7) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* After the parties stipulated to several extensions of time to respond to the Complaint, Spokeo moved to dismiss in February 2022. [1]

## LEGAL STANDARD

### I. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**\*3** A motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

### II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under FRCP 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570, 127 S.Ct. 1955.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

Spokeo moves to dismiss on five grounds: (1) the plaintiffs lack Article III standing, (2) the claims are not adequately pleaded, (3) the claims are barred by the First Amendment, (4) relief to the plaintiffs would violate the Dormant Commerce Clause, and (5) the claims are barred by the Communications Decency Act ("CDA"). *See generally* Motion to Dismiss ("Mot.") [Dkt. No. 23]. None has merit.

## I. ARTICLE III STANDING

**\*4** Spokeo argues that the plaintiffs lack Article III standing. *See* Mot. 3–7. Because that issue goes to subject matter jurisdiction, I assess it first.

"In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiffs bear the burden of pleading and showing standing. To do so, they must demonstrate three elements: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) that it is "likely ... that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citations omitted). An injury in fact must be "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Id.* To show a causal connection, the injury must only be "fairly traceable" to the challenged conduct. *Id.*

Spoke only takes issue with the injury requirement. *See* Mot. 3–7. The plaintiffs put forward four injuries: (1) misappropriation of their intellectual property (in the form of likenesses, names, and other information); (2) that Spokeo unjustly profited from their likenesses; (3) denial of the right to control commercial use of their identifies; and (4) mental and emotional injury. *See* Opposition to the Mot. ("Oppo.") [Dkt. No. 29] 2–9.

The plaintiffs have sufficiently pleaded a cognizable injury. In determining whether an injury under causes of action like these is sufficiently "concrete" to confer Article III standing, the Supreme Court has instructed that "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, —— U.S. ——, 141 S. Ct. 2190, 2204, 210 L.Ed.2d 568 (2021) (citation omitted). To do so, courts look to whether there is a "close historical or common-law analogue for their asserted injury." *Id.* The harms traditionally recognized as cognizable included physical harm, monetary harm, and certain "intangible" harms. *Id.* Most relevant here, they include "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* When, as here, a legislature had declared that an injury is legally redressable, courts "afford due respect" to that decision. *Id.* So when a legislature creates a legally protected interest, it may "elevate" it into an injury for Article III purposes— though it cannot "us[e] its lawmaking power to transform something that is not remotely harmful into something that is." *Id.* (internal quotation marks and citations omitted).

In this case, the plaintiffs bring two closely related types of claims: statutory right-of-publicity claims and appropriation of a name or likeness.[2] Under California law, "[u]nlike an action for defamation, the gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community."

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

*Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1002, 72 Cal.Rptr.3d 194 (2008) (internal quotation marks, alterations, and citation omitted). Accordingly, "[t]he right of privacy concerns one's own peace of mind, while the right of freedom from defamation concerns primarily one's reputation. The injury is mental and subjective. It impairs the mental peace and comfort of the person and may cause suffering much more acute than that caused by a bodily injury." *Id.* (internal quotation marks, alterations, and citation omitted). The Indiana and Ohio courts have indicated that their statutory rights also stem from the common-law right of privacy. *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 394–95 (Ind. 2018); *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St.2d 224, 351 N.E.2d 454, 458 (1976), *rev'd and remanded on other grounds*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977).

**\*5** As the Supreme Court noted, "disclosure of private information" is a type of intangible harm traditionally recognized to be appropriate for judicial resolution. *TransUnion*, 141 S. Ct. at 2204. The Ninth Circuit has similarly explained that "[v]iolations of the right to privacy have long been actionable at common law. A right to privacy encompasses the individual's control of information concerning his or her person." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (internal quotation marks, alterations, and citations omitted). Controlling one's likeness was the essence of the right at common-law. In *Facebook*, the Ninth Circuit held that a sufficient injury was alleged solely because Facebook collected a significant amount of private information about individuals without their consent—without any further harm alleged. *Id.* And as the Restatement of Torts makes clear, the common-law right to privacy was invaded by intrusion upon seclusion, appropriation of a name or likeness, unreasonable publicity, or false-light claims. *See* Restatement (Second) of Torts § 652A.

The harms that the plaintiffs allege here are the sort of harms recognized as sufficiently concrete for judicial redress at common law. The plaintiffs allege that Spokeo misappropriated their names, likenesses, and personas—a harm recognized at common law. *See, e.g.*, *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."). They allege that Spokeo unjustly profited from their intellectual property—a harm recognized at common

law. *See, e.g.*, *Facebook*, 956 F.3d at 600 (holding that unjust enrichment under the right-of-publicity statute is a sufficient harm for Article III standing). They allege that Spokeo infringed their right to control commercial use of their names and identities—a harm recognized at common law. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 n.6 (9th Cir. 2006) ("Fundamentally, the right of publicity is the inherent right of every human being to control the commercial use of his or her identity." (internal quotation marks and citation omitted)). And they allege that Spokeo's actions caused them emotional and mental harm—a harm recognized at common law. *See Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821, 824 (9th Cir. 1974) ("[T]he injury suffered from an appropriation of the attributes of one's identity may be 'mental and subjective'—in the nature of humiliation, embarrassment, and outrage.").

As a result, these plaintiffs have adequately alleged that they were injured; that injury is sufficiently concrete for purposes of Article III standing. *Cf. Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) ("Violations of the right to privacy have long been actionable at common law."). A number of other courts in this district—most recently a decision by the Hon. Edward M. Chen—and beyond have concluded that these injuries are sufficient under Article III. *See, e.g.*, *Callahan v. PeopleConnect, Inc.*, No. 20-CV-09203-EMC, 2021 WL 5050079, at *14–*18 (N.D. Cal. Nov. 1, 2021) ("*Callahan I*") (holding that commercial use of a defendant's likeness adequately alleges actionable economic injury and mental anguish is actionable). *Cf. Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 806 (N.D. Cal. 2011) (Koh, J.) (holding that mental anguish and economic injury can suffice as sufficient harms).

Spokeo correctly points out that other courts in this district and elsewhere have also rejected these theories, or some of them. Closest to these facts is *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 2433893 (N.D. Cal. June 15, 2021) ("*Callahan II*"). There, the court held that "public profiles to solicit paying subscribers" that used individuals' personal information was not enough to establish a sufficient injury. *Id.* at, *3. It held that was so even though the defendant profited from the use, *id.*, but it is difficult to square that with the Ninth Circuit's holding that unjust enrichment *can* be a sufficient injury, *Facebook*, 956 F.3d at 600. Next, the court held that the rights under California's publicity statute are not analogous to historical privacy rights. *Callahan II*, 2021 WL 2433893, at *4. But as the discussion above shows, the statute flows directly from a long common-law

tradition and protects the same interests. And *Callahan II* held that there was no sufficient allegation of mental harm from mere use of the information. *Id.*, at \*4–\*5. Whether or not I would agree on those facts, the claim here is that individuals' names and information appear alongside implications that they committed crimes and other negative information, so the allegations of mental anguish are plausible. Finally, that court did not discuss the other harms that the plaintiffs assert here, or the long history of redressing those harms in judicial proceedings. I instead agree with Judge Chen who, in a case brought by the same plaintiff, explicitly disagreed with *Callahan II*'s injury analysis and adopted views in line with those I reach above. *Callahan I*, 2021 WL 5050079, at \*14; *see also*, *Sessa v. Ancestry.com Operations Inc.*, 561 F.Supp.3d 1008, 1022–23 (D. Nev. 2021) (disagreeing with *Callahan II*'s Article III standing analysis).

 **\*6**  Spokeo also argues that the plaintiffs cannot show economic harm because they have not alleged that their likenesses had commercial value before Spokeo made use of them—in a way that, for instance, the misuse of a celebrity's likeness would have. *See* Mot. 3–5. To start, that is not the only plausible injury, so this argument would not require dismissal. Even if it were, the plaintiffs need not show that their likenesses had some extraordinary commercial value or that they are celebrities. While some courts have agreed with Spokeo's position, many have rejected it. *See, e.g.*, *Callahan I*, 2021 WL 5050079, at \*14; *Fraley*, 830 F. Supp. 2d at 799. As explained above, the *injury* for Article III purposes (one of four here) is simply loss of commercial use.

## II. ADEQUACY OF PLEADING

### A. Ohio Claims

Spokeo argues that, for various reasons, the Ohio causes of action (brought by Newell) fail to state a claim. Mot. 7–11. I reject its arguments.

The Ohio right-of-publicity statute provides, "[e]xcept as otherwise provided in this section, a person shall not use any aspect of an individual's persona for a commercial purpose" during their lifetime or for certain timeframes after their death. Ohio Rev. Code § 2741.02(A). Among many other exceptions (such as an individual's consent), the statute exempts "use of an aspect of an individual's persona in connection with any news, public affairs, sports broadcast, or account." *Id.* § 2741.02(D)(1). "Persona" is defined as "an individual's name, voice, signature, photograph, image,

likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A)

### i. Commercial Value

Spokeo argues that Newell's persona has no "commercial value." Mot. 7–9. It is incorrect.

As noted, the statute requires that a person's persona "have commercial value." Ohio Rev. Code § 2741.01(A). The Ohio Court of Appeals has recently addressed this requirement at some length. *See Harvey v. Sys. Effect, LLC*, 2020-Ohio-1642, 154 N.E.3d 293 (Ohio App. 2 Dist. 2020). That court explained that, under a longstanding interpretation of the statute, a persona having commercial value does not mean the person needs preexisting "celebrity status." *Id.* at 304 (citations omitted). But it must still have "some commercial value." *Id.* at 306. That court approvingly relied on a federal district court decision holding that "[c]ommercial value may be established by proof of (1) the distinctiveness of the identity and by (2) the degree of recognition of the person among those receiving the publicity." *Id.* (quoting *Cheatham v. Paisano Publications, Inc.*, 891 F. Supp. 381, 386 (W.D. Ky. 1995)).

Here, Newell has adequately pleaded commercial value in two ways. First, he has pleaded that individuals can use Spokeo's service to find specific names; if they type his name, his "teaser" is one result. Accordingly, he has adequately pleaded that the pertinent audience would sufficiently recognize his distinct identity. *See Harvey*, 154 N.E.3d at 306. Second, because Spokeo uses Newell's persona for commercial gain—that is, to incentivize people to subscribe—it reasonably implies that his persona does have at least some commercial value. That is precisely the theory endorsed by a federal district court in Ohio in a decision that *Harvey* relied on and by a district court in this Circuit applying this same Ohio statute. *See Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1033 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017); *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053-JCC, 2021 WL 1575219, at \*2 (W.D. Wash. Apr. 22, 2021).[3]

### ii. News and Public Affairs Exception

 **\*7**  Spokeo argues that the statute's exception for use of a persona in connection with "news" or "public affairs" applies. Mot. 10. I disagree: Spokeo's use of Newell's persona is not

connected to news or public affairs and has no "newsworthy value." Ohio Rev. Code § 2741.09(A)(1)(b). This exception, the Ohio Court of Appeals has explained, comes from a division between sharing private information that has public value or is expressive and sharing information about private individuals for purely commercial reasons unconnected to a meaningful public interest. *See Harvey*, 154 N.E.3d at 307. Using a distinction that court relied on, Spokeo's use of Newell's name in teasers is solely for "promotion, advertising, or marketing a product," not for informing the public about a matter of genuine public interest. *Id.* Indeed, Spokeo's motion never articulates what could be newsworthy about this type of information. Again, another court in this Circuit has rejected this precise argument under Ohio law from a similar service to Spokeo. *See Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865, 878 (W.D. Wash. 2021).

### iii. Commercial Purpose

Spokeo argues that its use of Newell's identity lacks a "commercial purpose." Mot. 10–11. Again, I reject its argument.

Under the statute, "commercial purpose" means, as relevant here, "(1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter; [or] (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter." Ohio Rev. Code § 2741.01(B). As alleged, that is how Spokeo uses Newell's persona: "in connection with" a "product" and for "advertising ... the purchase of products" or "services." *Id.*

Spoke's only real authority on this point is one district court case applying Illinois law in which Spokeo was the defendant. There, the court held that Spokeo's use of individuals' personas was not for a commercial purpose because "[t]he plaintiffs' identities are not used to promote a separate product —they are used because plaintiffs' identities are part of the product offered for sale." *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018). Perhaps Illinois law does properly exempt actions on that ground; the question is not before me. Even if this were the proper framing, as I see it, this reasoning points in the opposite direction: The plaintiffs' identities are "part of the product," that is "in connection with" that product. And I disagree with this framing of the allegations more broadly. The use of

Newell's identity in the "teaser"—which is what this case is about—is promotional. The teaser is not the full profile; it has certain information withheld with the purpose of inducing potential users into subscribing. Courts (including in the same district as *Dobrowolski*) have found analogous acts to be done for a commercial purpose. *See, e.g.*, *Bonilla v. Ancestry.com Operations Inc.*, No. 20-C-07390, —— F.Supp.3d ——, ——, 2021 WL 5795306, at *7 (N.D. Ill. Dec. 7, 2021).

### B. Indiana Claims

Spokeo argues that, for various reasons, the Indiana causes of action (brought by Fry) fail to state a claim. Mot. 11–13. The Indiana right-of-publicity statute provides that, subject to many exceptions, "[a] person may not use an aspect of a personality's right of publicity for a commercial purpose" during their lifetime or for certain periods after their death. Ind. Code § 32-36-1-8(a). "Commercial purpose" is defined, as relevant here, as use of the personality "(1) On or in connection with a product, merchandise, goods, services, or commercial activities. (2) For advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities." *Id.* § 32-36-1-2. The personality must, to be actionable, have "commercial value." *Id.* § 32-36-1-6.

### i. Commercial Value and Commercial Purpose

**\*8** Spokeo first argues that Fry's personality has no "commercial value" and was not used for a "commercial purpose," arguments it treats as derivative of its argument about Ohio law. *See* Mot. 11–12. The statutes use the same language and Spokeo cites no authority that the analyses are different, so I reject its argument for the reasons stated above.

### ii. Territoriality

Spokeo contends that Fry has not alleged a violation of the statute that occurred "within Indiana," as required. Mot. 12; *see* Ind. Code § 32-36-1-8(a) (imposing territoriality requirement). According to Spokeo, it is based on California and the plaintiffs do not "allege a single instance in which Spokeo displayed a 'free preview' of Fry to anyone in Indiana." Mot. 12.

The only authority interpreting this territoriality requirement that I have found held that "the required 'act or event'

occurring in Indiana must be a violation of Section 8's bar on the non-consensual, commercial use of a personality." *Boshears v. PeopleConnect, Inc.*, No. C21-1222 MJP, 2022 WL 888300, at *3 (W.D. Wash. Mar. 25, 2022). Extraterritoriality, however, is a complicated issue and different states and different statutes take different approaches. Other courts have often deferred determination of this issue until there has been discovery, and I follow suit. *See, e.g., Vance v. Int'l Bus. Machines Corp.*, No. 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) ("[D]iscovery is needed in order to determine to what extent IBM's alleged acts occurred in Illinois."). This is all the truer because of the extraterritoriality difficulties caused by the "context of online conduct." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017). It appears plausible, for instance, that procuring the information from Indiana sources and republishing it to anyone with an internet connection suffices as an act or event "within Indiana." I decline to attempt to set out the full scope of another state's unsettled law based on this pre-discovery record and each party's one or two paragraphs of argument.

### iii. Newsworthiness Exception

Spokeo argues that its conduct falls within the Indiana statute's exception for "[m]aterial that has political or newsworthy value." Ind. Code § 32-36-1-1(c)(1)(D). The Indiana Supreme Court has explained that "newsworthy" material can also have a "commercial purpose." *Daniels v. FanDuel, Inc.*, 109 N.E.3d 390, 394 (Ind. 2018). It held that "whether Defendants are media companies or news broadcasters is immaterial in the context of the newsworthiness exception." *Id.* It has also instructed that the term be construed "broadly," in part to avoid constitutional issues. *Id.* at 395–96. In that case, it held that use of college athletes' statistics were newsworthy, even when used to advertise a fantasy sports product. *Id.* at 397.

Here, for the reasons explained above, the use of Fry's personality is not newsworthy, even under Indiana's broad definition of that term. Fundamentally, Fry is not a public official or a person of public interest; communicating some of his information in a teaser is not newsworthy. As the Indiana Supreme Court has held, "the unauthorized use of a personality to advertise or promote a product likely lies outside the scope of what is considered newsworthy." *Id.* The teasers here are alleged to be unauthorized and, as explained above, are used to promote Spokeo's product.

### iv. Appropriation Claim

**\*9** As explained, the plaintiffs bring both statutory and common-law claims; while related, they are distinct. Spokeo argues that Fry cannot bring a common-law claim for appropriation of name or likeness under Indiana law. Its argument, however, is the same one already rejected: that this tort only applies to names or likenesses with "commercial value." Mot. 13. For the reasons explained above, I disagree.

### C. California Claims

Spokeo argues that, for various reasons, the California causes of action (brought by Kellman) fail to state a claim. Mot. 13–16. Under California law, "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ. Code § 3344(a). "The gist of the cause of action in a privacy case is not injury to the character or reputation, but a direct wrong of a personal character resulting in injury to the feelings without regard to any effect which the publication may have on the property, business, pecuniary interest, or the standing of the individual in the community." *Miller*, 159 Cal. App. 4th at 1002, 72 Cal.Rptr.3d 194 (internal quotation marks and citation omitted).

### i. Choice of Law

Spokeo first argues that California law cannot apply to the nationwide class—only to California residents. Mot. 13–14. The plaintiffs reply that California law can apply in these circumstances but that, in any event, it is too early to make that determination. Oppo. 15–16.

Courts sometimes decide choice-of-law issues this early in the case but often defer them until class certification. *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1007 (N.D. Cal. 2014) (Orrick, J.) (collecting cases). "To determine whether the choice-of-law analysis should occur on the pleadings or at class certification, courts generally look to whether discovery would be a meaningful aid to that inquiry." *Anderson v. Apple*

*Inc.*, 500 F. Supp. 3d 993, 1010 (N.D. Cal. 2020) (Orrick, J.) (collecting cases).

Courts have taken differing approaches to whether and under what conditions similar California statutes apply to residents of other states. *Compare, e.g.*, *Davis v. Elec. Arts, Inc.*, No. 10-CV-03328-RS, 2017 WL 8948081, at *4 (N.D. Cal. Feb. 2, 2017) (declining to certify nationwide class), *with, e.g.*, *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602 (N.D. Cal. 2015) (Koh, J.) (applying California law nationwide). Notably, they have done so—as far as either party has indicated and I have found—at class certification, not the pleadings stage. Discovery will be useful at least because it will shed light on whether the "executive decision makers responsible for" these product decisions "are located in California" and whether the "processes used to intercept, scan, and store" data may be performed in California, both of which may impact the choice-of-law analysis. *Yahoo*, 308 F.R.D. at 602. This issue will be addressed at class certification.

### ii. Appropriation

Spokeo argues that there can be no "appropriation" when the product at issue "is" the name, likeness, or personal information. Mot. 15. I rejected that theory above as a matter of Ohio law, and there is no difference in the analysis when it comes to California law. I recognize that one judge in this district has held that similar behavior does not qualify as appropriation under the law. *See Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *3 (N.D. Cal. Aug. 16, 2021). [4] But that same judge has, more recently, found those same types of allegations actionable (though, admittedly, framed as an issue of cognizable injury rather than whether it amounts to "appropriation"). *See Callahan I*, 2021 WL 5050079, at *11.

### iii. Injury

**\*10** Spokeo argues that there can be no injury under the statute for the same reasons as it argues there is no Article III injury. Mot. 15. I reject it for the reasons explained above.

### iv. Incidental Use

Spokeo contends that any use of a name or likeness is merely "incidental" and, therefore, not actionable. Mot. 15–16. This incidental use defense to privacy torts is "widely recognized" by courts and the Ninth Circuit has "assumed" it exists under California law in the absence of dispute from the parties. *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1180 & n.5 (9th Cir. 2015) ("*Elec. Arts*"). Under the defense, to assess whether a use is merely "incidental," courts have assessed "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication." *Id.* (internal quotation marks and citations omitted).

Here, it is plausible that the use is not incidental, so the defense cannot succeed at the pleadings stage. As the plaintiffs allege it, Spokeo's business model depends on using the names, information, and likenesses of average people to entice others to subscribe to its services. Spokeo's substantive counterargument is a citation to its earlier argument that the teasers do not imply endorsement. Mot. 9–10. But, as explained, an implication of *endorsement* is not the only alleged violation that is actionable under the relevant statutes; appropriation for commercial use more broadly can be too.

### v. Public Interest and Affairs Exception

Under California law, "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Elec. Arts*, 775 F.3d at 1178 (internal quotation marks and citations omitted). Accordingly, the right of publicity statute does not apply to a use "in connection with any news, public affairs, or sports broadcast or account." Cal. Civ. Code § 3344(d). For the reasons twice explained above, this is not a matter of news or public interest or affairs and Spokeo has no novel counterarguments that would apply only to California law.

### D. UCL Claim

Spokeo argues that the UCL claim should be dismissed for several reasons. Mot. 16–19. As a general matter, the UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or

fraudulent business act or practice.' " *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011) (citation omitted). Each of these prongs—unlawful, unfair, and fraudulent—creates a separate possible violation. *See id.*

### i. Standing

Spokeo argues that the plaintiffs lack statutory standing under the UCL. Mot. 16–17. I disagree. To establish statutory standing to sue for a violation of the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* at 321, 120 Cal.Rptr.3d 741, 246 P.3d 877 (emphasis omitted). As explained in the section on Article III standing, the plaintiffs have alleged (among other injuries) that Spokeo was unjustly enriched and that the plaintiffs were not compensated for use of their likenesses. Both are economic injuries, as Judge Chen explained. *See Callahan I*, 2021 WL 5050079, at *19.

### ii. Unfair Prong

**\*11** Spokeo contends that the plaintiffs have not adequately pleaded a violation of the unfair prong.[5] Mot. 17–18.

The proper test for whether an action violates the unfair prong is "currently in flux among California courts." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018) (internal quotation marks and citations omitted). There are two possible tests to apply. Under the first, an "unfair" practice is that which "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.* (internal quotation marks and citations omitted). Under the other, it is "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* (internal quotation marks and citations omitted). But courts have divided over whether or how this second test applies to actions by *consumers* rather than *competitors. See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012).

Spokeo's motion includes a single paragraph of argument on this issue and only contends that the plaintiffs' claims fail under either test. Mot. 17–18. Spokeo does not argue that the second test is limited to tethering of antitrust laws—to the contrary, it classified it as applying to any constitutional, statutory, or regulatory tethering. *See id.* Accordingly, I need only determine whether the plaintiffs' claim survives under either test, assuming they apply in situations like this. *Cf. In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *24 (N.D. Cal. Aug. 30, 2017) (finding claims adequate under one test and ending the analysis there at the pleadings stage).

**\*12** I conclude that, under this narrow lens, the plaintiffs have adequately alleged a violation of the unfair prong. They claim that Spokeo takes names, likenesses, and information that consumers never consented to give to Spokeo and publicly displays it next to potentially inaccurate statements about "felonies," "arrests," and other behavior. Spokeo does so for the purpose of enticing consumers to take out a paid subscription. As explained above, California's right of publicity is intended to protect the interests that Spokeo is alleged to have threatened. The plaintiffs' claims, consequently, are "tethered to [the] legislatively declared policy" *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) (internal quotation marks and citation omitted) embodied in that statute that individuals, not others, be able to control their names and likenesses for commercial gain, especially if it casts them in an unjustifiably bad light. Indeed, as the discussion of standing shows, these sorts of violations have a deep and important pedigree in the common law, from which California's right-of-publicity statute stems.

### iii. CCPA Immunity

Spokeo argues that the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100-1798.199.100, immunizes its behavior from UCL liability. Mot. 18. According to it, the CCPA "establishes notice requirements for businesses' use of California residents' personal information, contains an express exemption for the use of publicly available data." *Id.* And because that conduct is allowed, claims Spokeo, it cannot violate the UCL. *Id.*

I disagree. It is telling that Spokeo cites no authority for its view. It is telling, too, that Spokeo does not argue that the CCPA creates any sort of liability from the statutory or tort claims. All that these provisions of the CCPA do are

exempt publicly available data from special *notification* and *disclosure* rules that the statute itself imposes on companies that collect Californians' data. Cal. Civ. Code 1798.140(v)(2). They do not expressly or impliedly set aside privacy-based tort claims or related UCL claims.

#### iv. Adequate Remedy at Law

The UCL only permits equitable relief. Spokeo argues that because the UCL is premised on the same activity as the claims with legal remedies, the plaintiffs are foreclosed from seeking relief under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). In *Sonner*, the Ninth Circuit held that a plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL." *Id.* at 844. But that holding is about what is required to *secure* restitution, not adequately plead it. And while I and other district courts have understood *Sonner* to impose some pleading requirements, *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022), Spokeo's argument is not aimed at that. Instead, it makes the broader argument that simply because the underlying behavior is the same, there can be no equitable claims. Even the cases applying *Sonner* most strictly have never taken that sweeping position. In any event, we are at the earliest stage of this case, it is not clear what the extent of legal remedies will be, and there is every possibility that the equitable relief will go beyond them. *Cf., e.g., Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (holding that retrospective legal remedies can be an inadequate to redress prospective violations).

### III. COMMUNICATIONS DECENCY ACT

Spokeo argues that it is immune from liability under Section 230 of the CDA. Mot. 23–25. For the reasons that follow, I reject its argument.

Under Section 230, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It also provides,

No provider or user of an interactive computer service shall be held liable on account of—

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

**\*13**  (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c)(2). But "this grant of immunity applies only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (quoting 47 U.S.C. § 230(f)(3)).

In passing Section 230, Congress "sought to spare" service providers the "grim choice" between taking responsibility for often enormous volumes of content or deleting nothing at all for fear of having that responsibility placed on it anyway. *See id.* at 1163. "The majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (internal quotation marks and citation omitted). In this Circuit, "[i]mmunity from liability exists for (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (internal quotation marks and citation omitted).

There are likely several reasons that Spokeo's alleged conduct is not immunized by the CDA, but the plaintiffs focus on one and it is sufficient for present purposes: CDA immunity "applies only if the interactive computer service provider is not also an information content provider." *Roommates*, 521 F.3d at 1162 (internal quotation marks and citations omitted). Spokeo is not alleged to merely host *user-generated* content, it is alleged to actively take content from other sources, curate it, and upload it to its site in a novel configuration for repurposed uses. That makes it at least "in part" responsible for the "creation and development" of this material. *Id.* Indeed, the allegations are that there are no users of Spokeo who *generate* content at all. That is why several other district courts have rejected CDA immunity for analogous services.

*See, e.g.*, *Knapke*, 553 F. Supp. 3d at 874–75; *Bonilla, —— F.Supp.3d at ——*, 2021 WL 5795306, at *4.

## IV. DORMANT COMMERCE CLAUSE

Spokeo contends that the dormant Commerce Clause precludes the plaintiffs' claims. Mot. 22–23. The Constitution's Commerce Clause provides that Congress has the power to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. But the Supreme Court has held that this clause contains an implicit limitation—often called the "dormant" Commerce Clause—on state power: states cannot discriminate against out-of-state commerce or unduly burden interstate commerce. *See S. Dakota v. Wayfair, Inc.*, —— U.S. ——, 138 S. Ct. 2080, 2090, 201 L.Ed.2d 403 (2018); *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015). "This principle ensures that state autonomy over local needs does not inhibit the overriding requirement of freedom for the national commerce." *Sam Francis*, 784 F.3d at 1323 (internal quotation marks and citation omitted).

 *14  Spokeo does not argue that these statutes privilege in-state commerce or discriminate against out-of-state commerce. Because that is so, the statutes "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id.* (internal quotation marks and citations omitted). Spokeo has not pointed to any sufficient burden. To start, this is not a case in which the statutes *preclude* economic activity that takes place *wholly* outside of their states' borders or *directly control* commerce *wholly* outside of their states' borders. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989). Nor does Spokeo argue that there is any issue of states controlling prices in other states, which is all that many of the Supreme Court's precedents have been understood to bar. *See Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669, 123 S.Ct. 1855, 155 L.Ed.2d 889 (2003). Spokeo's argument is, as best I can tell, that it will have to follow different states' laws about what it can and cannot show to users. *See* Mot. 22–23. Spokeo barely attempts to show that this incidental burden—which is similar to countless similar burdens on any company operating in multiple states—approaches being "clearly excessive" in relation to the benefits each state receives. As another court has explained when rejecting a dormant Commerce Clause argument about a similar service,

The burden on [Spokeo] itself is incidental to the Right of Publicity Law's attempt to protect [each state's residents'] property interest in their own persona. This protective measure serves the core, individual rights of [residents] and [Spokeo] provides no evidence the law was designed as an economic barrier to favor Ohio[, Indiana, or California] economic interests. Nor has [Spokeo] shown that there is some less burdensome approach that could satisfy [the states'] interests as to publicity rights.

*Knapke*, 553 F. Supp. 3d at 881. Revealingly, Spokeo cannot point to a single case that held that any similar law ran afoul of the dormant Commerce Clause.

## V. FIRST AMENDMENT

Spokeo argues that the teasers are protected by the First Amendment. Mot. 19–22. The parties' dispute is over, first, whether the speech is commercial or not and, second, whether the speech is protected under the appropriate test. I conclude that the speech is commercial and the laws at issue do not violate the First Amendment.

The First Amendment provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const., amend. I. It is incorporated against the states by the Fourteenth Amendment. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

### A. Commercial Speech

The parties' first dispute is whether the teasers qualify as commercial speech or not. I conclude that they do.

The Supreme Court has recognized a "distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation,

and other varieties of speech." *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 64, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983) (internal quotation marks and citations omitted). The "core notion" of commercial speech is speech that does "no more than propose a commercial transaction." *Id.* (internal quotation marks and citations omitted). But even speech falling outside of this "core" can count as commercial. *See id.*

Here, the teasers have a set of features that, together, courts have held show are commercial speech. The teasers are advertisements. *See id.* They reference a specific product. *See id.* And Spokeo has economic motivation for publishing them. *See id.* The combination of these three characteristics provides "strong" support for concluding that they are commercial speech. *Id.* Still more, I have considered and rejected the argument that they are on matters of public interest or are newsworthy. *See id.* at 68, 103 S.Ct. 2875.

None of Spokeo's cases compel a different conclusion. In one, the Ninth Circuit held that the yellow pages phone book was mixed commercial and non-commercial speech. *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012). Even though the yellow pages contained ads, it also contained information that was not. *See id.* at 959. The yellow pages are community lists and phone numbers that are "qualitatively different" than the ads they sometimes accompanied. *Id.* In another case, the Ninth Circuit held that "free, publicly available profiles" of the case and crew of movies on the website IMDB.com were not commercial speech. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020). They were "encyclopedic," not "transactional." *Id.* And they did not propose a commercial transaction.

 **\*15** Here, however, the issue is not about a free directory or an encyclopedia of knowledge. The teasers—not Spokeo's broader website—are the subject of this suit. And they are indisputably ads that are aimed only at inducing a commercial transaction, not about the meaningful communication of knowledge. And, yet again, this is what another court has found with an analogous service in the face of a First Amendment challenge. *Knapke*, 553 F. Supp. 3d at 879.

### B. Constitutionality

"The Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 562–63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). But it is not without any First Amendment protection: "The protection available for

particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." *Id.* at 563, 100 S.Ct. 2343. When the speech does not "accurately inform the public about lawful activity," it receives no protection. *Id.* Speech likely to deceive, too, receives less protection. *Id.* If speech is not misleading or related to unlawful activity, courts employ a form of intermediate scrutiny: the state must assert a "substantial interest" that is "directly advance[d]" by the law and cannot be accomplished by "excessive restrictions." *Id.* at 564, 100 S.Ct. 2343.

To begin, the plaintiffs make a strong case that the teasers are likely to deceive. They place individuals' names next to large lettering indicating that they "may" have felonies, arrests, and similar records even when that is not true. In context, it appears relatively clear that the point of using phrases like that is to attract interest for the commercial product. And it seems likely that reasonable people may be deceived into believing that individuals have committed bad or criminal acts when they have not.

Even assuming, however, that the teasers do not qualify as misleading, they are not protected by the First Amendment against these challenges. The protection of privacy interests is, as discussed, a longstanding commitment of the law— and an important one. *See, e.g.*, *Reps. Comm. For Freedom of Press*, 489 U.S. at 763, 109 S.Ct. 1468. Spokeo has no real dispute on this point. The laws at issue directly advance this interest through reasonably well-tailored means. Most importantly, those laws contain broad exemptions for matters that are newsworthy, of public interest, or matters of public affairs—that is, the core First Amendment purposes. And, indeed, the Supreme Court has expressly held that imposing liability for violating the traditional publicity right does not necessarily offend the First Amendment. *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 575–77, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). That is why—to repeat a now-familiar refrain—several courts have rejected similar First Amendment challenges to similar claims. *See Knapke*, 553 F.Supp.3d at 878–79; *Kolebuck-Utz*, 2021 WL 1575219, at *2–*3.

### CONCLUSION

The motion to dismiss is DENIED.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2022 WL 1157500

## Footnotes

1     Spokeo also moved to stay discovery pending resolution of the motion to dismiss. Dkt. No. 24. At a case management conference, I ordered that "[p]reliminary discovery requests may be served prior to [the hearing on the motion to dismiss], but the response time will be calculated from the date the motion to dismiss is decided." Dkt. No. 35. That motion is now DENIED AS MOOT.

2     To the extent the UCL claim asserts a violation of the statute's "unlawful" prong, it is derivative of the other violations. To the extent it asserts a violation of the "unfair" prong, it is premised on fundamentally the same injuries as the other claims. There is no difference in the Article III injury analysis.

3     Spokeo argues that its use of teaser profiles does not imply that Newell *endorses* is product. Mot. 9–10. I take that only to be a preemptive counterargument to one theory of commercial value courts have approved —the theory that use of a persona can constitute implied endorsement. It is not an affirmative reason to dismiss the claims.

4     Spokeo also relies on another case, but it dealt with *sale* of information to third parties, which is not the situation here. *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019).

5     They also argue that the plaintiffs have not alleged a violation of the unlawful prong, Mot. 17, but that claim rises or falls with the other alleged violations of California law.

**End of Document**        © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.   14