# Exhibit A

2022 WL 10477051
Only the Westlaw citation is currently available.
United States District Court, D. Vermont.

BRIAN FARRIS, LANCE GROFF, and
TOM THEUS, individually and on behalf
of all others similarly situated, Plaintiffs,
v.
THE ORVIS COMPANY, INC., Defendant.

Case No. 2:22-cv-00007
|
Filed 10/18/2022

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING LEAVE TO AMEND (Doc. 6)

Christina Reiss, District Judge United States District Court

*1 Plaintiffs Brian Farris, Lance Groff, and Tom Theus (collectively, "Plaintiffs") bring this purported class action against The Orvis Company, Inc. ("Orvis") for selling and renting its mailing lists, which included Plaintiffs' names and other information, to third parties. Plaintiffs allege this violates their statutory rights under California, Illinois, and Ohio law.

On January 12, 2022, Plaintiffs filed their initial Complaint and on February 24, 2022 filed an Amended Complaint. Pursuant to a stipulated schedule, Orvis moved to dismiss the Amended Complaint on April 11, 2022. On May 26, 2022, Plaintiffs opposed Orvis's motion, and Orvis replied on June 27, 2022. After a hearing on July 11, 2022, the court took the pending motion under advisement.

Plaintiffs are represented by Aaron T. Morris, Esq. and Arun Ravindran, Esq. Orvis is represented by Casie D. Collignon, Esq., Robyn M. Feldstein, Esq., and Stephen J. Soule, Esq.

### I. Allegations in the Amended Complaint.

Mr. Farris is a resident of California, Mr. Groff is a resident of Illinois, and Mr. Theus is a resident of Ohio. Orvis is a Vermont corporation which sells sporting goods. Each named Plaintiff purchased products from Orvis while they were "residing in" and "physically present" in their home state. (Doc. 2 at 3-4, ¶¶ 8-10.)

Orvis allegedly collects "Plaintiffs' and all other customers' names and addresses, as well as age, gender, income, ethnicity, religion, children's age, and information pertaining to their purchase of products from Orvis[.]" *Id.* at 1, ¶ 1.[1] Orvis compiles this information and rents or sells the resulting "mailing lists[,]" directly or through intermediaries, on the open market, including to "data miners" and "aggressive marketing companies[.]" *Id.* at 7-8, ¶¶ 25, 27. Plaintiffs assert Orvis does not obtain consent or provide "effective" notice before selling or otherwise distributing the mailing lists which Plaintiffs contend is a practice which put customers "at risk of serious harm from scammers[.]" *Id.* at 7-8, ¶¶ 26, 28. Plaintiffs contend that, in distributing the mailing lists, Orvis has used Plaintiffs' names, "which [allegedly] have commercial value, on or in, or in connection with products, merchandise, goods, or services, or the sale or rental of such things[.]" *Id.* at 8, ¶ 29.

Plaintiffs bring claims on behalf of three distinct classes, each consisting of "[a]ll [state] residents who, at any point in the relevant statutory period, had their names appear on or in a mailing list sold or rented, or offered for sale or rental, by Orvis[.]" *Id.* at 8, ¶¶ 30-32. Mr. Farris seeks to represent California residents (the "California Class"), Mr. Groff seeks to represent Illinois residents (the "Illinois Class"), and Mr. Theus seeks to represent Ohio residents (the "Ohio Class"). For each class, Plaintiffs allege the crux of their claims is a misappropriation of their names as an aspect of their identity.

*2 The Amended Complaint sets forth three causes of action. In Count I, Mr. Farris, individually and on behalf of the California Class, asserts a claim for a violation of Cal. Civ. Code § 3344, alleging Orvis "knowingly used and continues to 'use' [Mr.] F[a]rris's and the other California Class members' names and likenesses[,]" which allegedly have "[s]ignificant commercial value[,]" " 'on or in' such mailing lists." (Doc. 2 at 12, ¶ 48-49) (quoting Cal. Civ. Code § 3344(a)). Plaintiffs allege this use is not authorized or privileged. Plaintiffs allege Mr. Farris and the California Class members "have been injured, in California" by Orvis' actions and seek (1) $750.00 in "statutory liquidated damages or actual damages, whichever is greater, as well as any profits from Orvis's unauthorized uses[;]" (2) punitive damages; (3) declaratory relief; (4) injunctive relief prohibiting further use and requiring Orvis to obtain prior consent in the future; and (5) costs and attorney's fees. *Id.* at 13, ¶¶ 53-54.

In Count II, Mr. Groff, individually and on behalf of the Illinois Class, asserts Orvis violated 765 Ill. Comp. Stat. 1075/30(a) by selling, or offering to sell, mailing lists with its Illinois customers' names and other information. Plaintiffs allege this use is not authorized or privileged. For "violations of their rights of publicity[,]" Plaintiffs seek (1) an injunction requiring Orvis to seek prior written consent from Illinois customers; (2) $1,000.00 in statutory liquidated damages for Mr. Groff and each Illinois Class member; and (3) costs and attorney's fees. *Id.* at 17, ¶69.

In Count III, Mr. Theus, individually and on behalf of the Ohio Class, alleges Orvis violated Ohio Rev. Code § 2471.02 by using Ohio customers' names and other information, which have "[s]ignificant commercial value[,]" "on or in connection with the mailing lists that it sells and rents[.]" *Id.* at 19, ¶¶ 77, 79. Plaintiffs allege this use is not authorized or privileged. Plaintiffs seek (1) statutory liquidated damages between $2,500.00 and $10,000.00 per violation for Mr. Theus and each Ohio Class member; (2) punitive damages; (3) an injunction requiring Orvis to seek prior written consent from Ohio customers; and (4) costs and attorney's fees.

## II. Conclusions of Law and Analysis.

### A. Legal Standard.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also " 'not bound to accept as true a legal conclusion couched as a factual allegation[.]' " *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that Plaintiffs will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

### B. Whether Plaintiffs' Amended Complaint Must Be Dismissed For Failure to State A Claim.

*3 Orvis argues that Plaintiffs' claims must be dismissed because Plaintiffs' names and information are not publicly associated with the mailing lists as no one would know Plaintiffs' names were included in the lists unless one purchased a list. Orvis further argues that Plaintiffs' individual names and information have no intrinsic value or commercial appeal. Finally, Orvis contends that Plaintiffs' information is not being used to endorse a separate product and, "where the plaintiff's identity *is* the product being sold, which is exactly the case here, there is no violation of any rights of publicity[.]" (Doc. 6-1 at 12) (emphasis in original). Plaintiffs respond that their claims fall within the plain language of the relevant statutes.

As Plaintiffs' counsel conceded at the hearing, Plaintiffs' claims are novel. The court is mindful that its "role as a federal court sitting in diversity is not to adopt innovative theories that may distort established state law." *Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (quoting *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005)). In determining whether Plaintiffs' claims are cognizable under state law, the court must "give the fullest weight to pronouncements of the state's highest court while giving proper regard to relevant rulings of the state's lower courts." *Id.* (alteration adopted).

The interpretations of federal courts which regularly address issues of California, Illinois, and Ohio law are also entitled to deference. *See Holmes v. Grubman*, 568 F.3d 329, 340 (2d Cir. 2009) ("[U]nder certain circumstances, it may be appropriate to accord some measure of deference to a federal district court's interpretation of the laws of the state in which the court is located[.]"); *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278, 283 (2d Cir. 1981) ("Where, as here, the pertinent

[federal] court of appeals has essayed its own prediction of the course of state law on a question of first impression within that state, the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule."); see also Butner v. United States, 440 U.S. 48, 58 (1979) ("The federal judges who deal regularly with questions of state law in their respective districts and circuits are in a better position than we to determine how local courts would dispose of comparable issues.") (footnote omitted).

Although the parties advance largely the same arguments with regard to all three states, each state has a unique statutory scheme.

### 1. Whether Plaintiffs Have Plausibly Alleged a Violation of California's Right of Publicity Statute.

Under California law,

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a).

> The use of a name, voice, signature, photograph, or likeness in a commercial medium shall not constitute a use for which consent is required under subdivision (a) solely because the material containing such use is commercially sponsored or contains paid advertising. Rather it shall be a question of fact whether or not the use of the person's name, voice, signature, photograph, or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required under subdivision (a).

**\*4** *Id.* at (e).

Despite Plaintiffs' claim that the common law right of publicity is irrelevant, § 3344 is closely related to the California common law right of publicity. As the Ninth Circuit has explained,

> California has long recognized a common law right of privacy for protection of a person's name and likeness against appropriation by others for their advantage. See *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416, 198 Cal.Rptr. 342 (1983). To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Id.* at 417, 198 Cal.Rptr. 342.
>
> In addition to the common law cause of action, California has provided a statutory remedy for commercial misappropriation under California Civil Code § 3344. The remedies provided for under California Civil Code § 3344 complement the common law cause of action; they do not replace or codify the common law. See *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691–92 (9th Cir.1998)....**Under section 3344, a plaintiff must prove all the elements of the common law cause of action.** In addition, the plaintiff must allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose. See *Eastwood*, 149 Cal.App.3d at 417, 198 Cal.Rptr. 342.

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (emphasis supplied).

In California, the "general rule" is that:

> unless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. A statute will be construed in light of common law decisions, unless its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter.

*Presbyterian Camp & Conf. Ctrs., Inc. v. Superior Ct.*, 501 P.3d 211, 217 (Cal. 2021) (alterations adopted) (internal quotation marks and citations omitted). Put differently, "[t]o the extent possible, [California courts] construe statutory enactments as consonant with existing common law and reconcile the two bodies of law. Only where there is no rational basis for harmonizing a statute with the common law will [California courts] conclude that settled common law principles must yield." *Id.* (internal quotation marks and citations omitted).

Plaintiffs argue that their claims fall within the plain language of § 3344 because "Plaintiffs have alleged a non-consensual use of their likenesses *on* or *in* the product or service—namely, the mailing lists that Orvis sells and rents." (Doc. 12 at 6) (emphasis in original). Orvis counters that because Plaintiffs' identities *are* the product and are not being used to promote some other product, there is no violation of § 3344 or the common law. Orvis relies on *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *5 (N.D. Cal. Aug. 16, 2021) to support its contention.

*5 In *Brooks*, the defendant assembled profiles of individuals based on publicly available information, as well as information it purchased from data aggregators, and sold the profiles to its subscribing customers. While the court found this was a "use" of the plaintiffs' names, it was not an "appropriation" of them, and dismissed the case for failure to state a claim. *Id.* at *3-*4. Holding that "[t]he use of a person's name and likeness to promote a product (other than that which pertains to the person themselves) is the essence of an 'appropriation' of one's name or likeness[,]" the court found "[n]o such appropriation is alleged" because plaintiffs' "name or likeness ... were not sent to unsuspecting [ ] users to advertise or promote the [ ] platform or some other third party's products or services; they were sent only to [ ] subscribers who deliberately paid Thomson Reuters to receive information about them." *Id.* at *5. The *Brooks* court noted the case was "akin[,]" *id.*, to *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, wherein the Northern District of California dismissed plaintiffs' common law right of publicity claim because "[t]he allegations about how Facebook shared the plaintiffs' information with third parties is categorically different from the type of conduct made unlawful by this tort, such as using a plaintiff's face or name to promote a product or service." 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019). The *Brooks* court "agree[d] with *In re Facebook* that the injury [p]laintiffs suffered here—although deeply concerning and perhaps a violation of their privacy—is not a violation of their right of publicity because their name or likeness is not being 'appropriated' and used to advertise a separate product or service." *Brooks*, 2021 WL 3621837, at *5.

Plaintiffs contend *Brooks* is distinguishable, or wrongly decided, pointing out that § 3344 applies to the use of a name "either (1) 'on or in' a product, or (2) in 'advertising or selling' a product." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 802 (Cal. 2001). As the California Supreme Court has held, "[t]he two uses are not synonymous: in the apt example given by the Court of Appeal, there is an obvious difference between 'placing a celebrity's name on a "special edition" of a vehicle, and using that name in a commercial to endorse or tout the same or another vehicle.' " *Id.* However, both prongs, advertising and merchandising, involve some aspect of promotion of another product. For that reason, the California Supreme Court held that the use of the Three Stooges faces on a t-shirt and in prints appropriated the value of their images to promote a separate product. *Id.* at 811. In so ruling, the court noted that the likenesses themselves were not the product--the prints and t-shirts bearing those likenesses were. *Id.* at 802 n.6.

Plaintiffs' request that the court reject *Brooks* fails to recognize the rationale for an anti-publicity statute in the first instance. The right of publicity does not protect someone's

name in and of itself. It protects the goodwill, or at least the potential for goodwill, associated with that name. *See* *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977) ("The rationale for protecting the right of publicity is the straightforward one of preventing unjust enrichment by the theft of good will.") (alteration adopted) (citation omitted). In *Lugosi v. Universal Pictures*, 603 P.2d 425 (Cal. 1979), the seminal case recognizing the right of publicity in California, upon which *Brooks* relies, the California Supreme Court explained:

> Lugosi could have created during his lifetime through the commercial exploitation of his name, face and/or likeness in connection with the operation of any kind of business or the sale of any kind of product or service a general acceptance and good will for such business, product or service among the public, the effect of which would have been to impress such business, product or service with a secondary meaning, protectable under the law of unfair competition. The tie-up of one's name, face and/or likeness with a business, product or service creates a tangible and saleable product in much the same way as property may be created by one who organizes under his name a business to build and/or sell houses according to a fixed plan or who writes a book, paints a picture or creates an invention.
>
> ...
>
> Lugosi in his lifetime had a right to create in his name and/or likeness a right of value, which could have been transmuted into things of value or Lugosi could, if he elected not to exercise such right, protect it from invasion by others by a suit for injunction and/or damages.

*6 *Lugosi*, 603 P.2d at 428 (alterations adopted) (internal quotation marks and citation omitted).

*Lugosi* relies on the Restatement Second of Torts, which provides that "the defendant must have appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." Restatement (Second) of Torts § 652C, cmt. c (1977).

> The value of the plaintiff's name is not appropriated by *mere mention of it,*... nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object *merely because his name* or his appearance *is brought before the public*, since neither is in any way a private matter and both are open to public observation.

*Id.* at cmt. d (emphasis supplied).

In this case, Plaintiffs do not allege that the use of their names provides Orvis's mailing lists "with a secondary meaning" or "general acceptance and good will ... among the public[.]" *Lugosi*, 603 P.2d at 428. They do not allege that Orvis was "taking advantage of [their] reputation, prestige, or other value associated with [them], for purposes of publicity" by including their information in its lists. Restatement (Second) of Torts § 652C, cmt. d. Orvis's mailing lists are thus not valuable because of any "tie-up" with Plaintiffs' names, images, or likenesses. *Lugosi*, 603 P.2d at 428. Instead, the mailing lists merely aggregate names and associated information (which Plaintiffs do not contend is private) that are otherwise available for public observation.

Because Plaintiffs have failed to adequately plead a violation of the right of publicity under Cal. Civ. Code § 3344, Orvis's motion to dismiss Count I is GRANTED.

**2. Whether Plaintiffs Have Plausibly Alleged a Violation of Illinois's Right of Publicity Statute.**

Under Illinois's Right of Publicity Act (the "IRPA"), "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent[.]" 765 Ill. Comp. Stat. 1075/30(a). An "identity" is defined as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 Ill. Comp. Stat. 1075/5. "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods,

or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.*

The Central District of Illinois recently addressed claims strikingly similar to Plaintiffs' under Illinois law. In *Huston v. Hearst Commc'ns, Inc.*, 2022 WL 385176, at *1 (C.D. Ill. Feb. 7, 2022), the plaintiff alleged that the defendant "publicly used and held out her and other class members' identities for commercial purposes when it sold and offered for sale the 'GOOD HOUSEKEEPING Mailing List,' which identified 1,715,229 subscribers of *Good Housekeeping* magazine by name, address, and other personally identifying attributes, such as gender, age, ethnicity, income, political party, religion, and charitable donation history." The *Huston* court held:

> **\*7** A claim under the IRPA has three elements: "(1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purposes." *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *5 (N.D. Ill. Aug. 29, 2017) (citing 765 ILCS 1075/30).
>
> The IRPA prohibits the use of an individual's identity to promote or entice the purchase of some other product. *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012) (dismissing claim under the IRPA because plaintiff's identity was "not being held out or used to entice anyone to buy a product"). As one district court recently held, "the Illinois legislature meant to limit the term 'commercial purposes' to situations where a person's identity is used to promote a 'separate product,' *Dobrowolski* [*v. Melius, Inc.*], 2018 WL 11185289, at *3(N.D. Ill. May 21, 2018), or 'some other product,' *Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013), apart from the person's identity itself." *Lukis v. Whitepages Inc.*, 2020 WL 6287369, at *4 (N.D. Ill. Oct. 27, 2020).
>
> ...
>
> Here, the Court finds that the allegations in the Complaint are insufficient to state a claim under the IRPA. While Ms. Huston alleges that Hearst made mailing lists of its subscribers available for others to purchase so that they can send advertisements to the subscribers, this alone does not meet the "commercial purposes" requirement under the IRPA. *See Dobrowolski*, 2018 WL 11185289, at *3 ("The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale. And this is not a commercial purpose as defined by the statute."). The purchase of mailing lists of subscribers has been a standard practice in the direct mail industry. *See, e.g., U.S. News & World Rep., Inc. v. Avrahami*, 1996 WL 1065557, at *7 (Va. Cir. Ct. June 23, 1996). Thus, Ms. Huston fails to allege that her identity was used in connection with the offer for sale of any product or service to a third party or to advertise any product or service.

*Id.* at *2-*3.

Orvis urges the court to follow the holding of *Huston*, which Plaintiffs contend was wrongly decided. The court agrees that *Huston* is persuasive, is factually analogous, and the district court that rendered the opinion should be accorded deference in its interpretation of Illinois law. *See Butner*, 440 U.S. at 58.

Because Plaintiffs fail to plausibly allege a "commercial purpose" for "some other product" within the plain and ordinary meaning of the IRPA, they have failed to state a claim. *See Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 930 (Ill. Ct. App. 2013) ("[T]he [IRPA] prohibits the holding out—meaning the representation—of an individual's identity on or in connection with certain activities."). Illinois's common law prior to the enactment of the IRPA in 1999, buttresses this conclusion.

In *Dwyer v. Am. Exp. Co.*, 652 N.E.2d 1351 (Ill. Ct. App. 1995), the Illinois Court of Appeals noted that, in accordance with the Restatement (Second) of Torts, the elements of the common law commercial misappropriation tort in Illinois were: "an appropriation, without consent, of one's name or likeness for another's use or benefit." *Id.* at 1355 (citing Restatement (Second) of Torts § 652C; *Leopold v. Levin*, 259 N.E.2d 250, 256 (Ill. 1970)). The plaintiffs argued that American Express "appropriate[d] information about cardholders' personalities, including their names and perceived lifestyles, without their consent" and sold the compiled information. *Id.* at 1356. The Illinois Court of Appeals dismissed the case, holding that the plaintiffs failed to allege an appropriation, explaining:

**\*8** Undeniably, each cardholder's name is valuable to defendants. The more names included on a list, the more that list will be worth. However, a single, random cardholder's name has little or no intrinsic value to defendants (or a merchant). Rather, an individual name has value only when it is associated with one of defendants' lists. Defendants create value by categorizing and aggregating these names. Furthermore, defendants' practices do not deprive any of the cardholders of any value their individual names may possess.

*Id. Dwyer* thus rejects the precise claims Plaintiffs advance here.

While the IRPA provides that "[t]he rights and remedies provided for in this Act are meant to supplant those available under the common law as of the effective date of this Act," 765 Ill. Comp. Stat. 1075/60, Illinois courts have held that the elements of an IRPA claim are "essentially the same three elements that were required for a common-law claim of appropriation of likeness." *Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. Ct. App. 2006). Appropriation thus remains an element under the IRPA. *See People v. Jones*, 824 N.E.2d 239, 246 (Ill. 2005) (citations omitted) ("It is presumed that, in enacting new legislation, the legislature acts with full knowledge of previous judicial decisions addressing the subject matter of that legislation. ... In general, a statute will not be construed to change the settled law of the state unless its terms clearly require such a construction.").

Because Plaintiffs have failed to plausibly plead the essential elements of the IRPA claim, Orvis's motion to dismiss Count II is GRANTED.

**3. Whether Plaintiffs Have Plausibly Alleged a Violation of Ohio's Right of Publicity Statute.**

Under Ohio's right of publicity statute, "a person shall not use any aspect of an individual's persona for a commercial purpose[ ] [d]uring the individual's lifetime[.]" Ohio Rev. Code § 2741.02(A)(1). A "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." Ohio Rev. Code § 2741.01(A). "Commercial purpose" is defined as:

> the use of or reference to an aspect of an individual's persona in any of the following manners: (1) On or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter; (2) For advertising or soliciting the purchase of products, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter; (3) For the purpose of promoting travel to a place; (4) For the purpose of fundraising.

*Id.* at § 2741.01(B).

Plaintiffs allege Orvis uses their names "[o]n or in connection" with its mailing lists or "other commercial activities" and this suffices for a misappropriation claim under § 2741.01(b). *Id.* Since its enactment in 1999, only a few cases have interpreted Ohio's statutory right to publicity. *See Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 304 (Ohio Ct. App. 2020) ("These statutes were enacted in 1999, and no Ohio cases have since discussed R.C. 2741.06, which created the private right of action. There is also very little Ohio case authority regarding actions brought under R.C. 2741.02.") (footnote omitted). Because of the paucity of case law, the Ohio Court of Appeals looks to "the entire available body of case law" including cases decided under Ohio's common law right of publicity, *see id.* at 307 (internal quotation marks omitted), in part because Ohio's right of publicity statute does not supplant the common law. *See* Ohio Rev. Code § 2741.08 ("The remedies provided for in this chapter are in addition to any other remedies provided for by state or federal statute or common law."). Under Ohio law:

*9 [s]tatutes are to be read and construed in the light of and with reference to the rules and principles of the common law in force at the time of their enactment, and in giving construction to a statute the legislature will not be presumed or held, to have intended a repeal of the settled rules of the common law *unless the language employed by it clearly expresses or imports such intention.*

*Bresnik v. Beulah Park Ltd. P'ship, Inc.*, 617 N.E.2d 1096, 1098 (Ohio 1993) (emphasis in original) (internal quotation marks and citations omitted).

Like California and Illinois, Ohio follows the Restatement (Second) of Torts in its interpretation of the common law right of publicity. See *James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 122 (Ohio Ct. App. 2006) ("Ohio has adopted the tort of misappropriation of the name or likeness of another as propounded by the Restatement [(Second)].") (citation and footnote omitted). As a result, it requires more than the mere use of someone's name:

> [T]he [Ohio] Supreme Court has distinguished "the mere incidental use of a person's name and likeness, which is not actionable, from appropriation of the benefits associated with the person's identity, which is." [*Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 458 (Ohio 1976), *rev'd and remanded*, 433 U.S. 562 (1977)]. The *Zacchini* court cited with approval the Restatement of the Law 2d, Torts (1965), Section 652C, including the portion regarding the incidental use of name or likeness. That portion reads:

> "The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded."

*Id.* at 123.

Plaintiffs' Ohio claims do not allege that Orvis was "taking advantage of [their] reputation, prestige, or other value associated with [them], for purposes of publicity." *Id.* (quoting Restatement (Second) of Torts § 652C, cmt. d). Instead, they assert the "mere mention" of their names in mailing lists was "brought before the public[.]" *Id.* The Ohio Court of Appeals rejected nearly identical claims in a case brought under the common law prior to the enactment of Ohio's right of publicity statute. In *Shibley v. Time, Inc.*, 341 N.E.2d 337 (Ohio Ct. App. 1975), the plaintiffs alleged:

> defendants' practice of renting and selling subscription lists constitutes an invasion of privacy because it amounts to a sale of individual 'personality profiles,' which subjects the subscribers to solicitations from direct mail advertisers. The reasoning behind this position is the contention that the buyers of these lists are able to draw certain conclusions about the financial position, social habits, and general personality of the persons on the lists by virtue of the fact that they subscribe to certain publications and that this information is then used in determining the type of advertisement to be sent. This, appellants contend, is an invasion of privacy which was not consented to nor made a part of the original subscription contract. The argument then continues that defendants have therefore been unjustly enriched at the subscribers' expense.

*10 *Id.* at 339.

The Ohio court found that this did not constitute the "appropriation or exploitation of one's personality" as a

matter of law and upheld the trial court's grant of defendants' motion to dismiss. It held that "[t]he right of privacy does not extend to the mailbox" and the plaintiffs' claims would require it "to create a specific right which is not recognized at common law" because the common law tort is limited "to those situations where the plaintiff's name or likeness is displayed to the public to indicate that the plaintiff [e]ndorses the defendant's product or business." *Id.* at 339-40 (internal quotation marks and citations omitted).

*Shibley* was the law in Ohio at the time Ohio's right of publicity statute was enacted, and nothing in the statute "clearly expresses or imports" an intention to repeal its holding. *Bresnik,* 617 N.E.2d at 1098 (emphasis omitted). The court declines to "distort" this "established state law[,]" *Runner,* 568 F.3d at 386 (quoting *Carpenter,* 411 F.3d at 329), to create a remedy under Ohio law that does not otherwise exist. Orvis's motion to dismiss Count III is therefore GRANTED.

**CONCLUSION**

For the foregoing reasons, Orvis's motion to dismiss (Doc. 6) is GRANTED. Because Plaintiffs' claims are novel and may benefit from repleading, the court hereby GRANTS Plaintiffs leave to amend their complaint within twenty (20) days of this Opinion and Order. *See, e.g.*, *Wiggins v. Weicker,* 104 F.3d 351, 351 (2d Cir. 1996) ("[E]ven in dismissing a complaint that states no claim on which relief can be granted, the court should normally give the plaintiff at least one opportunity to amend the complaint.").

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 18th day of October, 2022.

**All Citations**

Slip Copy, 2022 WL 10477051

---

**Footnotes**

| | |
|---|---|
| 1 | The court questions the plausibility of Plaintiffs' claim that Orvis collects information regarding customers' ethnicity, religion, and their children's age as Plaintiffs do not contend that a customer provides this information to Orvis during a typical retail or online transaction. |